**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| CHRISTOPHER SHORTER, | : | **CIV. NO. 17-8911(RMB)** |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, *et al.*, | : | |
| | : | |
| Defendants | : | |

**BUMB**, DISTRICT JUDGE

Plaintiff Christopher Shorter, a prisoner presently confined at the Federal Correctional Institution in Miami, Florida ("FCI-Miami") brings this civil rights complaint under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"). (Compl., ECF No. 1.) Plaintiff filed an application to proceed *in forma pauperis* ("IFP" ECF No. 1-2), which the Court denies without prejudice because Plaintiff did not submit a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint … obtained from the appropriate official of each prison at which the prisoner is or was confined" as required by 28 U.S.C. § 1915(a)(2). The Court will administratively terminate

this matter, but Plaintiff will be permitted to reopen if she timely submits her certified trust account statement.[1]

When a prisoner is permitted to proceed without payment of the filing fee, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) require courts to review a complaint in a civil action and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. For the reasons discussed below, Plaintiff's complaint fails to state a Bivens claim but sufficiently alleges an FTCA claim against the United States.[2]

I.   *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id.

---

[1] Plaintiff is transgender and therefore requests that the court use the feminine pronoun to refer to her. (Declaration, ECF No. 1-3.)

[2] This Court's conclusive screening of Plaintiff's claims is reserved until she obtains *in forma pauperis* status. See Izquierdo v. New Jersey, 532 F. App'x 71, 72-73 (3d Cir. July 25, 2013) (district court may decide whether to dismiss the complaint under 28 U.S.C. § 1915(e)(2) after leave to proceed IFP is granted).

(internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

3

conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II.   DISCUSSSION

    A.   The Complaint

Plaintiff alleged the following facts in her complaint, which are accepted as true for purposes of this screening. Plaintiff, a transgender inmate who had been diagnosed with gender dysphoria, arrived at FCI-Fort Dix West Unit, in Fort Dix, New Jersey, on June 16, 2015. (Compl., ECF No. 1 at 10.) All Defendants were aware Plaintiff was coming to FCI Fort Dix as a transgender inmate, and her first housing assignment was to a twelve-man room. (Id.) At her intake on June 22, 2015, Plaintiff was designated "at risk" for sexual victimization, and all Defendants were notified. (Id.)

On July 7, 2015, Plaintiff met with Unit Manager Byrd and Counselor Hamel about her fear of being unsafe housed with eleven men. (Id.) Byrd told Plaintiff the warden had directed him to talk to Plaintiff about her concerns. (Id.) Plaintiff, pointing to

4

Bureau of Prison ("BOP") Program Statements concerning transgender inmates, requested to be housed in a two-man cell with a screened cellmate. (Compl., ECF No. 1 at 10.) Plaintiff had been sexually victimized by staff at another institution before coming to FCI Fort Dix. (Id.) Counselor Hamel objected to Plaintiff being housed in a two-man cell because she had just arrived at Fort Dix. (Id.)

Plaintiff was moved into a two-man cell on July 10, 2015, but the cell was the last cell on the hallway of the second floor, farthest from the officers' station, which was on the first floor. (Id. at 11.) In Psychology Services on July 13, 2015, Plaintiff reported her concern over comments inmates had been making about her nipples, and her discomfort with being housed at FCI Fort Dix. (Id.)

On August 11, 2015, Counselor Hamel assigned Plaintiff a new cellmate who was a sex offender. (Id.) Plaintiff wrote a grievance to Warden Hollingsworth on August 15, 2015, complaining that Hamel was not properly trained on housing a transgender inmate. (Id. at 11.) On August 18, 2015, Plaintiff submitted a transfer request to Unit Manager Byrd, who distributed it to Associate Warden Dynan, Warden J. Hollingsworth, Dr. Rehwhinkle, Dr. Marantz and Associate Warden Hazelwood. (Id.) In Psychology Services that day, Plaintiff

5

expressed her concern about being at risk for sexual victimization. (Compl., ECF No. 1 at 11.)

Plaintiff met with Dr. Rehwhinkle on August 21, 2015. (Id.) Rehwhinkle told Plaintiff that Dr. Marantz agreed with her transfer request, and the request was in the process for approval. (Id.) Plaintiff was informed she would not be assigned another cellmate as long as she was housed at FCI Fort Dix. (Id.) Plaintiff remained in a cell by herself, but it was the farthest cell from the officers' station. (Id.) The defendants refused to move Plaintiff closer to the officers' station, and would not allow her to put a makeshift lock on her cell door. (Id. at 12-13.) The Court infers from Plaintiff's allegations that she was housed in a unit that did not have locks on the cell doors.

