EXHIBIT A

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Warden Hollingsworth | DATE: August 12, 2015 |
|---|---|
| FROM: Christopher Shorter | REGISTER NO.: 21344-017 |
| WORK ASSIGNMENT: CCS Orderly | UNIT: 5841/5851 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request. SUBJECT: REQUEST TO HAVE HOUSING BLOCKED FROM STAFF HAMEL'S POWER TO ASSIGN INMATE TO MY CELL ARBITRARILY IN INJURY TO MY CIVIL RIGHTS.

Greetings Warden Hollingsworth:

In regards to the above stated "SUBJECT", this is PERSONAL NOTICE TO YOU that in violation of my 14th Amendment civil rights to equal protection of laws and due process of law and the Federal Bill of Rights, to writ: 1st and 4th and 5th Amendments to Federal Constitution Of The United States, applicable to the State of New Jersey pursuant the 14th Amendment, are violated and there is no restraint nor disclosed means or process to prevent reoccuring future violations by staff Hamel as now running Housing Unit 5841, where as now exist for me, staff Hamel arbitrarily at his pleasure or whim moves male inmates into the housing assigned to me without regards for and with full knowledge of the fact I am being treated for the serious condition of GENDER DYSPHORIA.

SEE ATTACHED PAGE

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

ecord Copy - File; Copy - Inmate

As you presumed to be aware or have a constitutional duty to be aware, of the facts GENDER IDENTITY DISORDER requires parties receiving Federal and local State monies in providing medical treatment and housing condition mandate development of a comprehensive policy and/or treatment plan to particular medical and psychological treatment needed to successfully treat this particular dysphoria. In this regards, I have found support in written policies and statements supposing to show process and treatment methodologies parties receiving government funding or State licensing rights in treating inmates with my condition. For example, "Program Statement 6031.04 (30)," states in clear unambiguous words, namely: "If a diagnosis of (G.I.D.) GENDER IDENTITY DISORDER is reached, a proposed treatment plan will be developed which promotes the physical and mental stability of the patient. In summary, inmates in the custody of the Bureau with a possible diagnosis of G.I.D. will receive a current individualized assessment and evaluation." And if this Program Statement is not enough in the way of intent when monies and coercive power of Government is allowed a private prison in regards to citizens with my condition and needed treatment, Program Statement 1040.04 (Policy 551.90), makes clear to Staff here that hate actions and deliberate targeting of me in exercising housing assignment and living quarters for me in regards to me is "Prohibited". Stating in significant part: that all staff persons prohibited from discriminating against inmates diagnosed with GENDER DYSPHORIA in the making of Administrative and Housing Decisions.

Herein, staff Hamel has made it his regualr course of operation to assign men to the housing cell with me at his pleasure, despite having full knowledge of the fact and being repeatedly noticed in sessions and meetings with me of the fact I am a citizen who is being treated for GENDER DYSPHORIA with estrogen, that my body is openly female, that I must wear bra and panties and other female undergarments as part of the physical change I am going through; nevertheless, staff Hamel move sex offender(s) in with me at his pleasure. Thus I am noticing you to this behavior; and I request that staff Hamel and all others who show open hate or hostility toward me because of my GENDER DYSPHORIA, be prohibited control over my housing, medical treatment, receipt of woman's undergarments, and denial of my civil rights where they act with coercive power of Government.

EXHIBIT A

TRULINCS 21344017 - SHORTER, CHRISTOPHER LAMON - Unit: COL-C-A

---

FROM: 21344017
TO:
SUBJECT: Request For Informal Resolution (8-12-2015)
DATE: 11/18/2015 09:54:48 AM

I grieve Warden Hollingsworth, violation of my 14th Amendment constitutional right, by failing to properly train his staff as it pertains to (ME) who suffer from and is being treated for GENDER DYSPHORIA.

Specifically, I allege that Warden Hollingsworth is the (CEO) of Federal Correctional Institution-Fort Dix. As per every applicable constitutional right and program statement dictates Warden Hollingsworth is responsible for ensuring that his staff is properly trained.

At this point Warden Hollingsworth has failed to comprehensively develop policies and/or a treatment plan to particularly address Administrative or Housing decisions as they pertain to inmates who are diagnosed and is being treated with GENDER DYSPHORIA. Program Statement 6031.04(30) clearly states, "If a diagnosis of (GID) GENDER IDENTITY DISORDER is reached, a proposed treatment plan will be developed which promotes the physical and mental stability of the patient. In summary, inmates in the custody of the Bureau with a possible diagnosis of GID will receive a current individualized assessment and evaluation". Program Statement 1040.04(Policy 551.90), Prohibits staff from discriminating against inmates diagnosed with GENDER DYSPHORIA in the making of Administrative and Housing Decisions.

Warden Hollingsworth has delegated His job of properly training His employees to His subordinates, who has shown to be inexperienced with dealing with inmates diagnosed and treated for GENDER DYSPHORIA. These subordinates are making decisions about me which hinges on their personal beliefs and/or discriminatory animus harbored about persons with GENDER DYSPHORIA. The result of such action establishes a custom or policy that violates my constitutional rights.

In Conclusion it is Warden Hollingsworth job to properly train his employees on HOW to make Administrative and Housing decision that don't violate inmates with GENDER DYSPHORIA constitutional right. To not do so would result in deliberate indifference to my constitutional rights.