On October 14, 2015, at 1:45 a.m., Plaintiff awoke in her cell with a sharp object cutting her neck. (Id. at 12.) Inmate Michael Garcia sexually assaulted Plaintiff. (Id.)[3] Although Garcia was wearing a ski mask, Plaintiff knew who it was. (Id.) Garcia cut Plaintiff seven times with a sharp object. (Id.) After

---

[3] Plaintiff alleges the inmate who assaulted him "touched all over my body, inserted his fingers and his tongue (oral sodomy) into my anus. He cut me (7) times during the sexual assault, so physical, DNA and forensic evidence was present on my body and possibly my clothing that would have conclusively identified him as my perpetrator." (Compl., ECF No. 1 at 14, ¶6.) Plaintiff received a tetanus shot upon his request. (Id. at 15, ¶7.)

6

the assault, Plaintiff ran down to the officers' station and reported the assault. (Compl., ECF No. 1 at 12.) Plaintiff alleges DNA evidence was present on her body and possibly her clothing after the assault. (Id. at 14.)

Plaintiff was only "half examined" by Dr. Carl Sceusa after the assault. (Id.) Dr. Sceusa did not perform a rape kit examination, collect DNA or do a forensic medical exam. (Id. at 12.) Lieutenant Bittner interviewed Plaintiff about the sexual assault on October 21, 2015, a week after it occurred. (Id.) In investigating the assault, Lieutenant Bittner did not ask Plaintiff what the perpetrator was wearing or attempt to retrieve the clothing for forensic testing. (Id. at 14.) The officer who took Plaintiff's clothing after the assault threw the clothing into a laundry bin with dirty clothes of other inmates. (Id. at 13.) Plaintiff was placed in involuntary protective custody in the segregated housing unit. (Id.) The clothing was never collected as evidence until after Plaintiff was housed in the SHU. (Id.)

Staff in Psychology Services completed a Diagnostic and Care Level Formulation for Plaintiff the day after the assault. (Id. at 12.) On October 29, 2015, Plaintiff received a memo that Lieutenant Bittner found the sexual assault allegations were unsubstantiated.

(Compl., ECF No. 1 at 12.) Plaintiff was transferred out of FCI Fort Dix on November 2, 2015. (Id.)

Plaintiff contends that Defendants' failure to protect her and failure to properly investigate the sexual assault violated her rights under the Fifth and Eighth Amendments. (Id. at 13.) Plaintiff named the following as defendants: Warden Jordan Hollingsworth, Associate Warden Christine Dynan, Associate Warden Robert Hazelwood, Chief of Psychology Dr. Marantz, Captain Pena, Lieutenant Bittner, Counselor Hamel, Dr. Carl Sceusa, Unit Manager Byrd, and John Doe PREA Compliance Manager. (Id. at 5-7.)

### B. Bivens Claims

#### 1. Eighth Amendment Failure to Protect

The Eighth Amendment's prohibition on cruel and unusual punishment requires prison officials to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994)(internal quotations omitted). To state a claim under the Eighth Amendment against a prison official for failure to protect an inmate from violence, an inmate must plead facts showing that (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's

8

deliberate indifference caused him harm. Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012).

To establish the subjective standard of deliberate indifference, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Id. (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001)). Actual knowledge can be shown by circumstantial evidence where (1) "'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and (2) where 'circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.'" Counterman v. Warren County Correctional Facility, 176 F. App'x 234, 238 (3d Cir. 2006) (quoting Beers-Capitol, 256 F.3d at 131 (quoting Farmer, 511 U.S. at 837)). Inquiry into the risk of harm, as opposed to the defendant's knowledge of it, is objective. Id.

The facts alleged by Plaintiff in support of deliberate indifference are that (1) Defendants knew she was a transgender inmate who had been subject to sexual assault by staff in another correctional facility; (2) Plaintiff was placed alone in an unlocked cell far from the officers' station; (3) Plaintiff alerted Defendants to her fears for her safety; (4) Plaintiff alerted

9

Defendants about other inmates' comments about her nipples; and (5) Defendants refused to permit Plaintiff to use a make-shift lock on her cell.