I particularly request that since the decision has been made to house me in 5841 permanently, that my cell is BLOCKED from either R&D or Counselor Hamel assigning anybody to be housed with me. From 8/11-8/12, I was housed with a Sex Offender. Clearly no thought went into the decision to place a person with a Sexual Addiction into the room with (ME), who is diagnosed with GENDER DYSPHORIA. Had these employees been educated on my condition properly they would be aware that this is a NO-NO. If the Administrative and Housing custom and policies that is currently in place are not addressed I will continue having to deal with such issues from week to week as new inmates come in. It is my understanding that the Housing decisions in 5841 is based upon Counselor Hamel's personal belief that it is dangerous to house inmates on the third floor of this building. Clearly this is erroneous housing decision making because similarly situated inmates are housed on the third floor of every other housing unit. Program Statement 5270.09 Inmate Discipline Program is in place to deal with any inmate who violate the rules.

I am a person who is being treated for my GENDER DYSPHORIA with Estrogen and I wear Female undergarments i.e.. (Bra & Panties). It's going to be few inmates that I am comfortable being housed with and I do have a 14th Amendment Constitutional right to Equal Protection Under The Laws. Building 5841 have a whole empty floor to accommodate the incoming inmates therefore there is no reason a policy or custom should be in place to force me to be housed with any inmate that I am uncomfortable with, especially a Sex Offender given my situation.

It is the job of Warden Hollingsworth to properly train his employees on HOW NOT to violate my constitutional rights in the Administrative and Housing decisions that is made. Regardless of what building I am permanently housed in proper Administrative and Housing decisions are going to have to be made to ensure that my constitutional rights are not violated. Based upon Warden Hollingsworth failure to develop a custom or policy which PROHIBITS violations of inmates diagnosed and treated for GENDER DYSPHORIA an Administrative Remedy is requested.

I further request that this matter is referred to the Office of Government Ethics, Office of the Inspector General, Office of Professional Responsibility and The Office of Internal Affairs, for independent and impartial investigations to determine whether the conduct and inactions of Warden Hollingsworth violates any statutory, administrative and/or constitutional provisions.

It should also be noted that this institution does not have a LGBT Liaison or Representative to further education this staff about TRANSGENDER Inmates like other institutions have. How are the staff supposed to know how to make proper decisions that don't violate TRANSGENDER persons constitutional rights. This is another failure of Warden Hollingsworth.

cc.../Please see attached---INMATE REQUEST TO STAFF (PERSONAL NOTICE TO YOU)
at Exhibit 1, Page 1 & 2

_____8/12/2015_____                    _____
Date                                         Signature of Requester

EXHIBIT B

TRULINCS 21344017 - SHORTER, CHRISTOPHER LAMON - Unit: FTD-W-B

---

FROM: 21344017
TO:
SUBJECT: REQUEST FOR TRANSFER TO TALLADEGA---FCI
DATE: 08/17/2015 07:11:15 PM

REQUEST FOR TRANSFER TO TALLADEGA---FCI

I, CHRISTOPHER LAMONT SHORTER, #21344-017, submit that I am classified as a Low Security level inmate who is housed at FCI-Fort Dix which does not meet my specific security needs and is more than 500 miles from my family and release residence.

I submit that I require a GREATER SECURITY LEVEL and hereby request to be transferred to FCI---TALLADEGA which will place me in a facility more commensurate with my security needs.

The specifics of my situation that would justify the adjustment of my CUSTODY CLASSIFICATION and/or a GREATER SECURITY MANAGEMENT VARIABLE would be as follows:

1.) Per Program Statement 5324.11 (Policy 115.41)(a), "My history of sexual victimization while in BOP Custody by Staff which is currently being investigated by The Office of Internal Affairs.

2.) Per Program Statement 5324.11 (Policy 115.41)(d)(7), I am perceived to be TRANSGENDER, as I am diagnosed with GENDER DYSPHORIA.

3.) Per Program Statement 5324.11 (Policy 115.41)(d)(8), I have previously experienced SEXUAL VICTIMIZATION by BOP Staff while in BOP Custody.

4.) Per Program Statement 5324.11 (Policy 115.41)(d)(9), My perception of my vulnerability is, I am currently housed at the LARGEST BOP facility, who house a large number of SEX OFFENDERS, therefore, I come in contact daily with various inmates with EXCESSIVE SEXUAL PREOCCUPATION. This facility also do not have any locks on any doors to the cells in the housing unit. All of these factors place me "at risk" for victimization.

5.) Per Program Statement 5324.11 (Policy 115.41)(g), I am diagnosed and treated for GENDER DYSPHORIA. I am being treated with ESTROGEN and part of my treatment plan allows me to wear FEMALE UNDERGARMENTS, i.e... BRA & PANTIES.

6.) Per Program Statement 5324.11 (Policy 115.42)(a), "Once an inmate has been identified as a victim or as "at risk" for victimization, UNIT MANAGEMENT should review classification options. These options may include transfer to a GREATER SECURITY FACILITY, (e.g..MANAGEMENT VARIABLE).