Plaintiff's allegations do not meet the standard for Eighth Amendment liability based on a defendant's knowledge of an excessive risk to inmate safety. Plaintiff has not alleged a well-documented pattern of inmate sexual assaults on inmates at FCI Fort Dix in the past. Plaintiff alleged that all the defendants knew she was transgender and had been assaulted in another facility, but the reasons Plaintiff gave for fearing for her safety were that other inmates had made comments about her nipples, and her private, unlocked cell was far from the officers' station. Although the circumstances made Plaintiff vulnerable to attack, the allegations do not support the knowledge of defendants that there was an excessive risk that an inmate would commit such an attack. Therefore, upon screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court would dismiss the Eighth Amendment failure to protect claim(s) for failure to state a claim upon which relief may be granted.[4]

---

[4] Insofar as Plaintiff alleges the Defendants' failure to protect her from violence violated her Due Process Rights, the "more-specific-provision-rule" applies. The Supreme Court established the more-specific-provision-rule because it was reluctant to expand the concept of substantive due process. Betts v. New Castle

## 2. Fifth Amendment Due Process

Plaintiff asserts her Fifth Amendment right to Due Process was violated because she could not hold Inmate Michael Garcia accountable for sexual assault due to the faulty investigation conducted by Defendants. (Compl., ECF No. 1 at 9-10.) Specifically, Plaintiff alleged:

> The Bureau of Prisons have a particular Program Statement that deal directly with the issues listed in this claim however the dictates of Program Statement 5324.12, "Sexually Abusive Behavior Prevention and Intervention," was not followed in my sexual abuse investigation and proves that the defendants had no intention of protecting me nor holding my perpetrator … accountable for sexually assaulting me.

(Compl., ECF No. 1 at 13.)

BOP Program Statement 5324.12 interprets Federal Bureau of Prisons regulations promulgated in response to the Prison Rape Elimination Act of 2003 ("PREA"). See BOP Program Statement 5324.12(1) Purpose and Scope.[5] PREA requires that the Attorney

---

Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010). The rule provides that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Id. (quoting United States v. Lanier, 520 U.S. 259, 272 n. 7 (1997)). Thus, the Court analyzes Plaintiff's failure to protect claim under the Eighth Amendment.

[5] Available at

11

General promulgate regulations for sexual abuse prevention, and that those regulations are binding on the Federal Bureau of Prisons. BOP Program Statement 5324.12(1) However, violation of a prison regulation alone does not violate the Due Process Clause. See <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995)(state-created liberty interests protected by the Due Process Clause are limited to freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.)

  28 C.F.R. § 115.71(a) provides that, "[w]hen the agency conducts its own investigations into allegations of sexual abuse and sexual harassment, it shall do so promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports." BOP Program Statement 5324.12 adds that "[a]t the conclusion of the investigation, the allegations must be indicated as: •substantiated; •unsubstantiated (may have occurred, but insufficient evidence to prove); • unfounded (evidence proves that this could not have happened)." The evidentiary standard for finding whether an allegation of sexual abuse is substantiated shall be no higher than a preponderance of the evidence. 28 C.F.R.

---

https://www.bop.gov/PublicInfo/execute/policysearch?todo=query#

§ 115.72. Pursuant to 28 C.F.R. § 115.21 Evidence protocol and forensic medical examinations:

> (a) To the extent the agency is responsible for investigating allegations of sexual abuse, the agency shall follow a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence for administrative proceedings and criminal prosecutions.
>
> …
>
> (c) The agency shall offer all victims of sexual abuse access to forensic medical examinations, whether on-site or at an outside facility, without financial cost, where evidentiary or medically appropriate. Such examinations shall be performed by Sexual Assault Forensic Examiners (SAFEs) or Sexual Assault Nurse Examiners (SANEs) where possible. If SAFEs or SANEs cannot be made available, the examination can be performed by other qualified medical practitioners. The agency shall document its efforts to provide SAFEs or SANEs.

"The touchstone of due process is the protection of the individual against arbitrary action of government." Miller v. City of Philadelphia, 174 F.3d 368, 374–75 (3d Cir. 1999) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974). "[W]here abusive action by a member of the executive branch is alleged, 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" Miller, 174 F.3d at 375 (3d Cir. 1999) (quoting County of Sacramento v. Lewis, 118 S. Ct. 1708, 1716

13

(1998))(citation and internal quotation marks omitted in original.) To meet this standard, executive action must "shock the conscience." Id. (quoting Lewis, 118 S. Ct. at 1717). Executive officials are not liable for negligence under the Due Process Clause. Miller, 174 F.3d at 375 (quoting Lewis, 118 S. Ct. at 1717). Whether conduct is "conscience-shocking" depends on the circumstances of a particular case. Id.