7.) Per Program Statement 5324.11 (Policy 115.42)(e), "A TRANSGENDER inmate's own views with respect to her own safety shall be given serious consideration.

It is my belief that this facility can not accommodate my SECURITY needs. I believe a GREATER SECURITY FACILITY where I am able to sleep behind locked doors will be a better option. Specifically TALLADEGA---FCI because this facility has SINGLE, (One Man Cells) and TWO Man Cells----ONLY!!! Plus it is in my REGION close to my FAMILY where I will be able to have their DIRECT support through visiting while I am going through the transition from Male to Female.

8.) Per Program Statement 5324.11 (Policy 115.43)(a), "Protective Custody"---"Inmates at high risk for sexual victimization shall not be placed in involuntary segregation housing unless an assessment of all available alternatives has been made".

I don't need to be place in protective custody at FCI---FORT DIX simply because this institution can't accommodate my SECURITY needs. The best option would be to TRANSFER me to a facility that can, preferably TALLADEGA---FCI.

Accordingly, I hereby request a TRANSFER to TALLADEGA---FCI a GREATER SECURITY FACILITY in my region of the SOUTHEAST. Program Statement 5100.08, further states that, "Every effort will be made to assign the inmate to the indicated facility, (near family) and, where this is not immediately possible, a redesignation will be made". This Program Statement does not state that an inmate have to spend any certain number of months at any Facility in order for the BOP to follow it's own policies. An inmate is entitled to expect the BOP to follow its own policies, (See Anderson v. Smith, 697 F.2d 239 (8th Cir 1983) (citing WOLFE v. McDONNELL, 418 U.S. 539, 557, 41 L.Ed. 2d 935, 94 S.Ct. 2963 (1974)

EXHIBIT B

TRULINCS 21344017 - SHORTER, CHRISTOPHER LAMON - Unit: FTD-W-B

---

Respectfully Submitted,

CHRISTOPHER LAMONT SHORTER, #21344-017

cc.../Exhibit 1---Program Statement 5324.11 (Polices, 115.41, 115.42 & 115.43) Pages 1-6
Exhibit 2---Program Statement 6031.04(30)

| | |
|---|---|
| 8/17/2015 | _[signature]_ |
| Date | Signature of Requester |

EXHIBIT B

# PROGRAM STATEMENT 5324.11
Sexually Abusive Behavior Prevention and Intervention Program

## SCREENING FOR RISK OF SEXUAL VICTIMIZATION AND ABUSIVENESS

§ 115.41 Screening for risk of victimization and abusiveness.

**(a) All inmates shall be assessed during an intake screening and upon transfer to another facility for their risk of being sexually abused by other inmates or sexually abusive toward other inmates.**

All inmates entering an institution are screened as directed by Health Services, Psychology Services, and Unit Management policies. Further information on intake mental health screenings is in section 115.81, below. The following steps should be taken:

**Inmates with a history of sexual victimization while in BOP custody.** When, during the intake screening process, staff identify inmates with a history of sexual victimization within BOP custody (e.g., from self-report or from review of available documents, such as judgment and commitment orders, criminal records, pre-sentence investigation reports, Inmate Central File data, etc.), they must refer the inmate to Psychology Services. If not previously documented on BOP records, staff must notify the Chief of Correctional Services of the inmate's report of victimization to ensure that appropriate steps (investigation, documentation, CIMS concerns, etc.) have been taken. The Chief of Correctional Services also updates any current SENTRY STG assignment pertaining to the alleged victim.

**Inmates with a history of sexual victimization while in a non-BOP setting.** If victimization occurred in a non-BOP setting, staff should document information, and appropriate psychological treatment and monitoring will be provided if needed.

**Inmates with a history of sexual predation.** When, during the intake screening process, staff identify inmates with a history of sexual predation (e.g., from self-report or from review of available documents such as judgment and commitment orders, criminal records, pre-sentence investigation reports, Inmate Central File data, etc.), staff must refer the inmate to Psychology Services.

If incidents of sexual predation have not previously been documented on BOP records, staff must notify the Chief of Correctional Services of the inmate's history of predation to ensure that appropriate steps (investigation, documentation, CIMS concerns, etc.) have been taken. The Chief of Correctional Services also updates a current SENTRY STG assignment pertaining to the alleged perpetrator.

**(b) Intake screening shall ordinarily take place within 72 hours of arrival at the facility.**

**(c) Such assessments shall be conducted using an objective screening instrument.**

progstat 1

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT B

PROGRAM STATEMENT 5324.11
Sexually Abusive Behavior Prevention and Intervention Program

Staff are required to use the Bureau's Program Statement **Intake Screening**, which outlines issues and steps to take during the intake screening process generally, including issues concerning sexual abuse and sexual assault. The Unit Team uses the Intake Screening Form during the intake process.

To complete the Intake Screening Form, the staff must use the PREA Intake Objective Screening Instrument, Attachment A, for guidance. The PREA Intake Objective Screening Instrument encompasses all factors listed in section (d) of this subsection. Ample copies of the PREA Intake Objective Screening Instrument will be maintained in the area of the institution where intake is conducted by Unit Management.

The PREA Intake Objective Screening Instrument should be completed using only information available to staff at the time of intake, and with the purpose of referring the inmate for further assessment if needed.