    Here, Plaintiff alleged he reported a sexual assault immediately, and Dr. Sceusa only half-examined him, without performing a forensic rape examination. Plaintiff does not explain what Dr. Sceusa's examination entailed or whether Plaintiff asked for a forensic rape examination but was refused.

    Plaintiff also alleged that Lieutenant Bittner's investigation into the assault was improper because it was untimely, and Bittner did not ask Plaintiff what his attacker was wearing, nor did Bittner gather any forensic evidence. Bittner found Plaintiff's claim unsubstantiated but Plaintiff did not present any facts, apart from her allegation of the assault, which should have led Bittner to conclude the claim was substantiated. For example, Plaintiff has not alleged any facts, apart from the possibility of DNA evidence being present, that Garcia had access to him and was not in his assigned place at the time of the attack.

Plaintiff has not alleged sufficient facts to "shock the conscience" about the manner in the alleged sexual assault was investigated. Pursuant to the screening required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court would dismiss the Fifth Amendment Due Process Claim without prejudice.

The Court further notes that a Fifth Amendment Due Process Claim for failure to properly investigate a sexual assault allegation in prison is a new Bivens context subject to the analytical framework described by the Supreme Court in Ziglar v. Abbasi[6] before a Bivens remedy may be implied.[7] Before permitting a Bivens claim to proceed in a new context, a court must conduct

---

[6] 137 S. Ct. 1843 (2017).

[7] The Supreme Court defined the test:

> The proper test for determining whether a case presents a new Bivens context is as follows. If the case is different in a meaningful way from previous Bivens cases decided by this Court, then the context is new.

137 S. Ct. at 1859. The Supreme Court has only recognized three Bivens contexts: (1) to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures; (2) to compensate under the Fifth Amendment Due Process Clause an administrative assistant who sued a Congressman for firing her because she was a woman; and 3) to compensate a prisoner's estate under the Eighth Amendment Cruel and Unusual Punishments Clause for failure to treat the prisoner's asthma. Id. at 1854-55 (citing Bivens, 403 U.S. at 397; Davis v. Passman, 442 U.S. 228 (1979); and Carlson v. Green, 446 U.S. 14 (1980)).

a special factors analysis. Ziglar, 137 S. Ct. at 1859. Therefore, even if Plaintiff can amend his complaint to allege facts that "shock the conscience" so as to invoke the Due Process Clause, the Ziglar analysis may still preclude Plaintiff from bringing a Bivens claim in this context. The Court reserves the Bivens issue until such time as Plaintiff states a cognizable Due Process Claim.

   C.   FTCA Claim

Plaintiff alleged an FTCA claim against the United States for the defendant prison employees' negligent failure to protect her and investigate her sexual assault claims in accordance with BOP regulations and BOP Program Statement 5324.12. (Compl., ECF No. 1 at 8-9.) Plaintiff further alleged that she exhausted her FTCA claim with the BOP. (Id. at 9.) Upon conclusive screening of Plaintiff's complaint, the Court would permit Plaintiff's FTCA claim to proceed against the United States as the sole defendant.[8] See CNA v. U.S., 535 F.3d 132, 138 n.2 (3d Cir. 2008)(the United States is the sole proper defendant to an FTCA claim). If Plaintiff reopens this matter by paying the filing fee or submitting a

---

[8] The Court makes no finding whether the discretionary function exception would bar Plaintiff's FTCA claims. Such a claim could properly be raised by the Government under Federal Rule of Civil Procedure 12(b)(1). See e.g. S.R.P. ex rel. Abunabba v. U.S., 676 F.3d 329, 333 (3d Cir 2012)("the Government has the burden of proving the applicability of the discretionary function exception.")

properly completed IFP application without submitting an amended complaint, the Court would dismiss the Bivens claims without prejudice and permit only Plaintiff's FTCA claim(s) to proceed.

III. CONCLUSION

For the reasons stated above, the Court denies Plaintiff's IFP application without prejudice. The Court will administratively terminate this action subject to reopening by Plaintiff if he timely submits a properly completed IFP application pursuant to 28 U.S.C. § 1915(a)(2).

An appropriate order follows.

DATE: April 9, 2018

                                     s/Renée Marie Bumb
                                     **RENÉE MARIE BUMB**
                                     **United States District Judge**