After applying the criteria on the PREA Intake Objective Screening Instrument, staff complete the "Intake Screening Form" and must note any specific information in the comment section applicable to victimization or abusiveness. If none of the PREA Intake Screening Objective Instrument criteria apply, staff make an entry stating, "No apparent PREA criteria met," in the comment section applicable to victimization or abusiveness.

If further assessment is needed after documenting and applying the criteria, an inmate is considered "at-risk" until a final determination is made by Psychology Services or Correctional Services. Referrals to Psychology Services or Correctional Services are documented at the local level.

Inmates are encouraged to disclose as much information as possible for the agency to provide the most protection possible under this policy. If an inmate chooses not to respond to questions relating to his/her level of risk, he/she may not be disciplined, as described in section (h) of this subsection.

Sensitive information is limited to staff who have a need to know.

**(d) The intake screening shall consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization:**

**(1) Whether the inmate has a mental, physical, or developmental disability;**

**(2) The age of the inmate;**

**(3) The physical build of the inmate;**

**(4) Whether the inmate has previously been incarcerated;**

progstat 2

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT B

PROGRAM STATEMENT 5324.11

Sexually Abusive Behavior Prevention and Intervention Program

(5) Whether the inmate's criminal history is exclusively nonviolent;

(6) Whether the inmate has prior convictions for sex offenses against an adult or child;

(7) Whether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming;

(8) Whether the inmate has previously experienced sexual victimization;

(9) The inmate's own perception of vulnerability; and

(10) Whether the inmate is detained solely for civil immigration purposes.

Some inmates are "at risk" for victimization due to one or a combination of factors such as physical appearance (small in stature, effeminate, etc.); demeanor (weak/nonassertive, anxious, depressed); special situations (e.g., high-profile, sexual activity with a child, first-time offender); or special needs (cognitive limitations, social inadequacy, developmental disability, etc.).

(e) The initial screening shall consider prior acts of sexual abuse, prior convictions for violent offenses, and history of prior institutional violence or sexual abuse, as known to the agency, in assessing inmates for risk of being sexually abusive.

Some inmates pose a serious risk of engaging in sexually abusive behavior while in BOP custody because of their history of sexually abusive behaviors while in prison (stalking, excessive sexual preoccupation, etc.), or from the criminal history. In the case of inmates "at risk" for perpetration, Correctional Services should be notified by Psychology Services.

(f) Within a set time period, not to exceed 30 days from the inmate's arrival at the facility, the facility will reassess the inmate's risk of victimization or abusiveness based upon any additional, relevant information received by the facility since the intake screening.

Psychology Services staff reassess the inmate's risk level whenever warranted and within 30 days of arrival at the institution, based upon any additional information. Reassessment is not required if no additional information is received after intake screening.

(g) An inmate's risk level shall be reassessed when warranted due to a referral, request, incident of sexual abuse, or receipt of additional information that bears on the inmate's risk of sexual victimization or abusiveness.

Psychology Services staff will reassess the inmate's risk level whenever warranted based upon

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT B

PROGRAM STATEMENT 5324.11

Sexually Abusive Behavior Prevention and Intervention Program

receipt of additional relevant information (e.g., incident of sexual abuse, protective custody request, recent diagnosis of gender dysphoria, etc.).

**(h) Inmates may not be disciplined for refusing to answer, or for not disclosing complete information in response to, questions asked pursuant to paragraphs (d)(1), (d)(7), (d)(8), or (d)(9) of this section.**

If an inmate refuses to respond or elects not to disclose information that applies only to questions about disabilities; Gay, Lesbian, Bisexual, Transgender, Intersex (GLBTI) status; gender nonconformance; previous sexual victimization; and the inmate's self-perception of vulnerability, he/she may not be disciplined.

**(i) The agency shall implement appropriate controls on the dissemination within the facility of responses to questions asked pursuant to this standard in order to ensure that sensitive information is not exploited to the inmate's detriment by staff or other inmates.**

Any information related to sexual victimization or abusiveness, including the information entered into the comment section of the Intake Screening Form, is limited to a need-to-know basis for staff, only for the purpose of treatment and security and management decisions, such as housing and cell assignments, as well as work, education, and programming assignments.

## § 115.42  Use of screening information.

**(a) The agency shall use information from the risk screening required by § 115.41 to inform housing, bed, work, education, and program assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive.**

Once an inmate has been identified as a victim or perpetrator, or as "at risk" for victimization or perpetration, Unit Management should review classification options. These options may include transfer to a special treatment program (e.g., Sex Offender Management Program), transfer to a greater or lesser security facility (e.g., management variable), application of a PSF (e.g., sex offender), or changes in housing units, cell assignments, work assignments, and/or education assignments.

**(b) The agency shall make individualized determinations about how to ensure the safety of each inmate.**

**(c) In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a**

progstat                                              4

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT B

PROGRAM STATEMENT 5324.11
Sexually Abusive Behavior Prevention and Intervention Program

placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.

(d) Placement and programming assignments for each transgender or intersex inmate shall be reassessed at least twice each year to review any threats to safety experienced by the inmate.

(e) A transgender or intersex inmate's own views with respect to his or her own safety shall be given serious consideration.

(f) Transgender and intersex inmates shall be given the opportunity to shower separately from other inmates.

(g) The agency shall not place lesbian, gay, bisexual, transgender, or intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status, unless such placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting such inmates.

§ 115.43 Protective custody.

(a) Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers. If a facility cannot conduct such an assessment immediately, the facility may hold the inmate in involuntary segregated housing for less than 24 hours while completing the assessment.

Inmates are placed in administrative detention in accordance with the Program Statement **Special Housing Units**.

(b) Inmates placed in segregated housing for this purpose shall have access to programs, privileges, education, and work opportunities to the extent possible. If the facility restricts access to programs, privileges, education, or work opportunities, the facility shall document:

(1) The opportunities that have been limited;

(2) The duration of the limitation; and

(3) The reasons for such limitations.

When an inmate is placed in special housing involuntarily, access to programs, privileges,

progstat 5

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT B

PROGRAM STATEMENT 5324.11

Sexually Abusive Behavior Prevention and Intervention Program

education, or work must not be interrupted. If they must be limited, the Chief of Correctional Services ensures that documentation exists reflecting the limitation, duration, and rationale for limitation.

**(c) The facility shall assign such inmates to involuntary segregated housing only until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days.**

**(d) If an involuntary segregated housing assignment is made pursuant to paragraph (a) of this section, the facility shall clearly document:**

**(1) The basis for the facility's concern for the inmate's safety; and**

**(2) The reason why no alternative means of separation can be arranged.**

When determining an appropriate method of safeguarding the inmate assigned "at risk" for victimization, the Warden ensures all options are considered by completing, signing, and dating form BP-A1002, Safeguarding of Inmates Alleging Sexual Abuse/Assault Allegation.

The completed BP-A1002 is stamped "FOI EXEMPT" and placed in the Privacy Section of the Inmate Central File to ensure that sensitive information is not exploited to the inmate's detriment by staff or other inmates. If information gathered leads to an investigation, the BP-A1002 becomes part of the investigative file. The completed form is e-mailed to BOP-CPD/PREA COORDINATOR and filed with the investigative case.

Psychology staff are responsible for crisis intervention, assessment of treatment needs, documentation of the evaluation results, treatment, psychiatric referral, and other treatment options related to the alleged at-risk inmate.

**(e) Every 30 days, the facility shall afford each such inmate a review to determine whether there is a continuing need for separation from the general population.**

The inmate's status is reviewed during weekly Special Housing Unit meetings.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT B

PROGRAM STATEMENT 6031.04 (30)

## 30. INMATES WITH GENDER IDENTITY DISORDER

Inmates with a possible diagnosis of Gender Identity Disorder (**GID**), including inmates who assert they have **GID**, will receive thorough medical and mental health evaluations from medical professionals with basic competence in the assessment of the DSM-IV/ICD-10 sexual disorders and who have participated in BOP's **GID** training, including the review of all available community health records. The evaluation will include an assessment of the inmate's treatment and life experiences prior to incarceration as well as experiences during incarceration (including hormone therapy, completed or in-process surgical interventions, real life experience consistent with the inmate's gender identity, private expressions that conform to the preferred gender, and counseling).

If a diagnosis of **GID** is reached, a proposed treatment plan will be developed which promotes the physical and mental stability of the patient. The development of the treatment plan is not solely dependent on services provided or the inmate's life experiences prior to incarceration. The treatment plan may include elements or services that were, or were not, provided prior to incarceration, including, but not limited to: those elements of the real life experience consistent with the prison environment, hormone therapy, and counseling. Treatment plans will be reviewed regularly and updated as necessary.

Current, accepted standards of care will be used as a reference for developing the treatment plan. All appropriate treatment options prescribed for inmates with **GID** in currently accepted standards of care will be taken into consideration during evaluation by the appropriate medical and mental health care staff. Each treatment plan or denial of treatment must be reviewed by the Medical Director or BOP Chief Psychiatrist. Hormone therapy must be requested through the non-formulary review process, and approved by the Medical Director and /or Chief Psychiatrist. Consultation with the Chief of Psychology prior to such approval may be appropriate in some cases.

In summary, inmates in the custody of the Bureau with a possible diagnosis of **GID** will receive a current individualized assessment and evaluation. Treatment options will not be precluded solely due to level of services received, or lack of services, prior to incarceration.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT C

TRULINCS 21344017 - SHORTER, CHRISTOPHER LAMON - Unit: FTD-W-B

---

FROM: 21344017
TO:
SUBJECT: REQUEST FOR TRANSFER TO TALLADEGA-FCI (PART 2)
DATE: 08/24/2015 02:55:55 PM

REQUEST FOR TRANSFER TO TALLADEGA---FCI (PART 2)

   I, CHRISTOPHER LAMONT SHORTER, #21344-017, previously submitted a request for a GREATER SECURITY TRANSFER TO TALLADEGA--FCI, which is in my region of the Southeast.

   I submit Part 2 of this request quite simply to illuminate on exactly why I picked TALLADEGA---FCI as my requested housing institution.

   Today, Monday (8-24-2015), during the mainline I had a conversation with Unit Manager Byrd that quite honestly frighten me. Unit Manager Byrd, stated that, "It would be ideal if you was sent back to your region, however it was my belief that since you have an ongoing PREA investigation in that region, you might not be redesignated to your region. He said that Dr. Marantz was handling things, so we would see what happens."

   My list of reasons to go back to my region is simple and is as follows:

1.) I am the VICTIM in my PREA case, therefore I should not be punished any further than I already have for reporting such violation. I allowed the PREA violation to go on for awhile trying not to get transferred away from my family. The PERPETRATOR(S) that sexual victimized me is located at Jesup--FCI in Jesup, Georgia. The PERPETRATOR(S) are with their families. I should not be further subjected to being away from my family because someone violated me.

2.) Out of all the Medium Security Institutions in the Southeast Region, TALLADEGA--FCI has the smallest population, which probably will get smaller come November 1, 2015 when the mass release of the recipients of the (2) point reduction. The least amount of people I have to deal with the better for me.

3.) I have NO CIM CONCERNS at TALLADEGA---FCI.

4.) This issue probably is the least important to the BOP, but most important to me. My FAMILY TIES. My MOTHER has a aggressive form of Cancer. Because we have such a large Family population in Alabama, my MOTHER has chosen to get treatment at the Cancer Treatment Center in Birmingham, Alabama, which is (50) miles from TALLADEGA'S institution. I need my family's support while I go through this transition. My MENTAL and EMOTIONAL HEALTH issues is detailed on Page 25 of my PSR. I have not had any Suicide Attempts since being placed in the BOP. My MOTHER'S strength and love have held me up while I've been subjected to the unjust treatment that I have received since being in the BOP. Not being able to visit with my MOTHER as her Cancer progress is about to CRIPPLE me. I just want to be able to visits with my MOTHER, however I got to get closer to home in order to do so, and I also have to survive here in the BOP in order to make it to my release date. I currently have (12) points which is one point away from Camp points. I might be able to go home on a furlough to bury my MOTHER if the unfortunate happen while I was housed at a Camp, however I know I would never be able to go on a furlough at a Medium Security Facility. I've talked with my MOTHER about requesting this GREATER SECURITY TRANSFER and we decided it would be best for me to be housed in a securer facility regardless of whether I was able to carry out her wishes in her death. Please understand that my request has not be taken on lightly.

   Dr. Marantz, I would simply request that all this information is taken into serious consideration in my redesignation process.

Thank You,

CHRISTOPHER LAMONT SHORTER
8-24-2015

EXHIBIT D

TRULINCS 21344017 - SHORTER, CHRISTOPHER LAMON - Unit: FTD-W-B

-----------------------------------------------------------------------------------------

1 of 3

FROM: 21344017
TO:
SUBJECT: Addendum-3, Request For Transfer Revised
DATE: 09/05/2015 09:20:37 PM

ADDENDUM 3---REQUEST FOR TRANSFER WITH PROGRAM STATEMENT 5100.08 AUTHORITY

    Dr. Marantz, since my initial request for a GREATER SECURITY TRANSFER, my situation has changed. I've taken the time to revise my ADDENDUM 3---REQUEST FOR TRANSFER to include the Program Statement Authority which supports my position. The document that I originally submitted to you on 09-03-2015 was a rush job. I was informed of the teleconference meeting that Associate Warden Hazlewood and You would be having on 09-04-2015 with the Central Office. I wanted to get my updated information to You ahead of that teleconference to make my updated request known. I have learned to only make request that the Program Statements support, therefore no request that I have made is outside of the authority of the BOP. I've also learned that many Staff members, regardless of their position don't make all decisions based on policy. Quite simply because they have not taken the time to study the Program Statements. Many Staff members only rely on their position not policy. I in the past have made the mistake of not getting involved with the decisions that have been made about me by BOP Staff which has only resulted in RETALIATORY TRANSFER(S) for me using my FIRST AMENDMENT RIGHT to seek formal review of issues relating to my own confinement and/or other ADVERSE ACTIONS relating to my confinement. My record will show that I have addressed all these issues in good faith and in an honest and straightforward manner in accordance with Program Statement 1330.18 (Policy 542.11)(b). My fight for SAFETY and EQUAL PROTECTION UNDER THE LAWS did not just begin at Fort Dix-FCI. It's been a long fight that I will continue to fight until I am afforded a SAFER situation and is afforded EQUAL PROTECTION UNDER THE LAWS consistent with the 14th AMENDMENT within the BOP.

    Nevertheless, Dr. Marantz, please review the revised ADDENDUM 3 with the Program Statement's Authority.

    Clearly, I understand that the BOP probably have a different set of issues with my request than I do, however in accordance with Program Statement 5324.11(policy 115.42)(e), ("A TRANSGENDER inmate's own views with respect to her own safety shall be given serious consideration"), I am going to continue ADVOCATING what I think is best for my situation.

    Quite simply, one of my biggest issues with my GREATER SECURITY TRANSFER REQUEST is to be transferred back to my region of the South East. There is no reason that I should be housed so far away from home, well over 500 miles.

    I initially requested to be transferred to Talladega-FCI because of it's population being smaller than the other Medium & High Security facilities and also because my MOTHER was being treated in Birmingham, Alabama Cancer Treatment Center. Since the request my MOTHER is no longer being treated in Birmingham, Alabama. She is back in Florida. Her doctors have done all they can do and gave her a life expectancy of 3-6 more months to live. Currently she is on a pain regime to keep her comfortable.

    Because of this I no longer request to be transferred to Talladega-FCI. I request to forego Talladega-FCI for YAZOO CITY--USP.

    YAZOO CITY--USP is also in the South East Region and is easily accessible for me to have the FAMILY support that I need during these trying times. I don't need to say that the level of security at a high security facility is exactly what I feel I need.

    I, specifically, picked YAZOO CITY--USP over YAZOO CITY--FCI (MEDIUM) because the difference in population. Currently YAZOO CITY--USP has a population of 389 inmates well below it's capacity whereas YAZOO CITY--FCI (MEDIUM) has a population of 1458 over it's capacity. According to Program Statement 5100.08--Inmate Security Designation and Custody Classification, "The designation of an inmate to a particular institution is based primarily upon":

---The level of security and supervision the inmate requires, (see attached EXHIBIT 1)
    *I require High Security.

---The inmates release residence, (see attached EXHIBIT 1)
    *YAZOO CITY---USP, is within 500 miles of my release address.

---The level of overcrowding at an institution, (see attached EXHIBIT 1)
    *YAZOO CITY---USP, is the only High Security Facility that is below capacity in the South East Region, with a current
    population of 389.

EXHIBIT D

TRULINCS 21344017 - SHORTER, CHRISTOPHER LAMON - Unit: FTD-W-B

---------------------------------------------------------------------------------------------------------------

---Request by the sentencing court, (see attached EXHIBIT 1)
  * A review of my records will show that my sentencing court did recommend that I be housed as close to my release address as possible.

---Any Central Inmate Monitoring issues, (see attached EXHIBIT 1)
  * A review of my CIM separation is currently housed at Coleman FCC. The staff that I know works at Coleman-FCC. The Perpetrator(s) of my PREA case works at Jesup--FCI. The staff that I have OIG cases with works at Oakdale-FCI. I am well aware that I can't be housed at any of these institutions therefore I have not requested such.

  * I don't have any CIM concerns at YAZOO CITY--USP.

---Any additional security measures to ensure the protection of victims, (see attached EXHIBIT 1)
  * My record will show that the (IRS), AN AGENCY, was the victim in my case. There is no issues within the BOP that need protection from such.

---Any other factor(s) which may involve the inmate's confinement, (see attached EXHIBIT 1)
  * I am an Inmate diagnosed and treated for GENDER DYSPHORIA. I am being treated with Estrogen and am allowed to wear Female undergarments. According to Program Statement 5324.11 (policy 115.42)(a), "These issues place me "at high risk" for SEXUAL VICTIMIZATION".

  * I've already been a VICTIM of SEXUAL VICTIMIZATION since being in the BOP, (See Program Statement 5324.11),(Policy 115.41)(d)(8).

  These issues alone supports my request according to the BOP policies in applicable Program Statements.

  Quite frankly, I was mistaken about Talladega having the lowest population in the South East among the Medium and High Security facilities.

  The population of an institution is a big deal to me because the smaller the population the least amount of inmates I'll have to deal with that have an EXCESSIVE SEXUAL PREOCCUPATION. Sex Offenders are not the only inmates with this issue. Inmates with all kind of charges have EXCESSIVE SEXUAL PREOCCUPATION, so again the smaller the population, the less likely I will have to deal with inmates with that issue.

  I realize that normal protocols is not an inmate going from a LOW Custody institution to a High Custody USP, however nothing about my situation is average, therefore I request that the particulars of my situation takes precedence over what is traditionally done. According to Program Statement, 5100.08---Inmate Security Designation and Custody Classification, "An inmate's security points score is not the only factor used in determining a commensurate security level for an inmate. The application of a MGTV could effect placement at either a higher or lower level institution than the specified point total indicates". (See attached EXHIBIT 2)

  In careful consideration of my request there are many different ways the BOP can accomplish my request. According to Program Statement, 5100.08---Inmate Security Designation and Custody Classification, "A (MSL), Management Security Level, is the security level assigned by the DSCC Administrator or designee to an inmate upon application of a, "Greater Security", management Variable. Based on this management variable, the management security level will normally be one security level greater than the scored security level". (see attached EXHIBIT 3)

  NORMALLY ONE LEVEL, however the factors in my case reflects my need for the normal protocol not to be followed to determine a security level commensurate with my security needs. Housing me at a overcrowded MEDIUM Security Facility is not nearly as SAFE as housing me at a LOW POPULATION, UNDER CAPACITY HIGH SECURITY FACILITY. (see attached EXHIBIT 3, Program Statement 5100.08---Inmate Security Designation and Custody Classification, "V", "Application for a GREATER SECURITY Management Variable mandates the DSCC Administrator determine the most appropriate level of security required by the inmate and apply a Management Security level (MSL). The (MSL) must be AT LEAST one level greater than the scored security level which is based on the security total and public safety factor(s)".

  YAZOO CITY-USP, with a current population of 389 inmates is not near it's capacity, therefore it would be easy for their staff to accommodate my housing needs.

  No none would be forced to house with me as I would not be forced to house with anyone that I'm not completely comfortable being housed with. I have been SEXUALLY VICTIMIZED enough so I don't want to continue being

EXHIBIT D

TRULINCS 21344017 - SHORTER, CHRISTOPHER LAMON - Unit: FTD-W-B

----------

3 of 3

of situation. I do not intend for my situation to end up as Inmate Scott Hill, A.K.A. SAMANTHA HILL, who was violently raped by her cellmate. Had the staff at SAMANTHA HILL'S institution had the housing space and options that YAZOO CITY---USP currently have, I am sure there would have been a different outcome for SAMANTHA HILL.

Dr. Marantz, I am being as proactive as I can be in my situation. I'm not going to sit back and wait until something worse than what has happen to me happen before I voice my concerns and requests about my situation. I have to be in the BOP until 2018, therefore I want to be in the best possible situation I can.

I carry myself in a very respectable manner, so alot of foolishness I don't entertain. Also, I don't want to be housed in a Female Facility. At this point in my life I am still in TRANSITION. MENTALLY and EMOTIONALLY, I am not in a position to be housed with Females who represent who I feel I was born to be. My body is not PHYSICALLY up to par as far as other Female body's and the constant remainder of that is to much for me to deal with at this point. The BOP is unwilling to pay for my BREAST AUGMENTATION or SEXUAL REASSIGNMENT SURGERY, therefore I am not in position to shoulder such a risk to my MENTAL or EMOTIONAL well-being by being housed at a Female Facility. At this point being housed with MEN is all I know, so I've adapted to being the ALIEN of the institution. I feel as though a bigger SPECTACLE of me will be made at a Female Facility, especially when having to be stripped searched by MEN. There is no way I can deal with the humiliation of being the only person at a Female Facility being stripped searched by the Male Staff. I have requested of the BOP what would make me COMFORTABLE and SAFE.

I request to be transferred to YAZOO CITY---USP and I request that my transfer is done in a ROUTINE/URGENT TRANSFER manner. I am tired of not sleeping at night. I sleep in the day light hours to make sure that I am awake at night to be able to watch my door to prevent anyone besides the Officer's counting to come in. I am exhausted with not being able to sleep behind a locked door, however I refuse to be locked in the SHU just because someone else refuse to contol themselves. According to Program Statement 5100.08---Inmate Security Designation and Custody Classification, 'Routine/Urgent Transfer", Transfers must be transported directly typically within two to three weeks of designation. Holdover housing at a county jail or Bureau general population institution is not permissible". I request a Routine/Urgent Transfer as a matter of a SAFETY issue. Given the particulars of my situation holdover facilities is not in a position to provide my Undergarments or able to keep me SAFE outside of INVOLUNTARY SEGREGATION. (see attached EXHIBIT 4)

Dr. Marantz, I hope the decision to transfer me is made soon and that I leave here soon, because this situation is MENTALLY, EMOTIONALLY and PHYSICALLY draining. On Friday, 09-04-2015, because of the STRESS that I am currently under, Dr. Newland MD/CD, prescribed me DEPRESSION/ANXIETY medication to help me cope with my current situation. I have made no request outside the authority of BOP policy. An inmate is entitled to expect the BOP to be familiar and follow its own policies, (See Anderson v. Smith, 697 F.2d 98th Cir. 1983)(citing WOLFF v. MCDONNELL, 418 U.S. 539, 557, 41 L.ED. 2d 935, 94 S.CT. 2963 (1974).

I simply request that all this information is taken into serious consideration in my redesignation process. I would be more than willing to come to any staff meeting to explain anything the might be in question about my request. Please forward this revised request to the Central Office for consideration. Thanks and I look forward to hearing back from you soon concerning this request.

9 | 5 | 2015
Date

Signature of Requester

EXHIBIT D

E X H I B I T ´ 1

Program Statement 5100.08 – Inmate Security Designation and Custody Classification

Bureau of Prisons (BOP) institutions are classified into one of five security levels: MINIMUM, LOW, MEDIUM, HIGH, and ADMINISTRATIVE based on the level of security and staff supervision the institution is able to provide.

An institution's level of security and staff supervision is based on the following factors:

- mobile patrol;
- internal security;
- towers;
- type of inmate housing;
- perimeter barriers;
- inmate-to-staff ratio; and,
- detection devices;
- any special institutional mission.

Similarly, BOP inmates are classified based on the following factors:

- The level of security and supervision the inmate requires; and,

- The inmate's program needs, i.e., substance abuse, educational/vocational training, individual counseling, group counseling, or medical/mental health treatment, etc.

In summary, the initial assignment (designation) of an inmate to a particular institution is based primarily upon:

- The level of security and supervision the inmate requires;

- The level of security and staff supervision the institution is able to provide; and,

- The inmate's program needs.

Additional factors that are also considered when designating an inmate to a particular institution include, but are not limited to:

- The inmate's release residence;

- The level of overcrowding at an institution;

progstat                                1

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

21344017

E X H I B I T   1 (continued)

Program Statement 5100.08 – Inmate Security Designation and Custody Classification

> by the sentencing court;

- Any Central Inmate Monitoring issues (see Program Statement <u>Central Inmate Monitoring Program</u>);

- Any additional security measures to ensure the protection of victims/witnesses and the public in general; and,

- Any other factor(s) which may involve the inmate's confinement; the protection of society; and/or the safe and orderly management of a BOP facility.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

21344017