EXHIBIT D

E X H I B I T   4

Program Statement 5100.08 – Inmate Security Designation and Custody Classification

a.   Emergency Transfer - An emergency transfer is a medical, surgical, or psychiatric situation determined by medical/mental health staff that requires immediate, direct transportation.

This includes inmates not medically or psychiatrically capable of

transport via routine BOP air/surface transportation, e.g., bus, commercial air, or USMS/Bureau airlift. Direct transportation is defined as air ambulance, air charter, or ground ambulance and,

in some instances, an institution vehicle may be utilized.

b.   Routine/Urgent Transfer - A routine/urgent transfer is initiated for medical, surgical, or psychiatric treatment that is not an emergency, however must be transported directly to a MRC, typically within two to three weeks of designation.

Routine urgent transfers require direct transfer to the MRC because of the acuity of their medical, surgical, or psychiatric condition, or because MRC-based services need to be initiated within an appropriate time frame. Holdover housing at a county jail or Bureau general population institution is not permissible.

c.   Routine Transfer - A routine transfer is initiated for medical, surgical, or psychiatric treatment that is not an emergency and time en-route is not a major factor. Routine

transfers may travel by any available means.

d.   Procedures for Initiating Emergency, Routine/Urgent, and Routine Transfer Requests.                     All transfer requests for medical, surgical, or psychiatric designations will be initiated via GroupWise on the Medical/Surgical and Psychiatric Referral Request Form (BP-770) available on SALLYPORT.                    The HSA, with input from the Clinical Director and other providers involved

with the inmate's care (e.g., mid-level providers, psychologists,

consultant physicians), is responsible for completing the BP-770. The referring institution Warden must review the BP-770

progstat                                1

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT D
E X H I B I T   4 (continued)

Program Statement 5100.08 – Inmate Security Designation and
Custody Classification

and authorize the request for transfer.

The BP-770 serves as the redesignation, transportation, and
security worksheet from which the actual redesignation is
made. It will also serve as the emergency referral request
form, documentation of the inmate's condition and the reason
for transfer. Accordingly, it is essential that the BP-770 be
completed thoroughly and accurately.

The Medical Designator will review each request for
redesignation and approve or deny the requested transfer.
Based on clinical information and in consultation with the
Medical Director, the Medical Designator may change the urgency
level of the request.

OMDT will authorize CIM clearance (if appropriate) and enter
approved transfers to an appropriate BOP facility in SENTRY
on the "Enter Redesignation" screen.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions
and terms and conditions of the Matthew Bender Master Agreement.

21344017

TRULINCS 21344017 - SHORTER, CHRISTOPHER LAMON - Unit: FTD-W-B

--------------------------------------------------------------------------------------------------

FROM: 21344017
TO:
SUBJECT: NOTICE OF FILING FOR RELIEF (9-10-2015)
DATE: 09/10/2015 09:12:25 PM

NOTICE OF FILING FOR PRELIMINARY DECLARATORY, INJUNCTIVE RELIEF & TEMPORARY RESTRAINING ORDER

To All Decision Making "Fort Dix/West", employees, Warden Hollingsworth, Associate Warden Hazlewood, Unit Manager Byrd, Case Manager McKinnon & CMC Neives, (hereinafter "Fort Dix/West" collectively).

On or about September 09, 2015, I requested a status update about my transfer from Unit Manager Byrd and was told that the Central Office had given the authority for me to be transferred. Specifically, I made my request because of the UNSAFE HOUSING, I as a TRANSGENDER inmate, is currently abiding in also because I am so far away from my RELEASE ADDRESS.

I've studied the institutions in the South East Region as far as HOUSING, (Secure locked doors on housing cells) and POPULATION and came to the conclusion that YAZOO CITY--USP is the best institution in my region to meet MY SECURITY and NEAR RELEASE needs. I included Program Statement 5100.08--Inmate Security Designation and Custody Classification Program Statement's authority, to assure "Fort Dix/West", that my request is in compliance with the BOP'S authority, to make such a GREATER SECURITY TRANSFER. (please see attached EXHIBITS 1-4)

Today, 9-10-2015, Thursday, I was told that I am being transferred to another Low Security Institution because of my points. Quite simply, Program Statement 5100.08, at EXHIBIT 2, clearly states, "An inmate security point score is not the only factor used in determining a commensurate security level for an inmate". My current points only reflects that I have done what is required of me within the BOP, however my points did not keep me from suffering a PREA violation. My points has failed to keep me SAFE!!! I am tired of hearing that since I have Low points, I will have to be sent to a Low and can't be sent to Yazoo City--USP! That information is totally erroneous which I have proven through BOP'S own policy!!!

This is my last time submitting such information in my attempt to get the best situation for me. I've made my request official by putting it in writing. My next course of action is to file for a PRELIMINARY DECLARATORY and INJUNCTIVE RELIEF as well as a TEMPORARY RESTRAINING ORDER, (while I exhaust my Administrative remedies), in court against the BOP and "Fort Dix/West", to establish a commensurate security level and an appropriate HOUSING FACILITY for me considering the particulars of my situation with the HOUSING and POPULATION at the forefront of the decision opposed to my security points. I will also be asking the court to force the BOP to FAMILIARIZE themselves with and FOLLOW their own policies.

I am not going to a OVER-CAPACITY, LOW or MEDIUM SECURITY FACILITY, which will lower the chances that appropriate housing accommodation will be made for me. I am not going to continuously be put in DANGEROUS positions because there are no other suitable SAFE HOUSING OPTIONS at such institutions besides involuntary segregation. I have given the BOP and "Fort Dix/West" the best possible situation of housing me at a UNDER-CAPACITY, HIGH SECURITY FACILITY namely YAZOO CITY--USP!!! There is no reasonably related legitimate penological interest in housing me at a LOW or MEDIUM custody OVER-CAPACITY institution, however there is a reasonable related legitimate penological security interest with housing me at a UNDER-CAPACITY, HIGH SECURITY facility which can ensure that my housing situation is SAFE. BOP Director Charles E. Samuels, Jr. told Congress last month that the High Security Institutions are 51% Over Crowded, Medium Security Institutions are 35% Over Crowded and Low Security Institutions are 25% Over Crowded. Director Charles E. Samuels, Jr. also stated that because of overcrowding, "Inmate frustration and anger, in turn, are catalyst for violence which poses real risk to the lives of staff and offenders". I have on my own provided a better solution to my HOUSING issues than "Fort Dix/West" by clearly requesting to be transferred to a GREATER SECURITY INSTITUTION that is currently UNDER CAPACITY with a current population of only 389 inmates. At this point there is plenty of bed space to accommodate my HOUSING and SAFETY NEEDS. Fort Dix/West is not offering me the HOUSING or SAFETY needs that a TRANSGENDER inmate who is POST-PREA VICTIM needs in focusing on my points to determine the most commensurate security level and/or housing facility.

I have constantly requested the BOP and "Fort Dix/West", to abide within the BOP'S authority through the applicable Program Statement 5100.08, attached at EXHIBIT 1-4. I have made no request outside the authority of the BOP'S policy. An inmate is entitled to expect the BOP to be FAMILIAR and FOLLOW its own policies, (See Anderson v. Smith, 697 F.2D 98th Cir. 1983)(citing WOLFF v. MCDONNELL, 418 U.S. 539, 557, 41 L.ED 2d 935, 94 S.CT, 2963 (1974). "Fort Dix/West", has only given me matters of opinion about me not being able to be housed at YAZOO CITY--USP, however against "Fort Dix/West", opinion, I have clearly provided policy.

EXHIBIT E

TRULINCS  21344017 - SHORTER, CHRISTOPHER LAMON - Unit: FTD-W-B

--------------------------------------------------------------------------------

I am tired of the BOP placing me in UNFAVORABLE & UNSAFE positions. I've given my request with the authority that supports my position. "Fort Dix/West, Grand Prairie, Central Office always seem to do what it wants against rational policy making decisions and quite frankly against its own policies. Everyone should know me well enough to know that this fight will not be over just because I am transferred, especially after I have clearly, consistently provided policy which supports my position. "Fort Dix/West", FOLLOW YOUR OWN POLICIES!!!

Date   9/10/2015

Signature of Requester

EXHIBIT F

EMS-409.051 REQUEST FOR TRANSFER/APPLICATION OF MANAGEMENT VARIABLE CDFRM
SEP 2006
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| From: (Warden/Superintendent) | Facility: | Date: |
|---|---|---|
| J. Hollingsworth Warden | FCI Fort Dix, New Jersey | September 21, 2015 |

| Inmate's Name: Shorter, Christopher Lamont | Register Number: 21344-017 |
|---|---|

| To: DSCC Administrator | Attention: DSCC Designator |
|---|---|

___XX___ Transfer to: Any low security facility in the Southeast Region, (Code 330) Adjustment Purposes

_____ Apply Management Variable(s) _____

_____ Update Management Variable Expiration Date.  (New Date): _____

1.  Inmate's Medical Status:
Inmate Shorter is assigned regular duty with no medical restrictions. He is classified as a Medical Care level 2 and Mental Health Care Level 1 inmate.

2.  Institution Adjustment (Include a brief description of the inmate's adjustment during this period of incarceration with emphasis on recent adjustment):
Inmate Shorter's adjustment to incarceration is viewed as favorable.

3.  Rationale for Referral:
Inmate Shorter arrived at the FCI Fort Dix, New Jersey, on June 16, 2015, from FCC Oakdale, Louisiana, via Adjustment Purposes transfer.  He is serving a 96-month PLRA sentence for Conspiracy to Defraud the Government with Respect to Claims, Wire Fraud, Aiding and Abetting, Mail Fraud and Aggravated Identity Theft.  He has a projected release date of October 27, 2018, via Good Conduct Time Release. Inmate Shorter has been diagnosed with Gender Identity Dysphoria (GD).  On September 4, 2015, it was determined by the Gender Identity Dysphoria Committee (GID) that inmate Shorter should be transferred based on the configuration of the institution and the housing units.  Based on the physical layout of this facility FCI Fort Dix cannot provide the same type of supervision as in other institutions. Inmate Shorter intends to reside in the Florida area. Based upon this information, we are requesting he be transferred to a facility commensurate with his security needs and closer to his release residence. Inmate Shorter is classified as a Central Inmate Monitoring case.

| 4a. Parole Hearing Scheduled:____ Yes_X__ No | b.  If yes, when _____ |
|---|---|

5.  Note any past or present behavior and/or management/inmate concerns:
Inmate Shorter is not a management concern. However, there are security concerns due to GD, and the physical layout of FCI Fort Dix, New Jersey.

6.  Sentry Discrepancies:
There is one discrepancy between the BP-337 and BP-338. The BP-337 reflects a minor history of escape, greater than ten years for absconding supervision. Inmate Shorter's probation was revoked due to new charges, and he was found not guilty of absconding. Therefore, a minor history of escape greater than ten years is not reflected on the BP-338. There are no further discrepancies between the BP-337 and BP-338.

Staff have checked the following SENTRY Programs to ensure that they are correct and current:

| Inmate Profile | CIM Clearance and Separatee Data |
|---|---|
| Inmate Load Data | Custody Classification Form |
| Sentence Computation | Chronological Disciplinary Record |

| Prepared by: T. McKinnon Case Manager | Unit Manager Signature: K. Byrd Unit Manager |
|---|---|

*If the transfer is approved, a Progress Report will be completed prior to*
*need for a Cuban Review Panel Hearing four months from his/her ... CMA Assignment of "O.B. ..."*
*(This form may be replicated via WP)*
*For Mariel Cuban Detainees - Staff have entered the CMA Assignment of "O.B. ..."*

EXHIBIT G

TRULINCS  21344017 - SHORTER, CHRISTOPHER LAMON - Unit: FTD-W-B

---------------------------------------------------------------------------------------------

FROM: 21344017
TO:
SUBJECT: Addendum 4-Request For Transfer Revised
DATE: 09/23/2015 11:39:24 AM

Dr. Marantz:

In my last correspondence to you and the Committee, I was adamant about requesting to go to Yazoo City-USP because of the Low Population.

I was requesting a GREATER SECURITY MANAGEMENT VARIABLE and asking to be raised from Low to High Security because of the structure of High Security facilities.  Medium Security Facilities housing is structured the same as High Security so at the time the only difference between Yazoo City-FCI Medium and Yazoo City-USP was the population.

I have since reached out to several inmates that I was previously housed with that is housed in various different institutions in the South East Region.  These inmates know me and know how I do time.  Having said that every one of them have advised me not to advocate any further to go to Yazoo City--USP simply because of the population.  I have been advised that although the population is small the inmates housed at Yazoo City-USP is the worse of the worse of the inmates housed within the BOP and that being who I am I would have alot of problems in that environment.

It probably would be easier for me to be housed at a Medium Security Facility because I've previously been housed in Medium Custody and the GREATER SECURITY MANAGEMENT VARIABLE would be within what is normally done.

I understand that my transfer has been put in and I understand that things is out of your hands, however I just wanted to always be transparent with you and the committee as to my wishes and what I think would be best for me given my situation. It is also my understanding that at the writing of the memo the decision as to where to designate me to have yet to be made.  I am therefore asking to be designated to YAZOO CITY---FCI-- Medium Security facility with secure housing.  I request that you forward this request to the decision making committee for their consideration. Thanks

_____        _____
Date                                                 Signature of Requester

EXHIBIT H

# ATTENTION

This message serves to inform all inmates on the East and West compounds that your visiting privileges are suspended until further notice due to security concerns, including repeated assaults on staff.

Staff are charged with maintaining an orderly institution with a secure and safe environment for all, to include inmates.  Complete disregard for staff's position and authority will be taken very seriously.  **DO NOT assault staff or interfere with their ability to carry out their duties**.


AW Hazlewood


This message was posted on Trulincs Inmate Information bulletin on 10/5/2015.

EXHIBIT I

# **NOTIFICATION**

Over the past several weeks, there has been a significant increase in security issues involving staff and inmate assaults as well as hard contraband such as cell phones and weapons.  Staff have a responsibility to provide a safe and secure environment to all staff, visitors, and inmates.

Be advised, some privileges and operations, such as visiting, commissary, recreation, are often suspended or restricted as staff normally assigned to those functions are reassigned to other security tasks.

With that said, as long as there are no additional disruptions to security, visiting will be restored to the East and West compounds on Thursday, October 15, 2015.

The current visiting suspension does not apply to legal visits.  Inmates wishing to arrange legal visits should see their Unit Team.

Robert Hazlewood

Associate Warden

This Message was posted on Trulincs Inmate Information bulletin on 10/8/2015.

**REQUEST FOR ADMINISTRATIVE REMEDY**
**Remedy Number:   857082-F1**

Part B-RESPONSE

This is in response to your Request for Administrative Remedy received on March 25, 2016, wherein you allege a violation of your 1st, 8th, and 14th amendment rights.   As relief, you request a full investigation into the violation of your Constitutional Rights.   As a result of the incidents in question having taken place at another institution, a request was made for review and response into your allegations.

Your allegations of misconduct and sexual abuse have been reviewed for appropriate disposition in accordance with policy.   Allegations of misconduct and sexual abuse are taken seriously; however, you will not be provided further information regarding the disposition.

Therefore this response to your Request for Administrative Remedy is for informational purposes only.   If dissatisfied with this response, you may appeal to the Regional Director, 3800 Camp Creek Parkway, SW, Bldg. 2000, Atlanta, Georgia 30331-6226. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

B. H. Romero, Warden

5/20/16
Date

857082-F1
Fort Dix Rogue Staff

MIA 1330.17
October 4, 2013
Page 4

Attachment A

## INFORMAL RESOLUTION
### Miami, Florida

Date: 3/11/2016

Inmate Name: SHORTER, CHRISTOPHER          Reg. No.    21344-017       Unit: GATOR

NOTICE: You are advised that prior to filing a Request for Administrative Remedy (BP-9), you MUST attempt to informally resolve your complaint through your counselor. Please follow the three (3) steps listed below.

1.     State your specific complaint: Please refer to detailed BP-229(13) Form. My allegations contains violations of (PS) 5324.12, "Sexually Abusive Behavior Prevention and Intervention".

_____

_____

_____

2.     State what efforts you have made to informally resolve your complaint: Per (PS) 1330.18§115.52(3), "The agency shall not require an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse and/or it's investigation".

3.     State what resolution your request: I request a full, fair and impartial investigation by, (OIA), (OIG), Office of Professional Responsibility and the Office of Government Ethics/Bureau Ethics Officer for further independent and impartail investigations to determine whether the actions or failure to act violates any statutory, administrative and/or constitutional provisions. Please see attached BP-229(13).

Inmate Signature: _____          Date: 3/11/2016

Correctional Counselor's Comments: _____
Inmales  with  an  alleged  incident  of  Sexual  abuse
are  not  required  to  attempt  informal  resolution
under  Section  7  of  the  Program  Statement.

Correctional Counselor Signature: _____          Date: 3-24-16

Unit Manager's Comments: Agreed With the administrative

Unit Manager's Review: _____          Date: 8/24/16

**U.S. DEPARTMENT OF JUSTICE**                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

**From:**  SHORTER, CHRISTOPHER, L          21344-017          GATOR          MIAMI---FCI
_____
             **LAST NAME, FIRST, MIDDLE INITIAL**          **REG. NO.**          **UNIT**          **INSTITUTION**

**Part A– INMATE REQUEST** This Request for Administrative Remedy contains violations of Program Statement 5324.12, "Sexually Abusive Behavior Prevention and Intervention". Per Program Statement 1330.18§115.52(b)(1), "The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse or matters of a sexual abuse investigation". Per Program Statement 1330.18§115.52(c)(1) and (c)(2), "Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision".

   This remedy request seeks redress from the unconstitutional, discriminatory and unlawful manner by which I was incarcerated under conditions posing a substantial risk of serious harm which lead to me being sexually assaulted on 10/14/2015.   I allege that, "Fort Dix Executive Staff conspired with, "Fort Dix Rogue Staff and Inmate Michael Garcia", to violate my 1st, 8th and 14th Constitutional Amendment Rights.

   Specifically, Warden Hollingsworth, (AW) R. Hazzlewood, (AW) C. Dynan, Captain Pena, Institution PREA Compliance Manager, Lt. Bittner, (hereinafter, "Fort Dix Executive Staff" collectively and Counselor Hamel, Counselor Castellanos, Officer Sumner, Trust Fund Supervisor Grimes and Dr. Sood, (hereinafter, "Fort Dix Rogue Staff" collectively, conspired with Inmate Michael Garcia", to violate my 1st, 8th and 14th Constitutional Amendment Rights. Fort Dix Executive Staff and Fort Dix Rogue Staff conspired with Inmate Micheal Garcia to attack and sexually assault me without Inmate Micheal Garcia ever being subject to punishment for his actions.  My complaint is as follows:

   At some point while I was housed at Fort Dix FCI/west unit, I had to informally grieve each of Fort Dix Rogue Staff for violation of my Constitutional Amendment Rights.  Although the issues was informally resolved with each of Fort Dix Rogue Staff having to comply with the constitution and standards of employee conduct (PS) 3420.11, dictates, each of Fort Dix Rogue Staff habored animus for me.  As a TRANSGENDER INMATE, I've only advocated for my safety and other TRANSGENDER ISSUES within a confinement setting, however whether it was Fort Dix Executive Staff or Fort Dix Rogue Staff, my utilization of my 1st Amendment right to redress grievances did not sit well and cause, Fort Dix Executive Staff and Fort Dix Rogue Staff to habor animus towards me.  I allege that Fort Dix Executive Staff

                         ----CONTINUED-------

_____3/11/2016_____                              _____
         **DATE**                        .                      **SIGNATURE OF REQUESTER**

**Part B– RESPONSE**

*See attached*
*response*

_____          _____
         **DATE**                                          **WARDEN OR REGIONAL DIRECTOR**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                     CASE NUMBER: _857082 - F1_
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                                   CASE NUMBER: _857082 - F1_

**Part C– RECEIPT**

Return to: _____  _____  _____  _____
              **LAST NAME, FIRST, MIDDLE INITIAL**          **REG. NO.**          **UNIT**          **INSTITUTION**

SUBJECT: _____

_____                            _____
         **DATE**                                  **RECIPIENT'S SIGNATURE (STAFF MEMBER)**          BP–229(13)

REQUEST FOR ADMINISTRATIVE REMEDY DATED 3/11/2016 ---CONTINUED---

conspired with Fort Dix Rogue Staff and Inmate Michael Garcia, for Inmate Michael Garcia to attack and sexually assault me without any consequences for Inmate Michael Garcia. Inmate Michael Garcia is Counselor Hamel's Clerk therefore Inmate Michael Garcia works very closely with Counselor Hamel in building 5841 where I was housed and the attack took place. I allege that Fort Dix Rogue Staff, instructed Inmate Michael Garcia to attack and sexual assault me on 10/14/2015. I allege that within the conspiracy to violate my 1st, 8th and 14th Amendment Rights, Fort Dix Executive Staff's role in the conspiracy was to turn a blind eye and allow such actions. This will explain why there was no DNA, Rape Kit, Forensic Testing or anything done to assist me with bringing Inmate Michael Garcia to justice for attacking and sexually assaulting me on 10/14/2015. Fort Dix Executive Staff and/or Fort Dix Rogue Staff, is in no position to hold Inmate Michael Garcia accountable for a conspiracy where they was a participant. I do not allege that these conspirators conspired with the BOP AGENCY, or other staff members or each other when acting in the scope of their employment) because it is well settled that an AGENCY cannot conspire with its employees, and it's employees, when acting in the scope of their employment, cannot conspire among themselves, however I am alleging that there is evidence of a "MEETING OF THE MINDS", on the object and course of action to violate my constitutional rights by the conspirators in their individual personal capacities. Fort Dix Rogue Staff, unlawfully instructed Inmate Michael Garcia to attack and sexually assault me, then Fort Dix Executive Staff conspired with Fotr Dix Rogue Staff to obstruct the due course of justice and they did so in their individual personal capacity, "UNDER THE COLOR OF STATE LAW". It is well settled that private persons who conspire or act jointly with state officials may act UNDER THE COLOR OF STATE LAW, as was the case in this conspiracy. The custom and policy in this conspiracy results in deliberate indifference to my Constitutional Rights.

Quite Simply, Fort Dix Executive Staff conspired with Fort Dix Rogue Staff and Inmate Michael Garcia, to violate my constitutional rights. According to Program Statement 3420.11, "Employees who fail to conduct themselves in accordance with the Standards of Employee Conduct will be subject to appropriate sanctions".

I hereby, request a full, fair and impartial investigation into this conspiracy to violate my constitutional rights. I request this matter is referred to the Office of The Inspector General-- (OIG), the Office of Internal Affairs--- (OIA), the Office of Government Ethics/Bureau Ethics Officer and the Office of Professional Responsibility to determine whether the conduct of these conspirators violated any statutory, administrative, criminal and/or constitutional provisions.

_____ 3/11/2016 _____                          _____
      Date                                      Signature of Requester


CC:/ The Office of Senator Bill Nelson Case #156187-2CR

**REQUEST FOR ADMINISTRATIVE REMEDY**
**Remedy Number:   857082-F1**

## Part B-RESPONSE

This is in response to your Request for Administrative Remedy received on March 25, 2016, wherein you allege a violation of your 1st, 8th, and 14th amendment rights.   As relief, you request a full investigation into the violation of your Constitutional Rights.   As a result of the incidents in question having taken place at another institution, a request was made for review and response into your allegations.

Your allegations of misconduct and sexual abuse have been reviewed for appropriate disposition in accordance with policy.   Allegations of misconduct and sexual abuse are taken seriously; however, you will not be provided further information regarding the disposition.

Therefore this response to your Request for Administrative Remedy is for informational purposes only.   If dissatisfied with this response, you may appeal to the Regional Director, 3800 Camp Creek Parkway, SW, Bldg. 2000, Atlanta, Georgia 30331-6226. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.


B. H. Romero, Warden                                        5/20/16
                                                                        Date

(857083 - FI)
Fort Dix Staff

MIA 1330.17
October 4, 2013
Page 4

Attachment A

## INFORMAL RESOLUTION
Miami, Florida

Date: 3/11/2016

Inmate Name: SHORTER, CHRISTOPHER      Reg. No.   21344-017      Unit:  GATOR

NOTICE: You are advised that prior to filing a Request for Administrative Remedy (BP-9), you MUST attempt to informally resolve your complaint through your counselor. Please follow the three (3) steps listed below.

1.      State your specific complaint: Please refer to detailed BP-229(13) Form. My allegations
contains violations of (PS) 5324.12, "Sexually Abusive Behavior Prevention and Intervention".

2.      State what efforts you have made to informally resolve your complaint: Per (PS) 1330.18§115.52(3),
"The agency shall not require an inmate to use any informal grievance process, or to otherwise
attempt to resolve with staff, an alleged incident of sexual abuse and/or it's investigation".

3.      State what resolution your request: I request a full, fair and impartial investigation by, (OIA),
(OIG), Office of Professional Responsibility and the Office of Government Ethics/Bureau Ethics Officer
for further independent and impartail investigations to determine whether the actions or failure
to act violates any statutory, administrative and/or constitutional provisions. Please see attached
BP-229(13).

Inmate Signature: _____      Date: 3/11/2016

Correctional Counselor's Comments: _____

Inmates with an alleged incident of sexual abuse
are not required to attempt informal resolution
under Section 7 of the Program Statement.

Correctional Counselor Signature: _____      Date: 3-24-16

Unit Manager's Comments: Agree with the administration

Unit Manager's Review: _____      Date: 3/24/16

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | SHORTER, CHRISTOPHER, L | 21344-017 | Gator-131 | Miami-FCI |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST** This Administrative Remedy Request contains violations of (PS) 5324.12. "Sexually Abusive Behavior Prevention and Intervention".

Per (PS) 1330.18§115.52(b)(1), "The agency shall not impose a time limit on when as inmate may submit a grievance regarding an allegation of sexual abuse or matters of a sexual abuse investigation".

This Administrative Remedy Request seeks redress from the unconstitutional, discriminatory and unlawful manner by which Iwas, incarcerated under conditions posing a substantial risk of serious harm which lead to me being sexaul assaulted on 10/14/2015 at Fort Dix/West FCI. I allege and support my allegation with the attached, (EXHIBITS A-I), that Fort Dix Staff was aware of a serious risk of harm, however acted with an attitude of deliberate indifference to that excessive risk to my safety, which thereby lead to me being sexual assaulted on 10/14/2015. Law and Society, as they ought to do, demand accountability when a sexual offense has been committed.

Specifically, Warden Hollingsworth, (AW) R. Hazzlewood, (AW) C. Dynan, Dr. Marantz, Captain Pena, (SIS) Lt. Bittner, Health Services Physician, Institution PREA Compliance Manager, Unit Manager Byrd, Counselor Hamel, (hereinafter "Fort Dix Staff" collectively, actions or failure to act contributed to the abuse and lead to the violations of my 1st, 4th, 5th, 8th and 14th Amendments. My complaint is as follows:

On 10/14/2015, I was sexually assaulted in definition related to sexual abuse pursuant to (PS) 5324.12§115.6(2) & (3). As a result, I was placed in the (SHU) involutary segregation protective custody. In the investigation or lack thereof the following violations occurred by Fort Dix Staff.

1.) Violation of (PS) 5324.12§115.21(a)& (c). Fort Dix Staff did not ensure that a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence per policy was used. The clothing I was wearing when I was sexually assaulted was not perserved properly to attempt to obtain DNA and/or other forensic data. My clothing was touched by various employees and was not collected until after I was placed in the SHU. The officer that stripped me out threw my clothing into a laundry bend with other inmates clothing. He did not readily retrieve them after I told him that my clothing would be evidence in a PREA investigation. I was not given a forensic medical examination, on-site or off-site for medical or evidentiary purposes.--continued---

| 3/11/2016 | |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

*See attached response.*

| | |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          CASE NUMBER: *857082 - F1*

CASE NUMBER: *857082 -F1*

**Part C– RECEIPT**

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

| | | |
|---|---|---|
| DATE | | RECIPIENT'S SIGNATURE (STAFF MEMBER) |

BP-229(13)

REQUEST FOR ADMINISTRATIVE REMEDY CONTINUED

2.) Violation of (PS) 5324.12§115.34(a)&(b).     Fort Dix Staff particularly Lt. Bittner (SIS), did not promptly collect and/or perserve my clothing for DNA and/or forensic testing without compromising the integrity of such evidence.
3.) Violation of (PS) 5324.12§115.35(a)(2) & (b).     The examining Physician did not preserve any and/or all evidence of sexual abuse. He did not, neither did he refer me off-site for a medical or evidentiary forensic examination.
4.)Violation of (PS) 5324.12§115.62.     On 6-16-2015, I was received at Fort Dix FCI West Unit. I was orginially housed in a (12) man room. I brought to the attention of Fort Dix Staff my substantial risk of imminent sexual abuse danger given the fact that I am Transgender. After going back and forth with Fort Dix Staff, I was allowed to move into a (2) person cell. On 7-10-2015, I moved in cell 207, on the second floor, which is the farthest cell away from the officer's station. On 8-11-2015, a sex offender was moved into the room with me. The attached EXHIBITS A-I, will clearly show that I begin a crusade to get transferred to another institution with secure housing. I was put in for transfer, however during the time waiting to get transferred, I was sexually assaulted. Fort Dix Staff was aware that I was subject to a substantial risk of imminent sexual abuse and did not take even the slightest action to protect me. Fort Dix Staff refused to move me closer to the officer's station which was located on the first floor and would not allow me to put a make shift locking device on my door. Fort Dix Staff did not make any reasonable accommodations to ensure my safety.
5.) Violation of (PS) 5324.12§115.71(a) & (c).     Fort Dix Staff, did not conduct an investigation into my sexual assault, promptly and/or thoroughly. I was sexually assaulted on 10/14/2015, at approximately 1:45am in room 207 where I was assigned. I was half examined in medical then placed in the SHU approximately 6:05am. I was not interviewed by (SIS) Lt. Bittner until 10/21/2015, some (7) full daysafter my sexual assault.  (SIS) Lt. Bittner did not conduct my interview thoroughly, in that he failed to ask me what was my perpetrator wearing in an effort to retrieve those items for DNA and/or forensic testing. During that interview I clearly identified my perpetrator to (SIS) Lt. Bittner as Inmate Michael Garcia.
6.) Violation of (PS) 5324.12§115.72.     The end result of my sexual abuse investigation was determined to be unsubstantiated by (SIS) Lt. Bittner. (Please attached attached EXHIBIT J) My perpetrator Inmate Michael Garcia was never subject to any investigations---administrative and/or criminal prosecution, because Fort Dix Staff did not follow a uniform evidence protocol which could have maximized the potential of obtaining usable physical and/or forensic evidence. Inmate Michael Garcia, touched all over my body, inserted his fingers & his tongue(oral sodomy), in my anus. He cut me (7) times during the sexual assault, so physical, DNA and forensic evidence was present on my body and possibly my clothing that would have conclusively identified him as my perpetrator. The fault is Fort Dix Staff.
7.) Violation of (PS) 5324.12§115.82(a).     The perpetrator penetrated my anus with his fingers and mouth(oral sodomy). I was also cut (7) times during the sexual assault. I have yet to receive after having made several attempts, to be screened for infections, transmissible disease(s). Other than receiving a Tetanus shot on 10/16/2015, at my request, I haven't received any other prophylactic medication.
I submit this request for administrative remedy for informational purposes and for purposes of exhausting my administrative remedies precedent to pursuing a federal 1983 action for the evidenced and blatant disregard for my consitutional rights.

    In Conclusion, "Sexual violence, against any victim, is an assault on human dignity and an affront to American values. The Prison Rape Elimination Act of 2003 (PREA) was enacted with bipartisan support in Congress and established a 'zero-tolerance standard' for rape in prisons in the United States. 42 U.S.C. 15602(1). Each agency is responsible for and must be accountable for, the operations of its own confinement facilities. The success of PREA in combating sexual abuse in confinement facilities will depend on effective agency and facility leadership and the development of an aganecy culture that prioritizes efforts to combat sexual abuse.

    In the event my request for administrative remedy is denied, I respectfully request that this matter be referred to the Office of the Inspector General, (OIG), the Office of Internal Affairs, (OIA), Office of Professional Responsibility and the Office of Government Ethics/Bureau Ethics Officer, for futher independent and impartial investigations to determine whether the actions or failure to act violates any statutory, administrative and/or constitutional provisions.


    3/11/2016
      DATE                                          SIGNATURE OF REQUESTER

CC/:  Office of Senator Bill Nelson Case# 156187-2CR

857088 - F1
Central Office Gender Dysphoria
Committee

MIA 1330.17
October 4, 2013
Page 4

Attachment A

## INFORMAL RESOLUTION
Miami, Florida

Date: 3/21/2016

Inmate Name: SHORTER, CHRISTOPHER          Reg. No.     21344-017        Unit:  GATOR

NOTICE:  You are advised that prior to filing a Request for Administrative Remedy (BP-9), you MUST attempt to informally resolve your complaint through your counselor.  Please follow the three (3) steps listed below.

1.      State your specific complaint: Please refer to detailed BP-229(13) Form. My allegations contains violations of (PS) 5324.12, "Sexually Abusive Behavior Prevention and Intervention".

_____

_____

_____

2.      State what efforts you have made to informally resolve your complaint: Per (PS) 1330.18§115.52(3), "The agency shall not require an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse and/or it's investigation".

3.      State what resolution your request: I request a full, fair and impartial investigation by, (OIA), (OIG), Office of Professional Responsibility and the Office of Government Ethics/Bureau Ethics Officer for further independent and impartail investigations to determine whether the actions or failure to act violates any statutory, administrative and/or constitutional provisions. Please see attached BP-229(13).

Inmate Signature: _____          Date: 3/21/2016

Correctional Counselor's Comments: _____
Inmates with an alleged incident of Sexual abuse
are not required to attempt informal resolution
under Section 7 of the Program Statement.

Correctional Counselor Signature: _____          Date: 3-24-16

Unit Manager's Comments: Upped with no administrative remedy process.

Unit Manager's Review: _____          Date: 3/24/16

**U.S. DEPARTMENT OF JUSTICE**                                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | SHORTER, CHRISTOPHER, L | 21344-017 | GATOR | MIAMI---FCI |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST** This Request For Administrative Remedy contains violations of Program Statement 5324.12, "Sexually Abusive Behavior Prevention and Intervention". Per Program Statement 1330.18§115.52(b)(1), "The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse or matters of a sexual abuse investigation".

This remedy request seeks redress from the uncontitutional, discriminatory and unlawful manner by which I was, incarcerated under conditions posing a substantial risk of excessive serious harm which lead to me being sexually assaulted on 10/14/2015 at Fort Dix/west FCI. I allege and support my allegation with the attached, (EXHIBITS B-F), that the CENTRAL OFFICE GENDER DYSPHORIA COMMITTEE, was aware of a serious risk of harm, however acted with an attitude of deliberate indifference to that excessive risk to my safety, which thereby lead to me being sexually assaulted on 10/14/2015.

Specifically, the CENTRAL OFFICE GENDER DYSPHORIA COMMITTEE was forwarded the attached (EXHIBITS B-E), from Fort Dix Staff, (AW) R. Hazzlewood and Dr. Marantz to officially get the approval to transfer me to a safer facility. On 9-4-2015, Fort Dix Staff, (AW) R. Hazzlewood and Dr. Marantz had a teleconference with the Central Office Gender Dysphoria Committee whereas they requested to transfer me to a safer facility based on my transfer request in attached (EXHIBITS B-E).

The CENTRAL OFFICE GENDER DYSPHORIA COMMITTEE did give Fort Dix Staff the approval to transfer me on 9-4-2015, however this approval to transfer me did not include the authority to EXPEDITE the transfer, thereby totally disregarding my excessive risk of serious harm. The CENTRAL OFFICE GENDER DYSPHORIA COMMITTEE was well aware that I was in excessive risk of serious harm however acted with an attitude of deliberate indifference to that excessive risk of serious harm, which lead to me being sexually assaulted approximately (40) days after being warned of that excessive risk. The CENTRAL OFFICE GENDER DYSPHORIA COMMITTEE reside at the highest level of authority within the Bureau of Prisons, therefore they could have easily EXPEDITED my transfer before I was sexually assaulted just as my transfer was EXPEDITED after I was sexually assaulted.

---CONTINUED---

| 3/21/2016 | |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

*See attached Response*

| | |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                        CASE NUMBER: _857082 - F1_

                                                        CASE NUMBER: _857082 - F1_

**Part C– RECEIPT**

Return to: _____

            LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

| | | |
|---|---|---|
| DATE | | RECIPIENT'S SIGNATURE (STAFF MEMBER) |

REQUEST FOR ADMINISTRATIVE REMEDY DATED 3/21/2016 ---CONTINUED---

The Central Office Gender Dysphoria Committee totally disregarded my 8th and 14th Amendment rights. Prison officials have a duty... to protect prisoners from violence at the hands of other prisoners... Having incarcerated persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take it course. Prison conditions may be restrictive and even harst but gratuitously allowing the rape of one prisoner by another serves no legitimate penological objective anymore than it sqaures with evolving standards of decency. Farmer v. Brennan, 511 U.S. 825, 833-34, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1994)(internal quotation marks and citations omitted): Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L. Ed. 2d 393 (1984).

In Conclusion, "Sexual violence, against any victim, is an assault on human dignity and an affront to American values. The Prison Rape Elimination Act of 2003, (PREA) was enacted with bipartisan support in Congress and established a 'zero-tolerance standard' for rape in prisons in the United States. 42 U.S.C. 15602(1). Each agency is responsible for and must be accountable for, the operations of its own confinement facilities. The success of (PREA) in combating sexual abuse in confinement facilities will depend on effective agency and facility leadership and the development of an agency culture that prioritizes efforts to combat sexual abuse. Had the Central Office Gender Dysphoria Committee responded promptly to my excessive risk of serious harm and expedited my transfer, I might not have been sexually assaulted some (40) days after giving the approval for the transfer. I was not out of harm's way just because the Central Office Gender Dysphoria Committee gave the approval to Fort Dix Staff to transfer me. A portion of the (PREA) Act deal directly with the PREVENTION of sexual abuse within the prisons in the United States. The Central Office Gender Dysphoria Committee did not take the PREVENTION of me being sexually assaulted seriously.

I respectfully request that this matter be referred to the Office of The Inspector General---(OIG), the Office of Internal Affairs--(OIA), Office of Professional Responsibility and the Office of Government Ethics/Bureau Ethics Officer, for further independent and impartial investigations to determine whether the Central Office Gender Dysphoria Committee's failure to act/protect me violates any statutory, administrative and/or constitutional provisions.

In that the rejector stated for REASON 4, as a reason for rejecting my administrative remedy request that my request has no details about my PREA Assault, Need details to investigate, I would simply submit that the detail of my SEXUAL ASSAULT will be disclosed in great detail when I am interviewed by (OIA) Office of Internal Affairs and/or the (OIG) Office of the Inspector General. Per Program Statement 5324.12, the administrative remedy process is to get the appropriate agency notified to properly investigate such issues. The administrative remedy process is not the proper vehicle to properly address such matters. Please refer to Program Statement 5324.12§115.34.

3/21/2016
DATE

SIGNATURE OF REQUESTER

**REQUEST FOR ADMINISTRATIVE REMEDY**
**Remedy Number:   857082-F1**

Part B-RESPONSE

This is in response to your Request for Administrative Remedy received on March 25, 2016, wherein you allege a violation of your 1st, 8th, and 14th amendment rights.   As relief, you request a full investigation into the violation of your Constitutional Rights.   As a result of the incidents in question having taken place at another institution, a request was made for review and response into your allegations.

Your allegations of misconduct and sexual abuse have been reviewed for appropriate disposition in accordance with policy.   Allegations of misconduct and sexual abuse are taken seriously; however, you will not be provided further information regarding the disposition.

Therefore this response to your Request for Administrative Remedy is for informational purposes only.   If dissatisfied with this response, you may appeal to the Regional Director, 3800 Camp Creek Parkway, SW, Bldg. 2000, Atlanta, Georgia 30331-6226. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

B. H. Romero, Warden                              5/20/16
                                                                        Date

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From:   SHORTER, CHRISTOPHER,    L            21344-017        GATOR         MIAMI---FCI

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**   I further grieve the **combined** Administrative Remedy #857082-F1 in it's entirety.  I submit this Regional Administrative Remedy Appeal for informational purposes and for purposes of exhausting this aspect of my administrative remedies precedent to pursuing a **FEDERAL BIVENS** action for the evidenced and blatant disregard for my constitutional rights.

USPS Tracking # 9114 9014 9645 0204 5841 23

Please note---Administrative Remedy Coordinator **JACKSON** at Miami-FCI **combined** rejected remedy ID # 851542-A1, 851542-R1 and 851542-R3 per Program Statement 1330.18§542.14(8)(c)(2) & Program Statement 1330.18(13)(a) then assigned them remedy ID # 857082-F1.

5/25/2016
_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____
DATE

JUN  1 2016

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                            CASE NUMBER: _857082-R1_

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____   _____   _____   _____
                LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____                                 _____
DATE                                             SIGNATURE, RECIPIENT OF REGIONAL APPEAL

Regional Administrative Remedy Appeal No. 857082-R1
Part B - Response

This is in response to your Regional Administrative Remedy Appeal received on
June 1, 2016, in which you are submitting the remedy a second time for informational
purposes and to exhaust the administrative remedy process.   Additionally, you claim you
are grieving the response from the institution in its entirety.   You do not make any
specific request for relief.

An inquiry into your request was conducted and the following information was
ascertained.   This request has been deemed repetitive.   The response you received in
Administrative Remedy Appeal # 860656-R1, appropriately addressed these concerns.

Accordingly, this response to your Regional Administrative Remedy Appeal is for
informational purposes only.   If dissatisfied with this response, you may appeal to the
Office of General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, D.C.
20534.   Your appeal must be received in the Office of General Counsel within 30
calendar days of the date of this response.

Date

Regional Director, SERO

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

| From: | SHORTER, CHRISTOPHER  L | 21344-017 | GATOR | MIAMI--FCI |
|-------|-------------------------|-----------|-------|------------|
|       | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**   I further grieve the **COMBINED** Administrative Remedy #857082-F1 and Regional Administrative Remedy Appeal #857082-R1, (Please see attached), in their entirety.

I did not receive Regional Administrative Remedy Appeal with the attached response until **7/22/2016**, (Please see attached Memo from Counselor Acevedo).

Please note in the Regional Administrative Remedy Appeal response the Regional Director alleges that, "The response you received in Administrative Remedy Appeal #860656-R1, appropriately addressed these concerns".  This information is completely erroneous in the Administrative Remedy Appeal #860656-R1 had not been responded to on 6/29/2016, the date of the response.  Please see attached Administrative Remedy update which clearly note that Administrative Remedy Appeal #860656-R1 was not closed out i.e.. responded to until 7/14/2016. According to Program Statement 3420.11, "Employees of the Bureau of Prisons shall not falsify, use misstatement, exaggerate any record, investigation or other proper proceedings", such as the case here in the response.

I submit this Central Office Administrative Remedy Appeal for informational purposes and for purposes of exhausting this aspect of my administrative remedies precedent to pursuing a **FEDERAL BIVENS ACTION** for the evidenced and blatant disregard for my constitutional rights.

I am mailing this Central Office Administrative Remedy Appeal by **CERTIFIED** mail #7000 0600 0024 8626 5242.

| 7/27/2016 | |
|-----------|--|
| DATE | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

**RECEIVED**

AUG 0 1 2016

Administrative Remedy Section
Federal Bureau of Prisons

---

| DATE | GENERAL COUNSEL |
|------|-----------------|

ORIGINAL: RETURN TO INMATE      CASE NUMBER: ~~8?0?0 ??????~~

**Part C - RECEIPT**      CASE NUMBER: 857082-A1

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| DATE | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL |

**Administrative Remedy No. 857082-A2**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal where you allege, due to the Designation and Sentence
Computation Center's (DSCC) failure to process your transfer
request; you were sexually assaulted by another inmate at FCI Fort
Dix. You argue your concerns were not yet addressed in remedy number
860656 at the time you filed this remedy. You also indicate you
submit this second appeal for exhaustion purposes and in order to
pursue a Bivens action.

The Warden and Regional Director adequately addressed your complaint
and we concur with the responses you were provided. Upon review of
this remedy and 860656, you raised the same issues regarding the same
alleged incident. Your claims were properly investigated by staff
and you were advised accordingly.

You have since transferred to FCI Miami and are housed in the general
population. Any further transfer and/or housing issues should be
addressed to your current Unit Team. This response is provided for
informational purposes.

8/26/16
_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals *RME*

(# 860656
DSCC)

MIA 1330.17
October 4, 2013
Page 4

Attachment A

## INFORMAL RESOLUTION
### Miami, Florida

Date: 4/29/2016

Inmate Name: SHORTER, CHRISTOPHER _____ Reg. No. _21344-017_____ Unit: _GATOR____

NOTICE:  You are advised that prior to filing a Request for Administrative Remedy (BP-9), you MUST attempt to informally resolve your complaint through your counselor.  Please follow the three (3) steps listed below.

1.    State your specific complaint: _Please refer to detailed BP-229(13) Form. My allegations_ contains violations of (PS) 5324.12, "Sexually Abusive Behavior Prevention and Intervention".

_____

_____

_____

2.    State what efforts you have made to informally resolve your complaint: _Per (PS) 1330.18§115.52(3),_ "The agency shall not require an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse and/or it's investigation".

3.    State what resolution your request: _I request a full, fair and impartial investigation by, (OIA),_ (OIG), Office of Professional Responsibility and the Office of Government Ethics/Bureau Ethics Officer for further independent and impartail investigations to determine whether the actions or failure to act violates any statutory, administrative and/or constitutional provisions. Please see attached BP-229(13).

Inmate Signature: _____  Date: 4/29/2016

Correctional Counselor's Comments: _____

_Proceed with the grievance process_

_____

Correctional Counselor Signature: _____  Date: 4-29-16

Unit Manager's Comments: _Proceed the grievance process._

_____

Unit Manager's Review: _____  Date: 4/29/16

**U.S. DEPARTMENT OF JUSTICE**                                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: SHORTER, CHRISTOPHER, L | 21344-017 | GATOR | MIAMI---FCI |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST** I further grieve Remedy # 851542-R4, in that it was rejected by the South East Regional Office Administrative Remedy Coordinator on 03-24-2016, (Please see attached Rejection Notice as EXHIBIT 1), however I did not receive this rejection notice until 04/28/2016, (Please see attached Memo from Counselor C. Avevedo).  Please note in the body of the grievance that I clearly listed Program Statement 1330.18§115.52(b)(1), Program Statement 1330.18§115.52(c)(1) & (c)(2), Program Statement 1330.18§115.52(f)(1), all of which gave me the authority to file the grievance as I filed it, however the rejector is attempting to circumvent and obstruct the grievance process with the reason listed for the rejection.  The rejecting of Remedy # 851542-R4 which contains violations of PREA is without merit and is both shocking to the conscious of any ordinary citizen and is egregiously offensive to my FIRST, FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE United States Constitution.  An inmate is entitled to expect the BOP to follow it's own policies.  (See Anderson v. Smith, 697 F. 2d 239 (8th Cir. 1983) (citing Wolff v. McDonnell, 418 U.S. 539, 557, 41 L.Ed 2d 935, 94 S.Ct. 2963 (1974).  The Supreme Court of the United States has warned that, "the creation of an additional procedural technicality...[is] particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process".  Love v. Pullman Co., 404 U.S. 522, 526-27, 92 S.Ct. 616, 619, 30 L.Ed. 2d 679 (1972).  The rejecting of my administrative remedy is rendering the administrative remedy process unavailable to me.  According to Program Statement 1330.18§542.17(b)(1), in Reason (2) for the rejection, the rejector noted that my claims was too sensitive to be made known at the institution so it wasn't returned to me, however in rejection Reason (1), the rejector rejected my grievance as not being sensitive, clearly the rejector is laboring under a conflict of interest, therefore in accordance with Program Statement 1330.18§542.17(c), I appeal the rejection, furthermore my grievance is as follows:  This Request for Administrative Remedy contains violations of Program Statement 5324.12, "Sexually Abusive Behavior Prevention and Intervention".  Per Program Statement 1330.18§115.52(b)(1), "The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse or matters of a sexual abuse investigation".  This remedy seeks redress from the unconstitutional, discriminatory and unlawful manner by which I was incarcerated under conditions posing a substantial risk of excessive serious harm which lead   ----continued---

DATE 4/29/2016                                                    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

**AW's OFFICE**

APR 2 9 2016

**FCI MIAMI**

_____                                    _____
DATE                                                       WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                              CASE NUMBER: _____

                                                           CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____     _____     _____     _____
            LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.         UNIT         INSTITUTION

SUBJECT: _____

_____                                    _____
DATE                                                       RECIPIENT'S SIGNATURE (STAFF MEMBER)

to me being sexually assaulted on 10/14/2015 at Fort Dix/West FCI. I allege and support my allegation with the attached, (EXHIBIT F), that the DSCC ADMINISTRATOR and his/her staff was aware of a serious risk of excessive harm, however acted with an attitude of deliberate indifference to that excessive risk to my safety, which thereby lead to me being sexually assaulted on 10/14/2015. Law and Society, as they ought to do, demand accountability when a sexual offense has been committed.

Specifically, DSCC ADMINISTRATOR was forwarded a (409), Request For Transfer on 9-21-2015, from the Fort Dix Staff based upon the approval from the Gender Dysphoria Committee located at the Central Office to transfer me based on security concerns at Fort Dix FCI for my safety. The particulars of the request is entailed in the attached (EXHIBIT F).

The Transfer Request was submitted on 9-21-2015, however the DSCC ADMINISTRATOR did not designate me until after 10/14/2015, the date I was sexually assaulted. The DSCC ADMINISTRATOR and his/her staff was well aware that I was in excessive risk of serious harm however acted with an attitude of deliberate indifference to that excessive risk of serious harm. The DSCC ADMINISTRATOR and his/her staff totally disregarded that excessive risk, which lead to me being sexually assaulted approximately (23) days after being warned of that excessive risk. The DSCC ADMINISTRATOR and his/her staff could have easily expedited my transfer before I was sexually assaulted just as my transfer was expedited after I was sexually assaulted. The DSCC ADMINISTRATOR and his/her staff totally disregarded my 8th and 14th Amendment Rights. Prison officials have a duty... to protect prisoners from violence at the hands of other prisoners ... Having incarcerated persons [with] demonstrated proclivit [ies] for antisocial criminal, and often violent conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the rape of one prisoner by another serves no legitimate penological objective anymore than it squares with evolving standards of decency. Farmer v. Brennan, 511 U.S. 825, 833-34, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1994)(internal quotation marks and citations omitted): Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed. 2d 393 (1984).

In Conclusion, "Sexual violence, against any victim, is an assault on human dignity and an affront to American values. The Prison Rape Elimination Act of 2003, (PREA) was enacted with bipartisan support in Congress and established a 'zero-tolerance standard' for rape in prisons in the United States. 42 U.S.C. 15602(1). Each agency is responsible for and must be accountable for, the operations of its own confinement facilities. The success of (PREA) in combating sexual abuse in confinement facilities will depend on effective agency and facility leadership and the development of an agency culture that prioritizes efforts to combat sexual abuse. Had the DSCC Administrator and his/her staff responded promptly to the Request For Transfer which clearly entailed that I was in danger, I might not have been sexually assaulted some (23) days after the Transfer request. I respectfully request that this matter be referred to the Office of the Inspector General--(OIG), the Office of Internal Affairs--(OIA), Office of Professional Responsibility and the Office of Government Ethics/Bureau Ethics Officer, for further independent and impartial investigations to determine whether DSCC Administrator and his/her staff failure to protect me violates any statutory, administrative and/or constitutional provisions.

4/29/2016
DATE (S)

SIGNATURE OF REQUESTOR

cc: Office of Senator Bill Nelson Caes# 156187-2CR
    The Office of the Attorney General
    President Barack Obama
    The Office of Internal Affairs

EMS-409.051 REQUEST FOR TRANSFER/APPLICATION OF MANAGEMENT VARIABLE CDFRM
SEP 2006
U.S. DEPARTMENT OF JUSTICE                 REMEDY REQUEST EXHIBIT F               FEDERAL BUREAU OF PRISONS

| From: (Warden/Superintendent) | Facility: | | Date: |
|---|---|---|---|
| J. Hollingsworth Warden | FCI Fort Dix, New Jersey | | September 21, 2015 |
| Inmate's Name: Shorter, Christopher Lamont | | Register Number: 21344-017 | |
| To: DSCC Administrator | | Attention: DSCC Designator | |

__XX__ Transfer to: Any low security facility in the Southeast Region, (Code 330) Adjustment Purposes

_____ Apply Management Variable(s) _____

_____ Update Management Variable Expiration Date.  (New Date): _____

1.  Inmate's Medical Status:

Inmate Shorter is assigned regular duty with no medical restrictions. He is classified as a Medical Care level 2 and Mental Health Care Level 1 inmate.

2.  Institution Adjustment (Include a brief description of the inmate's adjustment during this period of incarceration with emphasis on recent adjustment):

Inmate Shorter's adjustment to incarceration is viewed as favorable.

3.  Rationale for Referral:

Inmate Shorter arrived at the FCI Fort Dix, New Jersey, on June 16, 2015, from FCC Oakdale, Louisiana, via Adjustment Purposes transfer. He is serving a 96-month PLRA sentence for Conspiracy to Defraud the Government with Respect to Claims, Wire Fraud, Aiding and Abetting, Mail Fraud and Aggravated Identity Theft.  He has a projected release date of October 27, 2018, via Good Conduct Time Release. Inmate Shorter has been diagnosed with Gender Dysphoria (GD).  On September 4, 2015, it was determined by the Gender Identity Dysphoria Committee (GID) that inmate Shorter should be transferred based on the configuration of the institution and the housing units.  Based on the physical layout of this facility FCI Fort Dix cannot provide the same type of supervision as in other institutions. Inmate Shorter intends to reside in the Florida area. Based upon this information, we are requesting he be transferred to a facility commensurate with his security needs and closer to his release residence. Inmate Shorter is classified as a Central Inmate Monitoring case.

| 4a.  Parole Hearing Scheduled:____ Yes _X__  No | b.  If yes, when _____ |
|---|---|

5.  Note any past or present behavior and/or management/inmate concerns:

Inmate Shorter is not a management concern. However, there are security concerns due to GD, and the physical layout of FCI Fort Dix, New Jersey.

6.  Sentry Discrepancies:

There is one discrepancy between the BP-337 and BP-338. The BP-337 reflects a minor history of escape greater than ten years for absconding supervision. Inmate Shorter's probation was revoked due to new charges, and he was found not guilty of absconding. Therefore, a minor history of escape greater than ten years is not reflected on the BP-338. There are no further discrepancies between the BP-337 and BP-338.

Staff have checked the following SENTRY Programs to ensure that they are correct and current:

| Inmate Profile | CIM Clearance and Separatee Data |
|---|---|
| Inmate Load Data | Custody Classification Form |
| Sentence Computation | Chronological Disciplinary Record |

Prepared by: T. McKinnon
           Case Manager

Unit Manager Signature: K. Byrd
                       Unit Manager

*For Mariel Cuban Detainees - Staff have entered the CMA Assignment of "C.P., Pif Review Panel Hearing four months from his/her Roll..."

If the transfer is approved, a Progress Report will be completed prior to transfer. (This form may be replicated via WP)

**REQUEST FOR ADMINISTRATIVE REMEDY**
**Remedy Number: 860656-F1**

**Part B-RESPONSE**

This is in response to your Request for Administrative Remedy received on
April 22, 2016, wherein you allege the DSCC did not promptly respond to the Request
for Transfer in a timely fashion, which lead to you being sexually assaulted.  For relief
you request to have, "a full, fair and impartial investigation by, OIA, OIG, Office of
Professional Responsibility and the Office of Government Ethics/Bureau Ethics Officer
for further independent and impartial investigations to determine whether the actions or
failure to act violates any statutory, administrative and/or constitutional provisions".

Your allegations of misconduct have been reviewed for appropriate disposition in
accordance with policy.  Allegations of misconduct are taken seriously; however, you
will not be provided with further information regarding the disposition.

Therefore your Request for Administrative Remedy is for <u>informational purposes only</u>.
If dissatisfied with this response, you may appeal to the Regional Director, 3800 Camp
Creek Parkway, SW, Bldg. 2000, Atlanta, Georgia 30331-6226.  Your appeal must be
received in the Regional Office within 20 calendar days of the date of this response.

_____          12 MAY 16
B. H. Romero, Warden                Date

U.S. Department of Justice

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: | SHORTER, CHRISTOPHER, L | 21344-017 | GATOR | MIAMI-FCI |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**   I further grieve Administrative Remedy #860656-F1 in it's entirety. I submit this Regional Administrative Remedy Appeal for informational purposes and for purposes of exhausting this aspect of my administrative remedies precedent to pursuing a federal **BIVENS** action for the evidenced and blatant disregard for my constitutional rights.

USPS Tracking # 9114 9014 9645 0204 5841 09

5/16/2016
DATE                                     SIGNATURE OF REQUESTER

**Part B - RESPONSE**

MAY 24 2016

DATE                                     REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                     CASE NUMBER: _860656-R1_

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

DATE                                     SIGNATURE, RECIPIENT OF REGIONAL APPEAL

Regional Administrative Remedy Appeal No. 860656-R1
Part B - Response

This is in response to your Regional Administrative Remedy Appeal received on
May 24, 2016, which you claim is being submitted for informational purposes and to exhaust
the administrative remedy process.   Additionally, you claim you are grieving the response from
the institution in its entirety.   You do not make any specific request for relief.

An inquiry into your request was conducted and the following information was ascertained.
On September 4, 2015, it was determined by the Gender Identity Dysphoria Committee, you
should be transferred from FCI Fort Dix to another low security institution due to the physical
layout of FCI Fort Dix.   The Warden signed your transfer request on September 21, 2015.

An intelligence search was conducted and no information was discovered indicating at any time
while you were housed at Fort Dix, you indicated to staff you were in fear for your safety or had
any security concerns.   You were allowed to remain in the general population pending the
approval of transfer from the Designation and Sentence Computation Center (DSCC) to
another appropriate facility.

On October 14, 2015, you alleged an unidentified inmate entered your living area and sexually
assaulted you.   The institution took appropriate action in accordance with Program Statement
5324.12, Sexually Abusive Behavior Prevention and Intervention Program, and initiated the
Prison Rape Elimination Act (PREA) protocols.   You were safeguarded, placed in the Special
Housing Unit, and a complete investigation was conducted.   The findings of the investigation
were unsubstantiated.

In your initial Administrative Remedy, you allege actions taken by the DSCC or lack thereof
resulted in you being sexually assaulted.   Program Statement 5270.10, Special Housing
Units, states in part, you may be placed in administrative detention if you were a victim of an
inmate assault, or are being threatened by other inmates, including threats of harm if you do not
act in a certain way.   For example, threats of harm unless you engage in sexual activity. There
is no evidence these circumstances pertained to you prior to the alleged incident on
October 14, 2015.

In your most recent request for Regional Administrative Remedy Appeal, you do not provide
any additional information the agency acted inappropriately or outside of national policy.

Accordingly, this response to your Regional Administrative Remedy Appeal is for informational
purposes only.   If dissatisfied with this response, you may appeal to the Office of General
Counsel, Bureau of Prisons, 320 First Street, NW, Washington, D.C. 20534.   Your appeal
must be received in the Office of General Counsel within 30 calendar days of the date of this
response.

_____                          _____
7/14/16                                          
Date                                             Regional Director, SERO

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __SHORTER, CHRISTOPHER  L__   __21344-017__   __GATOR__   __MIAMI---FCI__
     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**   I further grieve Administrative Remedy #860656-F1 and Regional Administrative Remedy Appeal #860656-R1 in their entirety. (Please see attached)

    I did not receive Regional Administrative Remedy Appeal response until **7/27/2016**, (Please see attached Memo from Counselor Acevedo).

    I submit this Central Office Administrative Remedy Appeal for informational purposes and for purposes of exhausting this aspect of my administrative remedies precedent to pursuing a **FEDERAL BIVENS ACTION** for the evidenced and blatant disregard for my constitutional rights.

    I am mailed this Central Office Administrative Remedy Appeal by **CERTIFIED** MAIL # 7004 1350 0000 7009 1223.

__7/27/2016__
DATE

_(signature)_
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

AUG 0 1 2016

Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: __860656 - A1__

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____
DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

**Administrative Remedy No. 860656-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal where you allege, due to the Designation and Sentence
Computation Center's (DSCC) failure to process your transfer
request; you were sexually assaulted by another inmate at FCI Fort
Dix.  You indicate you are continuing with the administrative remedy
process in order to pursue a Bivens action.

The Warden and Regional Director adequately addressed your complaint
and we concur with the responses you were provided.  All of your
claims were properly investigated by staff and you were advised
accordingly.  As advised, there was no credible evidence that DSCC
staff or staff at FCI Fort Dix acted inappropriately or outside of
policy in regards to your housing status at that time and/or request
to be transferred.

You have since transferred to FCI Miami and are housed in the general
population.  Any further housing issues should be addressed to your
current Unit Team.  This response is provided for informational
purposes.

_8|26|16_
Date

Ian Connors, Administrator
National Inmate Appeals

# Bureau of Prisons
# Psychology Services
# Intake Screening

**SENSITIVE BUT UNCLASSIFIED**

| | | | | |
|---|---|---|---|---|
| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | Reg #:  21344-017 |
| Date of Birth: | 06/21/1978 | Sex:  M | Facility:  FTD | Unit Team:  UNIT 6 |
| Date: | 06/22/2015 16:03 | Provider:  Kotch, Sharon PsyD DAP Coordinator | | |

### Limits of Confidentiality
Limits of confidentiality were reviewed with inmate SHORTER.  He expressed an understanding of the limits of confidentiality and consented to be interviewed accordingly.

### Data Source(s)
The following data sources were reviewed in conjunction with this intake screening: Self-Report, SENTRY, Staff Observation.

### Mental Health History and Current Symptoms
A history of mental health issues was noted: Depressive Disorder, Bipolar Disorder, Schizophrenia / Psychotic Disorder, Anxiety Disorder, Gender Dysphoria.
Inmate has a history of treatment for anxiety, depression, schizoaffective d/o, Bipolor d/o and Gender Dysphoric Disorder. He believes mental health issues originated from his denial of his sexual identity throughout his life.  At this time, he denies a need for medication, but would like therapy contact with Psychology Services.

A history of prior mental health treatment was noted: Outpatient Counseling/Psychotherapy, Psychotropic Medications, Inpatient Treatment.
Inmate has been treated in both inpatient and outpatient settings.  He has been treated with a variety of medications to include Seroquel, Abilify, Risperdal, Zoloft, and Remeron.  He has not been treated with medication since 2012.

No current mental health symptoms were noted.

Suicidal ideation, attempts, or self-harm were noted: Suicide Ideation-Past, Suicide Attempt-Past.
Inmate attempted suicide six times, according to his self report.  The last attempt occurred in 2005.  He indicated his belief that they all occurred because he had not yet accepted "who (he was)," i.e., that he was meant to be female.  These attempts include overdoses on Ibuprophen, attempts to crash his car, and attempts to shoot himself.  He denied suicidal ideations and/or intent at this time.

### Substance Abuse
A history of substance abuse was noted: Alcohol, Marijuana.

A history of substance abuse treatment was noted: AA/NA/Self-Help, Outpatient Counseling/Psychotherapy, BOP Non-residential Drug Abuse Program.

### Sex Offenses
No sexual offense convictions were noted.

No history of sexual predation in a correctional setting was noted.

### Relevant Psychosocial History
Noteworthy psychosocial issues: Other Relevant Sexual History.
Inmate is Transgender (Male to Female).

### Adjustment to Incarceration
Adjustment to incarceration concerns were identified: Other.
Inmate is Transgender (Male to Female).

### Findings
Care Level:    CARE1-MH
IM SHORTER's presentation and mental health history are consistent with a Care 1-MH categorization. Sentry code has been updated to reflect current mental health care level.

I/M SHORTER presented as oriented in all spheres and without significant complaint. He denies any recent and/or present mood/thought alteration or suicidal symptoms. Additionally, he denies ever being a perpetrator of sexual abuse but has made an accusation against a staff member at his previous institution.  This was reported and it is assumed that the investigation is ongoing.  PREA was explained and he is aware of how to report if he is ever a victim of sexual assault in the future. I/M SHORTER acknowledges a history of substance abuse and did express an interest in related services. If any program was recommended for this inmate or if he was interested in any particular program, it was discussed with him how to apply to the particular program. He was informed how to access drug treatment and psychology services on the compound if he chooses to do so. He was told that this could be done through cop-out, open house or walk-in to psychology services. He was also

| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | Reg #: 21344-017 |
|---|---|---|---|---|
| Date of Birth: | 06/21/1978 | Sex: M | Facility: FTD | Unit Team: UNIT 6 |
| Date: | 06/22/2015 16:03 | Provider: Kotch, Sharon PsyD DAP Coordinator | | |

informed that most psychology programs are voluntary, and he can always decide at a later date to enter a program if he so chooses.

**Recommendations**

The following psychological services are recommended: Drug Treatment Program, Follow-Up Appointment.
Inmate Shorter was encouraged to follow up with Psychology Services as needed. He will be scheduled due to his ROV assignment. It is also recommended that he seek substance abuse treatment while incarcerated.

Completed by Kotch, Sharon PsyD DAP Coordinator on 09/24/2015 13:43

# Bureau of Prisons
# Psychology Services
# Risk of Sexual Victimization

**\*\*SENSITIVE BUT UNCLASSIFIED\*\***

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | Reg #: | 21344-017 |
| Date of Birth: | 06/21/1978 | Sex: | M | Facility:  FTD | Unit Team:  UNIT 6 | |
| Date: | 06/22/2015 16:04 | Provider: | | Kotch, Sharon PsyD DAP | | |

## Comments

During the unit team intake screening process, dated 6/16/15, the staff member utilized the PREA Intake Objective Screening Instrument (P5324.11, Attachment A) for Inmate SHORTER.  Based on the documentation available at the time of the screening and Inmate SHORTER's self-report, he was identified by Unit Management staff as being at risk for sexual victimization due to:

( ) Having a history of being sexually assaulted
( ) His expressed concerns about safety on the compound
and/or having two or more of the following:
(X ) Small in stature (i.e., less than 164 pounds; slight
    build)
( ) Being youthful (i.e., less than 21 years old)
(X ) Having developmental/mental/medical disabilities
(X ) Is or is perceived to be LGBTI or gender non-
    conforming

and/or having the following criminal history:

( ) Never previously incarcerated
( ) Criminal history is exclusively nonviolent
( ) Prior convictions for sex offenses against an adult or
    child
( ) In custody solely under civil immigration detention

As required by P5324.11, Sexually Abusive Behavior Prevention and Intervention, Inmate SHORTER was seen by Psychology on today's date to assess his level of risk for sexual victimization.  At the onset of this clinical contact, the inmate was informed about the BOP requirements regarding PREA. Inmate SHORTER indicated he understands the institution's policy on preventing victimization.

## Risk Factors

In addition to the above risk factors for sexual victimization, the following risk factors were noted during this assessment:

( ) Advanced Education (i.e., greater than high school)
( ) Prior sexual predation in prison or in the community
( X) Prior childhood and/or prison sexual victimization (made an accusation toward a staff member at Jessup.
Investigation may be ongoing.)
( ) Left home prior to the age of 15 years
( ) Low rate of arrest in adolescence
( ) Non-violent criminal history
( ) History of low level mental illness or suicidal ideation
( ) First incarceration
( ) Vulnerable psychological state/presentation (appears
    fearful; worries about being assaulted)
( ) Other:

Protective factors were also reviewed and the following were noted:

( ) Multiple incarcerations without history of victimization
( ) No history of childhood sexual victimization
( ) Large build

| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | Reg #: | 21344-017 |
|---|---|---|---|---|---|---|
| Date of Birth: | 06/21/1978 | Sex: | M | Facility: FTD | Unit Team: | UNIT 6 |
| Date: | 06/22/2015 16:04 | Provider: | Kotch, Sharon PsyD DAP | | | |

( ) Over 21 years old
(X) Assertive presentation
( ) Violent criminal history
( ) No developmental/mental/medical disabilities
( ) No current mental health concerns, including
    excessive worry about sexual victimization
( ) Does not self-identify as LGBTI
(X) Denies being fearful of general population
( ) Other:

### Findings

He indicated that he "felt safe" to function on the compound and was unable to present with a verifiable threat against his safety. Due to his dx of Transgender, however, he will be made ROV. Any past incidences have been reported as appropriate and required by law.

Inmate indicated that he wishes to be seen by Psychology Services, but not necessarily for his history. He will be scheduled.

### Recommendations

Based upon a discussion with the Inmate, and the risk and protective factors that were assessed above, he shows indications that would require his "at risk" level to be raised significantly above another inmate's. He should not be housed with anyone perceived to be "at risk" for sexual abuse perpetration. He will be monitored by Psychology and Correctional services to help promote the safety of the institution. He was able to verbalize understanding regarding how to contact Psychology services should there be any issues that cause him to re-evaluate his safety. PREA was explained and the inmate is aware of how to report if he is ever a victim of sexual assault in the future. He is aware of the services available to him while he is incarcerated at FCI Fort Dix.

Follow-up within 30 days from the original "at risk" designation as a reassessment of their perceived risk level for sexual assault.

Completed by Kotch, Sharon PsyD DAP Coordinator on 09/24/2015 13:29

## Bureau of Prisons
## Psychology Services
## Clinical Intervention - Clinical Contact

**SENSITIVE BUT UNCLASSIFIED**

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | Reg #: | 21344-017 |
| Date of Birth: | 06/21/1978 | Sex: | M | Facility: FTD | Unit Team: | UNIT 6 |
| Date: | 07/13/2015 12:50 | Provider: | | Steinberg, Benjamin PsyD Staff | | |

### Focus of Session

IM SHORTER was seen on this date for follow-up.

### Subjective/Objective Presentation

IM SHORTER self-identified a diagnosis of gender dysphoria. She acknowledged that she has been receiving hormone treatment and identifies as a female. IM SHORTER denied any instances of sexual abuse or sexual harassment since coming to FCI FTD. Nevertheless, IM SHORTER acknowledged feeling "very uncomfortable," particularly showering around other inmates. She indicated that she has had to get dressed in the bathroom because she cannot walk around with her shirt off, as other inmates do. Further, IM SHORTER acknowledged that other inmates have commented on her nipples (i.e., "why are your nipples hard?"). IM SHORTER endorsed concern that she will be sexually harassed or abused, but could not identify any present or immanent concerns.

IM SHORTER reported that she was not provided with hormone therapy for some time, and recently restarted. In regard to accommodations, IM SHORTER requested a smaller cell and "undergarments to keep nipples from showing."

IM SHORTER was oriented x4. Her mood was neutral and affect was congruent. Speech and eye contact were WNL. No symptoms of thought disorder or bizarre behaviors were noted. She denied thoughts of suicide.

### Intervention(s)

This writer provided supportive counseling. Reviewed procedures for safety and PREA, particularly whom to contact should she need to speak to someone. Dr. Marantz, Chief Psychologist, was consulted regarding the above, particularly IM SHORTER's request for accommodations.

### Progress/Plan

IM SHORTER is Care-1MH and will therefore be seen on an as needed basis. She was reminded how to contact psychology services. No follow-up was scheduled.

Completed by Steinberg, Benjamin PsyD Staff Psychologist on 07/13/2015 14:57

## Bureau of Prisons
## Psychology Services

**\*\*SENSITIVE BUT UNCLASSIFIED\*\***

## Clinical Intervention - Clinical Contact

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | Reg #: | 21344-017 |
| Date of Birth: | 06/21/1978 | Sex: | M | Facility: FTD | Unit Team: | UNIT 6 |
| Date: | 08/18/2015 12:45 | Provider: | Rehwinkel, Anna PsyD Staff | | | |

### Focus of Session

IM SHORTER was seen on this date in response to a request made by T. McKinnon, Case Manager.

### Subjective/Objective Presentation

IM SHORTER presented as alert and oriented in all spheres. IM SHORTER's mood appeared agitated and affect was congruent. IM SHORTER maintained strong eye contact and his rate and tone of speech were within normal limits. There was no evidence of thought or perceptual disturbances at this time. IM SHORTER denied having any thoughts of suicide or homicide. She denied having been the victim of sexual assault. She did express concern that she was being placed at risk of victimization due to being celled with another inmate, due to her transgender status. IM SHORTER presented this writer with a multi-page document detailing her argument as to why she should be sent to a smaller, higher-security institution, preferably in her region. She asked that her document be considered by this writer.

### Intervention(s)

This writer provided S. Maranzts, PsyD, Chief Psychologist with the document IM SHORTER presented.

### Progress/Plan

IM SHORTER was reminded how she can contact Psychology Services in the future. Additionally, she was reminded about PREA and how to report any related incidents if they were to occur.


Completed by Rehwinkel, Anna PsyD Staff Psychologist on 09/04/2015 09:00

**\*\*SENSITIVE BUT UNCLASSIFIED\*\***

# Bureau of Prisons
# Psychology Services
## Administrative Contact with an Inmate

| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | Reg #: | 21344-017 |
|---|---|---|---|---|---|---|
| Date of Birth: | 06/21/1978 | Sex: | M | Facility: FTD | Unit Team: | UNIT 6 |
| Date: | 08/21/2015 14:01 | Provider: | Rehwinkel, Anna PsyD Staff | | | |

### Comments

This writer met with IM SHORTER in response to a request by S. Marantz, PsyD, Chief Psychologist. Dr. Marantz asked this writer to ask IM SHORTER if she would prefer a male or female institution; and, to inform her that she would remain in a single cell while at FCI FTD.

When asked if she would prefer a male or female institution, she responded: "A male institution is fine, I am just concerned about the security of the facility. I also need the family support more than anything. I am so far from my family and my mother is sick. I would like Talladega because it is close to my family and has the fewest inmates, I think 903."

I clarified if this meant she would prefer a male institution and she said "Yes."


Completed by Rehwinkel, Anna PsyD Staff Psychologist on 08/21/2015 14:05

EXHIBIT 5

## Bureau of Prisons

**\*\*SENSITIVE BUT UNCLASSIFIED\*\***

## Psychology Services

## Clinical Intervention - Clinical Contact

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | | Reg #: | 21344-017 |
| Date of Birth: | 06/21/1978 | Sex: | M | Facility: FTD | | Unit Team: | UNIT 6 |
| Date: | 09/11/2015 13:23 | Provider: | | Steinberg, Benjamin PsyD Staff | | | |

### Focus of Session

IM SHORTER was seen on this date as a walk-in. She indicated that she had information that she wanted to share with Dr. Marantz, Chief Psychologist. She discussed her belief that she should be at a higher custody level due to her being transgendered.

### Subjective/Objective Presentation

IM SHORTER was oriented x4. Her mood was neutral and affect was congruent. She denied significant symptoms of mood, anxiety, or thought disorder. Speech and eye contact were WNL. No symptoms of thought disorder or bizarre behaviors were noted. She denied thoughts of suicide.

### Intervention(s)

Discussed IM SHORTER's concerns about remaining at a low institution. Reviewed how IM SHORTER can access staff and psychology should she feel unsafe. She denied any current safety concerns; she denied any instances of sexual harassment or sexual abuse.

### Progress/Plan

IM SHORTER is Care-1MH and will therefore be seen on an as needed basis. He was reminded how to contact psychology services. No follow-up was scheduled. Dr. Marantz was contacted regarding IM SHORTER's concerns.

Completed by Steinberg, Benjamin PsyD Staff Psychologist on 10/02/2015 11:40

## Bureau of Prisons
## Psychology Services

**\*\*SENSITIVE BUT UNCLASSIFIED\*\***

## Administrative Contact with an Inmate

| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | Reg #: | 21344-017 |
|---|---|---|---|---|---|---|
| Date of Birth: | 06/21/1978 | Sex: | M | Facility: FTD | Unit Team: | UNIT 6 |
| Date: | 09/11/2015 12:51 | Provider: | | Steinberg, Benjamin PsyD Staff | | |

### Comments

IM SHORTER came to psychology to request that documentation be communicated to Dr. Marantz, Chief Psychologist. The information included a letter indicating that she did not want to be transferred to another low facility, and is requesting transfer to a higher custody facility given her concerns about safety (i.e., being transgendered in a low security male institution). IM SHORTER also included copies of custody program statements. IM SHORTER denied any suicidal thoughts/intent/plan and denied any incidences of sexual abuse or sexual harassment. The documentation was e-mailed to Dr. Marantz.


Completed by Steinberg, Benjamin PsyD Staff Psychologist on 09/11/2015 12:57

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | |
|---|---|---|
| Inmate Name: SHORTER, CHRISTOPHER LAMONT | | Reg #: 21344-017 |
| Date of Birth: 06/21/1978 | Sex: M   Race: BLACK | Facility: FTD |
| Encounter Date: 10/14/2015 04:38 | Provider: Sceusa, Carl MD/CCHP | Unit: W02 |

Physician - Evaluation encounter performed at Health Services.

## SUBJECTIVE:

**COMPLAINT 1**   **Provider:** Sceusa, Carl MD/CCHP

**Chief Complaint:** Assault

**Subjective:** IM felt heavy weight on top of him while in his bed.He awoke to find assailant with sharp razor type weapon to back of neck.Assailant attempted to get victims pants down saying I"ll cut you" Victim was trying to fight off assailant who had ski mask on and in process got superficial cuts to left forearm,right buttock,and back of neck.IM states he cryed out "I have AIDS" as a ploy to avert being sexually compromised.IM states finger partially entered rectal canal but no assailant genitalia had physical contact with victim

**Pain:** Yes

**Pain Assessment**

| | |
|---|---|
| **Date:** | 10/14/2015 04:53 |
| **Location:** | Rectum |
| **Quality of Pain:** | Throbbing |
| **Pain Scale:** | 4 |
| **Intervention:** | EVALUATION |
| **Trauma Date/Year:** | |
| **Injury:** | |
| **Mechanism:** | |
| **Onset:** | 1-5 Hours |
| **Duration:** | 1-5 Hours |
| **Exacerbating Factors:** | WAS VICTIM OF SEXUAL ASSAULT |
| **Relieving Factors:** | N/A |
| **Comments:** | |

## OBJECTIVE:
**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 10/14/2015 | 09:31 FTD | 98.0 | 36.7 | | Sceusa, Carl MD/CCHP |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 10/14/2015 | 09:31 FTD | 68 | | | Sceusa, Carl MD/CCHP |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 10/14/2015 | 09:31 FTD | 16 | Sceusa, Carl MD/CCHP |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 10/14/2015 | 09:31 FTD | 110/80 | Left Arm | Sitting | Adult-regular | Sceusa, Carl MD/CCHP |

## ROS Comments
SEE PREVIOUS PAGE

| Inmate Name: SHORTER, CHRISTOPHER LAMONT | | | Reg #: 21344-017 |
| Date of Birth: 06/21/1978 | Sex: M Race: BLACK | | Facility: FTD |
| Encounter Date: 10/14/2015 04:38 | Provider: Sceusa, Carl MD/CCHP | | Unit: W02 |

## Exam Comments

---------------------------------------PHYSICAL EXAM-------------------------------
GENERAL: alert and orientated times 3 cooperative, English speaking
HEAD: Atraumatic/Normocephalic
EYES: PERRLA EOMI; Visual Fields Grossly Normal: Normal Conjunctiva and Sclera: No icterus
MOUTH: Tongue: No Lesions, No Exudate, No White Plaques
NECK: Supple, SMALL SUPERFICIAL LACERATIONS POSTERIOR NECK
LUNG: Clear to Auscultation and Percussion; No Crackles, Rhonchi or Wheeze
CARDIAC: Regular Rate and Rhythm (RRR), Normal S1 and S2 No M/R/G
ABDOMEN: BS+X4; non tender on Palpation, no Masses or Hepatosplenomegaly
MUSCULOSKELETAL: skin color normal, non-tender, no effusions, normal, active and passive ROM
EXTREMITIES; no CCE, 3 small superficial lacerations on left forearm,RT buttock superior outer area 3 small superficial cuts
NEUROLOGIC: CN 2-12, Intact Grossly, no seizure activity, A+O X 3
MENTAL HEALTH: Cooperative and not agitated
No suicidal or depressive features
RECTAL/PROSTATE EXAM:SMALL EXTERNAL HEMMORROID NO BLEEDING NO OBVIOUS TEARS OR TRAUMA

## ASSESSMENT:

Axis I: Transgender, validated male to female, 302.5b - Current, Chronic, Not Improved/Same

Axis III: Counseling on other sexually transmitted diseases, V65.45 - Current, Temporary/Acute, Initial

Multiple sites, superficial injury, infected, 919.9 - Current, Temporary/Acute, Not Assessed

## PLAN:

### New Medication Orders:

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Tetanus-Diphtheria Toxoids | 10/14/2015 04:38 | .5 cc Intramuscularly Deltoid, Left one time x 1 day(s) Pill Line Only |

**Indication:** Multiple sites, superficial injury, infected

**One Time Dose Given:** No

### Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Psychological Evaluation | 10/14/2015 00:00 | Psychiatrist |

### Disposition:

Follow-up at Sick Call as Needed

### Other:

---IM DISCHARGED TO SHU WITH OFFICER
---TD ORDERED
---PSYCHOLOGICAL SERVICES

### Patient Education Topics:

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 10/14/2015 | Counseling | Plan of Care | Sceusa, Carl | Verbalizes Understanding |

Inmate Name:   SHORTER, CHRISTOPHER LAMONT                                          Reg #:   21344-017
Date of Birth:   06/21/1978                          Sex:      M     Race:   BLACK        Facility:  FTD
Encounter Date:  10/14/2015 04:38                    Provider:  Sceusa, Carl MD/CCHP      Unit:      W02

**Copay Required:** No                 **Cosign Required:**  No
**Telephone/Verbal Order:**  No

Completed by Sceusa, Carl MD/CCHP on 10/14/2015 09:41

# Bureau of Prisons
# Psychology Services
# Sexual Abuse Intervention (V)

**\*\*SENSITIVE BUT UNCLASSIFIED\*\***

| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | Reg #: | 21344-017 |
|---|---|---|---|---|---|---|
| Date of Birth: | 06/21/1978 | Sex: | M | Facility:  FTD | Unit Team:  UNIT 6 | |
| Date: | 10/14/2015 08:29 | Provider: | | Rodriguez, Jamie Psy.D. Staff | | |

## Comments

A sexual abuse intervention assessment was completed on Inmate SHORTER on 10/14/2015 at 8:30 am.

Reason for Referral: The Chief Psychologist contacted this writer at 7:30 am as the Duty Psychologist indicating that IM SHORTER was the victim of an alleged sexual assault. She was seen in the Special Housing Unit. She was pulled from her cell and seen in a private office.

Assessment and Mental Status:

IM SHORTER presented as alert and oriented. Her mood was euthymic with irritable affect. Her thought process was linear and there was no evidence of any thought or perceptual disturbances within this clinical interaction. Eye contact was strong. Speech rate and tone was within normal limits. IM SHORTER expressed agitation and frustration with the institution as a whole and stated, "Doing my time has nothing to do with being sexually assaulted." IM SHORTER is an identified transgender inmate that has been seen regularly by Psychology Services for follow-up and self-advocacy. She is a Care1-MH classification with a history of depression. She is currently prescribed Zoloft. IM SHORTER has had 6 suicide attempts in her past, with the last attempt in 2005. She denied suicidal ideation or attempts since that time. IM SHORTER denied current suicidal ideation. She stated, "I love my life and I am doing everything in my power to live it."

When asked about the alleged incident, IM SHORTER started by saying that she tends to sleep throughout the day and stays up through the night because she does not feel safe with unsecured doors. IM SHORTER is in a 2-man room, alone. She stated, "I'm trying to be transferred. I guess my body is wore out and I fell asleep." IM SHORTER advised that she work up, lying on her stomach, with someone on top of her and felt something sharp on her neck. She began to panic and said, "What the fuck?" Reportedly, the alleged perpetrator stated" You better not scream or I'm going to cut your fucking neck off." Again she mentioned feeling something sharp on her neck. She then stated that the alleged perpetration started to pull at her shorts and underwear. When he could not get them off, the alleged perpetrator took the weapon and cut  her shorts and underwear and "pulled them down." IM SHORTER then advised that the alleged perpetrator penetrated her anus with his finger "in preparation to stick his penis in." IM SHORTER told the alleged perpetrator "I have aids, I have HIV." The alleged perpetrator then "jumped up" and when she rolled over to see who it was, the alleged perpetrator had a grey hood made of a ski mask. She stated that he was approximately 5 feet 9 inches and between 170 and 180 pounds and light skinned. His coloring was difficult to determine because a jacket was covering the window. She advised that she stood up as he was leaving and tried to grab the mask. The alleged perpetrator started started swinging and cut IM SHORTER's forearm. Following this incident, she sat on her bed to collect herself and when enough time passed, she went to the officer station. She arrived to the officer station around 1:45 am. The incident occurred just prior to that time.

IM SHORTER reported minimal pain from the cut on her forearm. She did advise that her anus is sore ("Finger just jerking it-- cuts itching). IM SHORTER offered that she believed this was a "set up" or that she was being retaliated against. She stated, "I'm not popular with the inmates because I'm not having sex. I'm not popular with staff because I hold them accountable." She stated, "I'm ready to go away from here." IM SHORTER advised that she has been put in for a transfer and expressed frustration with the amount of time that has passed before being designated. She denied any sexual interactions since her arrival to FCI FTD and stated, "Stakes are high when you don't have sex with anyone." IM SHORTER reported that she feels safe in the Special Housing Unit with the locked door, however, is concerned about the restrictions during the day and limited contact with her family. Supportive counseling was offered.

Inmate SHORTER was offered a phone call to CONTACT Sexual Assault Services in Burlington County and accepted. They were contacted at 8:45 am on 10/14/2015 by this writer on behalf of IM SHORTER. The operator returned the phone call at 9:09 am to let this writer know that an advocate should be reaching out shortly. The advocate (named Georgie) contacted this writer at 9:30 am and spoke with IM SHORTER in the presence of this writer until 9:42 am.

| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | Reg #: | 21344-017 |
| Date of Birth: | 06/21/1978 | Sex: | M | Facility: FTD | Unit Team: | UNIT 6 |
| Date: | 10/14/2015 08:29 | Provider: | Rodriguez, Jamie Psy.D. Staff | | | |

IM SHORTER was seen for a medical assessment prior to this Sexual Abuse Intervention (V) due to his allegation of sexual assault involving physical contact. SIS LT, PREA Compliance Manager, Chief Psychologist, and Captain were informed of the assessment completed by this writer.

Treatment Recommendations:
1. IM SHORTER was advised that Psychology Services completes rounds in the Special Housing Unit twice per week. She was advised on how to contact Psychology Services in the event of an emergency/crisis or to schedule a follow-up appointment while in the SHU. She has been encouraged to utilize psychology services as needed.

Risk of Victimation

IM SHORTER was identified as at risk for sexual victimization upon her designation to FCI Fort Dix. This will be maintained at this time. She will continue to be monitored by Psychology and Correctional services to help promote the safety of the institution. She was able to verbalize understanding regarding how to contact Psychology services should there be any issues that cause her to re-evaluate her safety. PREA was explained and the inmate is aware of how to report if she is ever a victim of sexual assault in the future. She is aware of the services available to her while she is incarcerated at FCI Fort Dix. Her risk level will be assessed every 6 months.


Completed by Rodriguez, Jamie Psy.D. Staff Psychologist on 10/14/2015 09:53

EXHIBIT J

C. Shorter
Register No. 21344-017

This is to inform you the investigation initiated October 14, 2015
has concluded and determined the allegations to be unsubstantiated.

_____          10. 29 . 15
M. Bittner, Lieutenant                    Date

_____          10 -29 -15
C. Shorter, Reg. No 21344-017             Date

_____          10 29-15.
Witness                                   Date

EXHIBIT K

§ 115.18  Upgrades to facilities and technologies.

(a) When designing or acquiring any new facility and in planning any substantial expansion or modification of existing facilities, the agency shall consider the effect of the design, acquisition, expansion, or modification upon the agency's ability to protect inmates from sexual abuse.

(b) When installing or updating a video monitoring system, electronic surveillance system, or other monitoring technology, the agency shall consider how such technology may enhance the agency's ability to protect inmates from sexual abuse.

All new facility designs and upgrades of technology will include consideration of how it could enhance the Bureau's ability to protect against sexual abuse.

RESPONSIVE PLANNING

§ 115.21  Evidence protocol and forensic medical examinations.

(a) To the extent the agency is responsible for investigating allegations of sexual abuse, the agency shall follow a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence for administrative proceedings and criminal prosecutions.

(b) The protocol shall be developmentally appropriate for youth where applicable, and, as appropriate, shall be adapted from or otherwise based on the most recent edition of the U.S. Department of Justice's Office on Violence Against Women publication, "A National Protocol for Sexual Assault Medical Forensic Examinations, Adults/ Adolescents," or similarly comprehensive and authoritative

progstat                                                                          1

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

21344017

EXHIBIT K

**protocols developed after 2011.**

The Bureau's response to sexual assault follows the U.S. Department of Justice's Office on Violence Against Women publication, "A National Protocol for Sexual Assault Medical Forensic Examinations, Adults/Adolescents," dated April 2013, or the most current version.

**(c) The agency shall offer all victims of sexual abuse access to forensic medical examinations, whether on-site or at an outside facility, without financial cost, where evidentiary or medically appropriate. Such examinations shall be performed by Sexual Assault Forensic Examiners (SAFEs) or Sexual Assault Nurse Examiners (SANEs) where possible. If SAFEs or SANEs cannot be made available, the examination can be performed by other qualified medical practitioners. The agency shall document its efforts to provide SAFEs or SANEs.**

When there is a report of a recent incident of sexual abuse, or there is a strong suspicion that a recent serious assault may have been sexual in nature, a physical examination of the alleged victim is conducted.  The victim is provided the opportunity for a forensic examination as soon as possible.  Physical evidence collection may also include an examination of and collection of physical evidence from the suspected perpetrator(s).

For further information see sections 115.64, 115.65, and 115.81-83.

In the case of inmate-on-staff sexual abuse, community medical/mental health resources and services will be made available to the staff member immediately.

**(d) The agency shall attempt to make available to the victim a victim advocate from a rape crisis center. If a rape crisis center is not available to provide victim advocate services, the agency shall make available to provide these services a**

**qualified staff member from a community-based organization, or a qualified agency staff member. Agencies shall document efforts to secure services from rape crisis centers. For the purpose of this standard, a rape crisis center refers**

progstat                                          2
© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

§ 115.34  Specialized training: Investigations.

(a) In addition to the general training provided to all employees pursuant to

§ 115.31, the agency shall ensure that, to the extent the agency itself conducts sexual abuse investigations, its investigators have received training in conducting such investigations in confinement settings.

The Chief of Correctional Services ensures his/her Special Investigative Supervisor/Special Investigative Agents are appropriately trained under this section. The Chief of the Office of Internal Affairs ensures his/her staff are appropriately trained under this section.

(b) Specialized training shall include techniques for interviewing sexual abuse victims, proper use of *Miranda* and *Garrity* warnings, sexual abuse evidence collection in confinement settings, and the criteria and evidence required to substantiate a case for administrative action or prosecution referral.

The Bureau trains on the rights and warnings applicable in the Federal sector, and as referenced in the Master Agreement.

(c) The agency shall maintain documentation that agency investigators have completed the required specialized training in conducting sexual abuse investigations.

(d) Any State entity or Department of Justice component that investigates sexual abuse in confinement settings shall provide such training to its agents and investigators who conduct such investigations.

§ 115.35  Specialized training: Medical and mental health care.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(a) The agency shall ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in:

(1) How to detect and assess signs of sexual abuse and sexual harassment;

(2) How to preserve physical evidence of sexual abuse;

(3) How to respond effectively and professionally to victims of sexual abuse and sexual harassment; and

(4) How and to whom to report allegations or suspicions of sexual abuse and sexual harassment.

The Health Services Division ensures medical staff are appropriately trained under this section. The Reentry Services Division ensures mental health staff are appropriately trained under this section.

Please note, training under this section does not refer to certifications needed to conduct forensic examinations.

(b) If medical staff employed by the agency conduct forensic examinations, such medical staff shall receive the appropriate training to conduct such examinations.

(c) The agency shall maintain documentation that medical and mental health practitioners have received the training referenced in this standard either from the agency or elsewhere.

(d) Medical and mental health care practitioners shall also receive the training

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

21344017

EXHIBIT N

§ 115.62  Agency protection duties.

**When an agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate.**

In cases where the alleged perpetrator is another inmate, the Operations Lieutenant is notified immediately and immediately safeguards the inmate (which will vary depending on the severity of the alleged sexually abusive behavior and could include monitoring the situation, changing housing assignments, changing work assignment, placing alleged victim and perpetrator in Special Housing, etc.). The Operations Lieutenant promptly refers all inmates reported or suspected of being the victim of sexually abusive behavior to Psychology Services for assessment of vulnerability and treatment needs. The Operations Lieutenant also notifies the Institution PREA Compliance Manager.

If the alleged perpetrator is a staff member, all options for safeguarding the inmate should be considered as described in the above paragraph. The decisions made to safeguard the inmate should take impact on staff member into account, in accordance with the Master Agreement. Removal from the facility is an extreme measure, and other options include reassignment to another unit or post, or other measures that will effectively separate the staff member from the inmate.

If the alleged perpetrator is an inmate, and a staff member is the subject of abuse or harassment, all options for safegurading the staff member should be considered. Options should include reassignment of the inmate to another housing unit, writing incident reports, assignment to the Special Housing Unit, criminal prosecution if appropriate, etc., in accordance with the Program Statements **Inmate Discipline Program** and **Special Housing Units**, among other options that will effectively separate the inmate from the staff member.

progstat                                                                1
© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

: EXHIBIT O

perpetrated sexually abusive behavior against a staff member, the SIA/SIS must be contacted immediately, with follow-up notification to the Warden. The Warden refers these matters for criminal investigation and possible prosecution in accordance with the Program Statement **Criminal Matter Referrals**.

**(b) Where sexual abuse is alleged, the agency shall use investigators who have received special training in sexual abuse investigations pursuant to § 115.34.**

**(c) Investigators shall gather and preserve direct and circumstantial evidence, including any available physical and DNA evidence and any available electronic monitoring data; shall interview alleged victims, suspected perpetrators, and witnesses; and shall review prior complaints and reports of sexual abuse involving the suspected perpetrator.**

**Note.** this is a separate responsibility from staff first responders addressed in section 115.64. These duties are carried out by the appropriate investigative agency (e.g., SIS, OIA, OIG, FBI).

Previous unsubstantiated or unfounded complaints and reports may not be used as evidence.

**(d) When the quality of evidence appears to support criminal prosecution, the agency shall conduct compelled interviews only after consulting with prosecutors as to whether compelled interviews may be an obstacle for subsequent criminal prosecution.**

**(e) The credibility of an alleged victim, suspect, or witness shall be assessed on an individual basis and shall not be determined by the person's status as inmate or staff. No agency shall require an inmate who alleges sexual abuse to submit to a polygraph examination or other truth-telling device as a condition for proceeding with the investigation of such an allegation.**

progstat                                    2
© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT P

(l) When outside agencies investigate sexual abuse, the facility shall cooperate with outside investigators and shall endeavor to remain informed about the progress of the investigation.

§ 115.72  Evidentiary standard for administrative investigations.

The agency shall impose no standard higher than a preponderance of the evidence in determining whether allegations of sexual abuse or sexual harassment are substantiated.

The Bureau applies this section in accordance with its disciplinary/adverse action process and collective bargaining agreement, and applicable laws, rules, and regulations.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening.

(d) Any information related to sexual victimization or abusiveness that occurred in an institutional setting shall be strictly limited to medical and mental health practitioners and other staff, as necessary, to inform treatment plans and security and management decisions, including housing, bed, work, education, and program assignments, or as otherwise required by Federal, State, or local law.

It is appropriate under this section to provide staff information on an inmate's history of being a sexual abuser; for example, placing the inmate in the Posted Picture File, to maintain the safe, secure, and orderly running of the institution.

(e) Medical and mental health practitioners shall obtain informed consent from inmates before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the inmate is under the age of 18.

§ 115.82  Access to emergency medical and mental health services.

(a) Inmate victims of sexual abuse shall receive timely, unimpeded access to emergency medical treatment and crisis intervention services, the nature and scope of which are determined by medical and mental health practitioners according to their professional judgment.

See section 115.65 for details concerning emergency mental health services.

Procedures for Inmate Victims. Medical staff are responsible for examination, documentation, and treatment of inmate injuries arising from sexually abusive behaviors, including testing when appropriate for pregnancy and sexually transmissible infections (STIs), including HIV.

progstat                                              2
© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

21344017

EXHIBIT R

Fort Dix Staff please answer the folowing questions promptly and thoroughly.  The answers to the questions need to be with the proper question even if youdecide to answer the questions on another page.  This method will ensure uniformity and will prevent conjecture as to which answer is for which question.

1.) In accordance with (PS) 5324.12§115.21(a), did Fort Dix Staff follow a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence for administrative proceedings and criminal prosecutions in the sexual abuse investigation of Christopher Shorter, (A Transgender Inmate), that happened on 10/14/2015 in cell 207 of building 5841?

a). If so how?

2.) In accordance with (PS) 5324.12§115.21(c), did the examining physician conduct a forensic medical examination on inmate Christopher Shorter?

3.) In accordance with (PS) 5324.12§115.21(c), was the examining physician a (SAFEs), Sexual Assault Forensic Examiners or (SANEs) Sexual Assault Nurse Examiners?

a.) If so, why didn't he conduct a forensic medical exam?

b.) If not, why didn't he refer Inmate Christopher Shorter off-site for a forensic examination?

c.) Can forensic or DNA evidence be seen with the naked eye or with a flashlight?

4.) In accordance with (PS) 5324.12§115.31(a)(1), what is the agency's tolerance policy for sexual abuse?

5.) In accordance with (PS) 5324.12§115.31(a)(2), are all employees who may have contact with inmates trained on how to fulfill their responsibilities under agency sexual abuse prevention, detection, reporting and response policies and procedures?

6.) In accordance with (PS) 5324.12§115.31(3), Inmates' have a right to be free from sexual abuse. True or False

7.) In accordance with (PS) 5324.12§115.31(9), Employees are trained to communicate effectively and professionally with Transgender inmates.  True or False

8.) In accordance with (PS) 5324.12§115.31(d), Did Fort Dix Staff document, through employee signature or electronic verification, that their employees understood the training they received about sexually abusive behavior prevention and intervention?

9.) In accordance with (PS) 5324.12§115.31(10), staff training includes a component on crime scene preservation for first responders.   True or False

10.) In accordance with (PS) 5324.12§115.34(a), was (SIS) Lt. Bittner trained in conductin sexual abuse investigations in confinement settings?

11.) In accordance with (PS) 5324.12§115.34(b), was (SIS) Lt. Bittner trained in sexual abuse evidence collection in a confinement settings?

a.) If so, why didn't (SIS) Lt. Bittner promptly collect and/or preserve Inmate Christopher Shorter's clothing she was wearing when she was sexually assaulted for forensic testing?

b.) If so, why didn't (SIS) Lt. Bittner use his specialized training techniques in his interview with sexual abuse victim Inmate Christopher Shorter?

c.) If so, why didn't (SIS) Lt. Bittner collect, physical, DNA and/or forensic evidence that is required to substantiate a case for administrative action and/or prosecution referral?

12.) In accordance with (PS) 5324.12§115.34(c), Do Fort Dix have documentation that (SIS) Lt. Bittner have completed the required specialized training in conducting sexual abuse investigations?

a.) If so, can Fort Dix Staff provide copies of such documentation?

13.) In accordance with (PS) 5324.12§115.35(a)(1), (a)(2) & (a)(3), was the physician that examined Inmate Christopher Shorter who was sexually abused on 10/14/2015, trained in how to assess signs of sexual abuse?

a.) Was he trained on how to preserve physical evidence of sexual abuse?

b.) Was he trained on how to respond effectively and professionally to Inmate Christopher Shorter, (A Transgender Inmate), who was a victim of sexual abuse on 10/14/2015?

14.) In accordance with (PS) 5324.12§115.35(b) & (c), was the physician who examined Inmate Christopher Shorter trained to conduct forensic examinations?

a.) If so, why didn't he conduct a forensic examination on Inmate Christopher Shorter?

b.) If so, can Fort Dix Staff provide documentation that the examining physician received the training?

EXHIBITS R CONTINUED

15.) In accordance with (PS) 5324.12§115.41, does Inmate Christopher Shorter, (A Transgender Inmate) meet the criteria to be considered "at-risk" for sexual victimization?

16.) In accordance with (PS) 5324.12§115.42(a), (b), (c), (d), (e), (f), did Fort Dix Staff use the screening information required by (PS) 5324.12§115.41 to inform and make, housing and bed assignments with the goal of keeping separate Inmate Christopher Shorter, (A Transgender Inmate) and who is at high risk of being sexually victimized from those at high risk of being sexually abusive?

a.) If so, How?

17.) In accordance with (PS) 5324.12§115.62, why was Inmate Christopher Shorter, (A Transgender Inmate), who was considered to be at high risk of being sexually victimzed housed in cell 207, the farthest cell on the second floor away from the officers' station which is located on thefirst floor of building 5841?

a.) Why wasn't Inmate Christopher Shorter allowed to move in one of the unused (empty) (2) man cells on the first floor of building 5841 where the officer's station is located?

b.) Is it because Counselor Hamel prefer not to use those empty (2) man cells located on the first floor of building 5841?

18.) In accordance with (PS) 5324.12§115.71(a)& (c), why did it take (SIS) Lt. Bittner (7) full days to interview Inmate Christopher Shorter the victim of a sexual assault?

19.) In accordance with (PS) 5324.12§115.72, why did (SIS) Lt. Bittner place a higher that a preponderance of the evidence in determining that Inamte Christopher Shorter's allegation of sexual abuse was unsubstantiated when he did not follow the proper protocol in investigating the sexual abuse investigation?

20.) In accordance with (PS) 5324.12§115.82(a) & (c), why haven't Inmate Christopher Shorter, a victim of sexual abuse on 10/14/2015, received any sexually transmissible infections prophylaxis and/or HIV testing?

a.) Why didn't Inmate Christopher Shorter receive these services before leaving Fort Dix FCI?

21.) Did Fort Dix Staff have a duty to protect Inmate Christopher Shorter, (A Transgender Inmate), from being raped by another prisoner?

22.) Did Fort Dix Staff allowing Inmate Christopher Shorter, (A Transgender Inmate), to be raped by another prisoner serve a legitimate penological objective?

23.) Does Fort Dix FCI have an LGBT on-site liaison?

a.) If so, who is it----name and official title?

b.) If so, why wasn't Inmate Christopher Shorter referred to he/she for assistance with Transgender issues in a confinement setting?

24.) On 7-7-2015, Inmate Christopher Shorter had a meeting with Unit Manager Byrd and Counselor Hamel. In front of Unit Manager Byrd, who is Counselor Hamel's immediate supervisor, Counselor Hamel displayed discriminative animus that he harbored for Inmate Christopher Shorter, (A Transgender Inmate). With this type of behavior, Why was Counselor Hamel allowed to continuously make decision(s) about housing, bed etc.... about Inmate Christopher Shorter?

25.) On 9-21-2015, attached EXHIBIT F is a (409), Request for Transfer. Therein, it is noted as a reason for the request that Fort Dix could not provide the supervission that Inmate Christopher Shorter needed to be safe and protected. Now that all is said and done, do Fort Dix Staff really believe that they did all they could to keep Inmate Christopher Shorter safe?

a.) Did Fort Dix Staff provide the type of protect for Inmate Christopher Shorter that would have prevented Inmate Christopher Shorter from being sexually assaulted?

b.) Did Fort Dix Staff take reasonable actions to prevent Inmate Christopher Shorter from getting sexually assaulted during the time Inmate Christopher Shorter was waiting to be transferred?

c.) Did Fort Dix Staff feel like putting in the mere paperwork to have Inmate Christopher Shorter transferred protected Inmate Christophe Shorter from being sexually assaulted?

d.) Why was Fort Dix Staff deliberately indifferent to Inmate Christopher Shorter, (A Transgender Inmate), safety needs?

e.) Why did Fort Dix Staff deliberately allow Inmate Christopher Shorter, (A Transgender Inmate) to be sexually assaulted?

## 42. **SEXUAL ASSAULT PREVENTION AND INTERVENTION**

a. **Prevention**. General training requirements for staff will be in accordance with the Program Statement **Sexually Abusive Behavior Prevention and Intervention Program**.

Medical staff will refer to Psychology Services all inmates who have been identified as victims of:

Sexually aggressive behavior.

Sexual pressure.

Sexual harassment.

Sexual assault.

b. **Intervention.**  When an inmate reports being sexually assaulted, medical staff will document the inmate's complaint and subjective/objective findings fully on the Inmate Injury Assessment and Followup form (BP-A0362) and notify institution authorities regarding this complaint immediately.  The plan for further evaluation and treatment will also be included on the BP-A0362.

In order not to compromise medical evidence on an inmate who reports a recent sexual assault, it is recommended that the inmate be transported to a community facility/rape crisis center that is equipped (in accordance with local laws) to evaluate and treat sexual assault victims.  (Refer to the Program Statement **Sexually Abusive Behavior Prevention and Intervention Program**.)

Institutions may use on-call contracted clinical care staff to provide sexual abuse/assault treatment.   These clinical care providers would report to the institution via a contractual arrangement when institution authorities call.

progstat                                                              1
© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

21344017

Only in institutions where extreme security concerns exist may in-house physicians be used to provide treatment, examination, and forensic evidence gathering to inmates who report sexual abuse/assault.

Annually, these staff must be specifically trained and demonstrate knowledge and skills in sexual abuse/ assault treatment and forensic evidence gathering.

An individual who has recognized expertise in this field (e.g. sexual abuse/assault treatment staff in a community-based hospital emergency department or community-based rape crisis center) must perform this training.

The Clinical Director will ensure (whether treatment has been provided in-house or in the community) that appropriate infectious disease testing, medical examination, and medical physical evidence collection has been conducted and the results of all examinations/ evaluations have been provided to institution SIS staff.

Specific procedures for evaluating and treating victims of sexual abuse/assault will be included in the Institution Supplement for the Sexually Abusive Behavior Prevention and Intervention Program.

progstat 2

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

21344017

EXHIBIT T



# Federal Correctional Institution Fort Dix, N.J.

### Photo Sheet

| Date: | Time of incident: | Location of incident: |
|---|---|---|
| 10-14-2015 | 1:45 p.m. | West Compound Unit 5841 |

| Inmate Name: | Inmate Number: |
|---|---|
| SHORTER, CHRISTOPHER | 21344-017 |

(b)(6),(b)(7)(C),(b)(7)(F)

**Photo Taken By:** Officer

**Description:** Approximately at 1:45 a.m., Inmate Shorter, Christopher (b)(6),(b)(7)(C),(b)(7)(F)
(b)(6),(b)(7)(C),(b)(7)(F)








(b)(6),(b)(7)(C),(b)(7)(F)

10/14/15

EXHIBIT T



# Federal Correctional Institution
## Ft. Dix, New Jersey
### Photo Sheet

| Date: | Time of Incident: | | Location of incident: |
|---|---|---|---|
| **OCTOBER 14, 2015** | 1415 | | **SHU** |
| **Inmate Name:** | | **Inmate Number:** | |
| SHORTER, CHRISTOPHER | | 21344-017 | |
| **Photo Taken By:** (b)(6),(b)(7)(C),(b)(7)(F) | | | |
| **Description**: INMATE PHOTO | | | |



EXHIBIT T



# Federal Correctional Institution
## Ft. Dix, New Jersey
### Photo Sheet

| Date: | Time of incident: | | Location of incident: |
|---|---|---|---|
| **OCTOBER 14, 2015** | **1415** | | SHU |

| Inmate Name: | | Inmate Number: | |
|---|---|---|---|
| SHORTER, CHRISTOPHER | | 21344-017 | |

| Photo Taken By: (b)(6),(b)(7)(C),(b)(7)(F) | |
|---|---|

**Description**: INMATE PHOTO



EXHIBIT T



U.S. Department of Justice
Federal Bureau of Prisons

**Inmate Investigative Report**

**Institution:** Fort Dix FCI

**Case Number:** FTD-16-0012

**Investigation Type:** Investigative (b)(7)(F)

**Inmates Involved:**

| Register Number | Name | Role |
|---|---|---|
| 21344017 | SHORTER, CHRISTOPHER | (b)(7)(F) |

**Staff Involved:**

| Name | Title |
|---|---|
| **No information was found for the given criteria.** | |

**Others Involved:**

| Name | Title |
|---|---|
| **No information was found for the given criteria.** | |

**Investiga** (b)(6),(b)(7)(C),(b)(7)(F)     **Date:** 10/21/2015 11:29:26 AM CST

**Captain:**     **Date:** 10/26/2015 6:18:02 AM CST

**Associate**     **Date:** 10/26/2015 1:16:44 PM CST

**Warden:** DYNAN, CHRISTINE     **Date:** 10/26/2015 1:16:49 PM CST

BOP FOIA2016 04110 0 of 14

EXHIBIT T

**Summary:**

(b)(7)(F)

**Inmate Data:**

**Name:** 21344017 - SHORTER, CHRISTOPHER

**Role:** (b)(7)(F)                         **Age:** 37    **Race:** BLACK

**Security Level:** LOW              **Custody Level:** IN

**Facility Arrival Date:** 6/17/2015     **Projected Release Date:** 10/14/2018

**Charges:**

| Description | Sentencing District |
|---|---|
| 18:1028A(A)(1)&2 AGGRAVATED I.D. THEFT, AIDING & ABETTING CT-52-55 | FLORIDA, NORTHERN DISTRICT |
| 18:286 CONSP TO DEFRAUD THE GOV'T W/ RESPECT TO CLAIMS-1-14 18:1343&2 WIRE FRAUD, AIDING & ABETTING-CT27-33, 18:1341&2 MAIL FRAUD & AIDING & ABETTING-CT34-44 | FLORIDA, NORTHERN DISTRICT |

(b)(7)(F)

(b)(7)(F)

**Assailant Statements:**

EXHIBIT T

**No information was found for the given criteria.**

(b)(6),(b)(7)(C),(b)(7)(F)

**Factual Findings:**

**No item information was found for the given criteria.**

EXHIBIT T

| Type | Subtype | File Name | Original Entered By |
|------|---------|-----------|---------------------|
| (b)(7)(E),(b)(7)(F) | | | |

**Conclusion:**

(b)(7)(F)

EXHIBIT T

(b)(7)(F)

**Recommendation:**
(b)(5),(b)(7)(F)

**CIMS Separation Warranted:** No

# Bureau of Prisons
# Psychology Services
## Diagnostic and Care Level Formulation

**SENSITIVE BUT UNCLASSIFIED**

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | Reg #: | 21344-017 |
| Date of Birth: | 06/21/1978 | Sex: | M | Facility: FTD | Unit Team: | UNIT 6 |
| Date: | 10/22/2015 09:10 | Provider: | Rehwinkel, Anna PsyD Staff | | | |

### Presenting Problem/Symptom

IM SHORTER was recently the alleged victim of sexual assault. She is reporting experiencing involuntary, intrusive memories, reporting she can still smell the perpetrator's breath and can feel him laying on top her; distress due to the recent events and current placement in SHU; irritability; hypervigilance.

She reports experiencing sadness due to her current housing status and inability to regularly communicate with her family.

She has a history of labile mood for which she has been diagnosed with Bipolar Disorder and Depressive Disorder, NOS by Dr. Newland, Clinical Director. It appears these diagnoses originate from 2012. A historical diagnosis of Schizophrenia also appears in BEMR, but is listed as resolved.

### Diagnostic Reconciliation

This writer will contact Dr. Newland to discuss the present diagnosis of Bipolar Disorder to determine if this accurately reflects IM SHORTER's presentation at this time.

### Diagnostic Formulation

IM SHORTER's presentation in the wake of her recent trauma does not meet criteria for a specific trauma- or stressor-related disorder; therefore, this writer is providing a diagnosis of Other Specified Trauma- and Stressor-related Disorder. This writer supports maintaining diagnoses of Depressive Disorder, Not Elsewhere Classified and Transgender, Validated Male to Female. IM SHORTER does not appear to meet diagnostic criteria for Gender Dysphoria.

### Care Level Formulation

IM SHORTER denied any history of suicide attempts in the past 5 years. She reportedly attempted suicide 10+ years ago. She has a history of treatment for anxiety, depression, Schizoaffective Disorder, Bipolar Disorder and Gender Dysphoria. She reportedly believes mental health issues originated from his denial of his sexual identity throughout her life. At this time IM SHORTER meets criteria for other Transgender, validated male to female (per Health Services), Bipolar Disorder (per Health Services--this diagnosis will be discussed and possibly reconciled), Specified trauma- and stressor-related disorder (per this writer), and Depressive Disorder NOS (per Health Services). She is currently prescribed Sertraline, self-carry. Due to the aforementioned diagnoses, history and current request for services, IM SHORTER's care level has been upgraded to Care2-MH.

IM SHORTER will be monitored at least monthly in accordance with Care 2-MH policy. Frequency may increase due to presenting problems, symptoms, and/or clinician's judgment. IM SHORTER was reminded how he may contact Psychology Services in the event of an emergency.

**Diagnosis:**

Axis I: Other Specified Trauma- And Stressor-Related Disorder, F43.8 - Current, Temporary/Acute, Initial

Completed by Rehwinkel, Anna PsyD Staff Psychologist on 11/03/2015 10:47

# Bureau of Prisons
# Psychology Services
## Clinical Intervention - Clinical Contact

**\*\*SENSITIVE BUT UNCLASSIFIED\*\***

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | Reg #: | 21344-017 |
| Date of Birth: | 06/21/1978 | Sex: | M | Facility: FTD | Unit Team: | UNIT 6 |
| Date: | 10/22/2015 12:28 | Provider: | Rehwinkel, Anna PsyD Staff | | | |

### Focus of Session

IM SHORTER was seen on this date in response to a request from S. Marantz, PsyD, Chief Psychologist. Dr. Marantz requested that this writer meet with IM SHORTER to ask her how she would feel being celled in a 12-man cell on the East and to offer the Burlington County CONTACT sexual assault hotline again in an attempt to provide additional support in the wake of her reported sexual assault. This session was conducted in a private office located in SHU.

### Subjective/Objective Presentation

IM SHORTER presented alert and oriented in all spheres. Her mood appeared agitated and affect was congruent. She maintained strong eye contact and her rate and tone of speech were within normal limits. IM SHORTER maintained strong eye contact and her rate and tone of speech were within normal limits. Her thought process was linear and coherent. IM SHORTER denied recent or present thoughts of suicide or homicide. IM SHORTER reported she is experiencing intrusive memories of her reported sexual assault. "I am reliving that every day. There is nothing to do, I can't busy myself. I can still smell his breath on me, can feel a man on top of me," she explained. She went on to explain that her current housing status is exacerbating her post-trauma response due to her lack of control. "Can't control of lights, not in control of anything and relieving situations," she said.

IM SHORTER reported she is agreeable to living in a 12 man room if it means she can get out of SHU. She wants to be able to regularly access means of communication so she can contact her family. She declined contacting the victim advocate because she already did so and it would be "repetitious." She indicated she wants to talk to her family for support, not an advocate again.

### Intervention(s)

Supportive counseling was provided. This writer provided IM SHORTER with the Self-Management Workbook for her to work on in her cell. She was informed that this writer would review her record to determine if her mental health care level would be increase. Regardless, she was reminded how to request Psychology Services for future contact. She indicated she agreed to contact Psychology Services for a follow-up appointment, if interested.

### Progress/Plan

This writer will forward this information to S. Marantz, PsyD, Chief Psychologist, as requested. IM SHORTER will continue to be seen on an as needed basis unless, after a review of record, it is determined that a care level increase is warranted.

Completed by Rehwinkel, Anna PsyD Staff Psychologist on 11/03/2015 11:26

EXHIBIT J

C. Shorter
Register No. 21344-017

This is to inform you the investigation initiated October 14, 2015
has concluded and determined the allegations to be unsubstantiated.


_____        10-29-15
M. Bittner, Lieutenant                  Date


_____        10-29-15
C. Shorter, Reg. No 21344-017           Date


_____        10-29-15
Witness                                 Date

# Bureau of Prisons
# Psychology Services
# General Administrative Note

**SENSITIVE BUT UNCLASSIFIED**

| | | | | | | Reg #: | 21344-017 |
|---|---|---|---|---|---|---|---|
| Inmate Name: | SHORTER, CHRISTOPHER LAMONT | | | | | | |
| Date of Birth: | 06/21/1978 | Sex: | M | Facility: FTD | | Unit Team: UNIT 6 | |
| Date: | 11/02/2015 10:17 | Provider: | Wu, Claire PsyD Staff | | | | |

## Comments

IM SHORTER requested to speak with this writer during routine SHU rounds on this date. Overall mood was angry and frustrated. She demanded to be put in contact with the Chief Psychologist to discuss what she perceives to be chronic mistreatment and lack of adherence to policy by staff members. Specifically, IM does not believe she should be in the SHU and insisted she is okay to go to the East Compound. She also verbalized ongoing symptoms of traumatic re-experiencing of her recent sexual assault. This writer was able to verbally de-escalate the IM and she was informed that this writer will see her for a private clinical contact session later this week. She appeared agreeable to this intervention.

Completed by Wu, Claire PsyD Staff Psychologist on 11/02/2015 10:23

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br>FEDERAL BUREAU OF PRISONS, NORTHEAST REGIONAL OFFICE<br>TORT DIVISION<br>2nd & CHESTNUT ST.<br>US CUSTOMS HOUSE 7th FLOOR<br>PHILA, PA 19106 | 2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.)* *(Number, street, city, State and Zip Code)*<br>CHRISTOPHER SHORTER #21344-017<br>FEDERAL CORRECTIONAL INSTITUTION MIAMI<br>PO BOX 779800<br>MIAMI, FL 33177 |
|---|---|

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME *(A.M. or P.M.)* |
|---|---|---|---|---|
| ☐ MILITARY ☐ CIVILIAN | 6/21/1978 | SINGLE | OCTOBER 14, 2015, THURSDAY | 1:45 AM |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

This claim arise out of the Bureau of Prisons failure to protect me as well as many other negligent, wrongful acts and/or omissions while acting within the scope of their employment which lead to me being sexually assaulted on 10/14/2015 at Fort Dix FCI/West Unit.

I was unconstitutionally, discriminatively, and unlawfully incarcerated under conditions that posed a substantial risk of serious harm which lead to me being sexually assaulted. I allege and support my allegations with the attached EXHIBITS A-S & 1-9, that Fort Dix Staff was aware of a serious risk of harm, however acted with an attitude of deliberate indifference to that excessive risk to my safety.

I've exhausted my administrative remedies in several forums. (Please see attached Remedy Id# 857082, which combine several different departments within Fort Dix FCI/West Unit and the Bureau of Prisons & Remedy Id# 860656, which dealt with the failures of DSCC)

Specifically, here are the facts of the negligent, wrongful acts and/or omissions which lead to me being sexually assaulted:          ----------CONTINUED----------

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

SEXUAL ASSAULT, CUT (7) times during sexual assault. Bureau of Prisons Staff failed to protect and other violations. Detailed in basis of claim.

| 11. | WITNESSES |
|---|---|
| **NAME** | **ADDRESS** *(Number, street, city, State, and Zip Code)* |
| All Bureau of Prisons Staff listed in basis of claim and remedy Id # 857082 & 860656. (Please see attached) | Bureau of Prisons Central Office<br>Bureau of Prisons Staff at DSCC<br>Fort Dix FCI/ West Unit Staff |

| 12. *(See instructions on reverse)* | | AMOUNT OF CLAIM *(In dollars)* | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* | |
| N/A | $100,000,000.00<br>One Hundred Million Dollars | N/A | $100,000,000.00<br>One Hundred Millions Dollars | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| | N/A | 11 7 2016 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)* |

95-109<br>*Previous editions not usable.*<br>Designed using Perform Pro, WHS/DIOR, Jun 98

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85) (EG)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2

* On 6/16/2015, I arrived at Fort Dix FCI/West Unit. I had previously been diagnosed with GENDER DYSPHORIA prior to being housed at Fort Dix FCI, therefore I already had a treatment plan in operation. I was housed in building 5841, in a (12) man room with (11) men. Fort Dix Staff was aware that I was coming to that institution and that I am a TRANSGENDER inmate, however made no reasonable housing accommodations to ensure my safety.

* On 6/22/2015, the attached EXHIBIT 1 will show that an Intake Screening was taken which placed me "at risk" for sexual victimization, whereas all departments at Fort Dix FCI/West Unit was notified.
* On 7/7/2015, I had a meeting with Unit Manager Byrd and Counselor Hamel, per a previous meeting that I had with the Psychology Department about my feeling of being unsafe housed with (11) men. I wear female undergarments, (i.e. bra & panties), however in such setting I had no privacy and had to sleep fully clothed in a room with no air conditioning to conceal my undergarments. Unit Manager Byrd, told me he was sent by the Warden to talk directly to me about my concerns. I expressed my concern of being housed in a (2) man cell with a screened cell mate to at least attempt to alleviate my risk of harm. I expressed tht the Program Statement 5324.12, "Sexually Abusive Behavior Prevention and Intervention", supported my position because I was already a victim of a PREA violation at the hands of staff at another institution. I told them that per (PS) 5324.12§115.41(a), (d)(7), (8), (9), I was "at risk" for sexual victimization. Counselor Hamel, objected to me being housed in a (2) man cell, because he said that I had not been at the institution long enough. The length of time I was at the institution was the only concern of Counselor Hamel. My safety was not Counselor Hamel's concern.
* On 7/10/2015, I was moved into a (2) man cell, with a Muslims Inmate Howard Sanders. Cell 207 is located on the Second Floor of building 5841 and is the last cell on the hallway. It is also the farthest cell from the Officer's station which is located on the first flooe. In prison settings customs Muslims inmates per their Islamic Religion do not associate with Homosexuals or Transgender inmates and is certainly not housed with them with out it being a problem for the Homosexual or Transgender inmate. This action endangered my health and safety, however through methods of my own I was able to avoid conflict with the Muslims community.
* On 7/13/2015, the attached EXHIBIT 2 will clearly show that I reported to Psychology services and expressed concerns about comments inmates had been making about my nipples. I requested undergarments to keep them from showing. I also expressed being very uncomfortable being housed at Fort Dix FCI.
* On 8/11/2015, Muslims Inmate Howard Sanders was moved out of cell 207 with me. Counselor Hamel moved a Sex Offender in the cell with me.
* On 8/14/2015, Please see attached EXHIBIT A, Informal Grievance and Personal Notice to Warden Hollingsworth for not properly training Counselor Hamel about housing decisions made about me---A TRANSGENDER INMATE.
* On 8/18/2015, Please see attached EXHIBIT B, Request to Transfer to Talladega FCI. I personally gave this request to Unit Manager Byrd, who forwarded it to Associate Warden Dynan and Warden Hollingsworth. I personally also gave this request to the Psychology Department, specifically Dr. Rehwhinkle who in turn talked to Dr. Marantz while I waited. Dr. Marantz in turn talked to Associate Warden Hazzlewood about getting my transfer approved.
* On 8/18/2015, the attached EXHIBIT 3 will clearly show that I reported to Psychology Services and expressed concern that I was being placed "at risk" of victimization by Fort Dix Staff.
* 8/21/2015, the attached EXHIBIT 4 will show that I was called to the Psychology Department where Dr. Rehwhinkle was instructed by Dr. Marantz to tell me that she agreed with my transfer request and was in the process of getting the transfer approved. Dr. Rehwhinkle was also instructed to tell me that I would not be getting another cell mate as long as I was housed at Fort Dix FCI, however I remained housed in cell 207 on the Second Floor. The farthest cell away from the Officer's station by myself.
*8/24/2015, Please see attached EXHIBIT C, Request for Transfer to Talladega FCI Part 2.
* 9/4/2015, Associate Warden Hazzlewood and Dr. Marantz had a meeting via teleconference with the GENDEF DYSPHORIA COMMITTEE, which is locted at the Bureau of Prisons Central Office, to get authority to transfer me to a safer institution.
* 9/5/2015, Please see attached EXHIBIT D, Addendum 3, Request for Transfer with Program Statement 5100.08 authority.
* 9/10/2015, Please see attached EXHIBIT E, Notice of Filing for Preliminary Declaratory, Injunctive Relief and a Temporary restraining order.
* 9/11/2015, the attached EXHIBIT 5, will clearly show my concern with being transferred to a low custody institution without secure housing.
* 9/21/2015, Please see attached EXHIBIT F, Request for Transfer, form 409, where the staff at Fort Dix requested a transfer for me because they could not protect me.
* 9/22/2015, Please see attached EXHIBIT G, Addendum 4, Request for Transfer Revised.
* 10/5/2015, Please see attached EXHIBIT H, Memo from (AW) Hazzlewood to the inmate population about safety concerns.
* 10/8/2015, Please see attached EXHIBIT I, Memo for (AW) Hazzlewood to the inmate population about safety concerns.
* 10/14/2015, at approximately 1:45am while asleep in my assigned cell 207, I woke up with a sharp object cutting me on my neck. Inmate Michael Garcia #40236-424, sexually assaulted me. Inmate Michael Garcia was wearing a gray hood made into a ski mask however after I got over the shock of the situation I knew who he was. During the sexual assault Inmate Michael Garcia cut me (7) times with a sharp object. After the assault was over I ran downstairs to the Officer's station and reported being sexually assaulted. I was seen by a Physician from Health Services, however he did not do a rape kit, collect DNA or do a Forensic Medical Exam. neither did he refer me off-site for such evidence preservation examination. I was placed in the (SHU), involuntary segregation protective custody.
* 10/14/2015, the attached EXHIBIT 6, will show the Clinical Encounter performed by Dr. Carl Sceusa/MD, after my sexual assault.
* 10/14/2015, the attached EXHIBIT 7, will show the Sexual Abuse Intervention Assessment completed by Psychology Services.
* 10/21/2015, I was interviewed by (SIS) Lt. Bittner about the sexual assault some (7) full days after my sexual assault. He conducted the interview in a non-chalant way as if he really didn't want to do it and he wasn't very concerned about me being sexually assaulted. He only conducted the interview (7) full days after my sexual assault as a formality.
* 10/22/2015, the attached EXHIBIT 8, will show the Diagnostic and Care Level Formulation completed by Psychology Services.

* 10/29/2015, Please see attached EXHIBIT J, Memo to me informing me that (SIS) Lt. Bittner had determined that my sexual assault allegations was unsubstantiated.
* 11/02/2015, the attached EXHIBIT 9, will show a General Administrative Note Submitted by Psychology Services.
* 11/03/2015, I was transferred from Fort Dix FCI.

I used every Program Statement policy and constitutional amendment to get Fort Dix Staff to render me the protection that I deserved and needed until I was transferred from such unsafe facility however to no avail. The submitting of a transfer request by Fort Dix Staff did not alleviate the immediate dangers that I faced while I was housed there. Fort Dix Staff was aware that I was subject to a substantial risk of imminent sexual abuse and did not take the slightest action to protect me. Fort Dix Staff refused to move me closer to the officer's station which was located on the First Floor of building 5841 where I was housed and would not allow me to put a makeshift locking device on my door. Fort Dix Staff did not make reasonable accommodations to ensure my safety.

If failing to protect me from the sexual assault I suffered wasn't enough, I submit unto you that Fort Dix Staff did not conduct my sexual abuse investigation promptly, thoroughly, fairly or impartially. Fort Dix Staff was told by Central Office that they would not give the authority to transfer me until after the sexual abuse investigation was completed therefore, Fort Dix Staff made a quick, unconstitutional, discriminative and unlawful determination that my allegation was unsubstantiated just to transfer me quickly to be finally finish with the issues that comes with a TRANSGENDER inmate. I allege that the manner by which Fort Dix Staff manipulated their official duty to protect me is both shocking to the conscious of any ordinary citizen and egregiously offensive to my 1st, 4th, 5th, 8th and 14th amendments to the United States Constitution.

The dictates of (PS) 5324.12, "Sexually Abusive Behavior Prevention and Intervention", was not followed in my sexual abuse investigation and proves that Fort Dix Staff had no intention of protecting me nor holding my prepetrator Inmate Michael Garcia #40236-424 accountable for sexually assaulting me. Not only did Fort Dix Staff violate it's agency's policy but also trampled on my constitutional rights in the process. The violations are as follows:

1.) VIOLATION OF (PS) 5324.12§115.21(a), (c). (Please see attached EXHIBIT K
Fort Dix Staff did not ensure that a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence per policy was used. The clothing I was wearing when I was sexually assaulted was not perserved properly if at all to attempt to obtain Inmate Michael Garcia #40236-424 DNA and/or other forensic data. My clothing was touched by various employees and was not collected until after I was placed in the SHU. The officer that stripped me out threw my clothing into a laundry bend with other inmates dirty clothing. He did not readily retrieve my clothing after I told him that my clothing would be evidence in a PREA investigation. I was not given a forensic medical examination, on-site or off-site for medical or evidentiary purposes.

2.) VIOLATION OF (PS) 5324.12§115.34(a), (b). (Please see attached EXHIBIT L
Fort Dix Staff particularly Lt. Bittner (SIS), did not promptly collect and/or preserve my clothing for DNA and/or Forensic testing without compromising the integrity of such evidence.

3.) VIOLATION OF (PS) 5324.12§115.35(a)(2) & (b). (Please see attached EXHIBIT M
Dr. Carl Sceusa MD/CCHP did not preserve any/or all evidence of sexual abuse. He did not, neither did he refer me off-site for a medical or evidentiary forensic examination.

4.) VIOLATION OF (PS) 5324.12§115.62. (Please see attached EXHIBIT N
On 6/16/2015, I was received at Fort Dix FCI/West Unit. I was originally housed in a (12) man room with (11) men. I brought to the attention of Fort Dix Staff my substantial risk of imminent sexual danger given the fact that I am TRANSGENDER. After going back and forth with Fort Dix Staff, I was allowed to move into a (2) man cell. On 7/10/2015, I moved in cell 207 on the Second Floor of building 5841. Cell 207 is the farthest cell away from the officer's station, which is located on the first floor of building 5841. On 8/11/2015, my roommate inmate Howard Sanders was moved out only for Counselor Hamel to move a sex offender in the room with me. On 8/12/2015, the sex offender was moved, however the attached EXHIBITS A-G, will clearly show that I begin a crusade to get transferred to another institution with secure housing. I was put in for a transfer, however during the time waiting to be transferred, I was sexually assaulted. Fort Dix Staff was aware that I was subject to a substantial risk of imminent sexual abuse and did not take even the slightest action to protect me. Fort Dix Staff refused to move me closer to the officer's station which was located on the first floor and would not allow me to put a makeshift locking device on my door. Fort Dix Staff did not make any reasonable accommodations to ensure my safety.

5.) VIOLATION OF (PS) 5324.12§115.71(a) & (c). (Please see attached EXHIBIT O
Fort Dix Staff did not conduct an investigation into my sexual assault, promptly, impartially and/or thoroughly. I was sexually assaulted on 10/14/2015, at approximately 1:45am. I was half examined in medical then placed in the SHU approximately 6:05am. I was not interviewed by (SIS) Lt. Bittner until 10/21/2015, some (7) full days after my sexual assault. (SIS) Lt. Bittner did not conduct my interview thoroughly, in that he failed to ask me what was my perpetrator wearing in an effort to retrieve those items for DNA and/or Forensic testing. During that interview, I clearly identified my perpetrator to (SIS) Lt. Bittner as Inmate Michael Garcia #40236-424.

6.) VIOLATION OF (PS) 5324.12§115.72. (Please see attached EXHIBIT P
The end result of my sexual abuse investigation was determined by (SIS) Lt. Bittner to be unsubstantiated. Please see attached EXHIBIT J. My perpetrator Inmate Michael Garcia #40236-424 wasnever subject to any investigations be it administrative and/or criminal prosecution, because Fort Dix Staff did not follow a uniform evidence protocol which could have maximized the potential of obtaining usable physical and/or forensic evidence. Inmate Michael Garcia #40236-424, touched all over my body, inserted his fingers and his tongue (oral sodomy) into my anus. He cut me (7) times during the sexual assault, so physical, DNA and Forensic evidence was present on my body and possibly my clothing that would have conclusively identified him as my perpetrator. Inmate Michael Garcia #40236-424, have DNA on file with the Bureau of Prison per applicable laws. The fault is Fort Dix Staff as to the reason my sexual abuse investigation was not substantiated.

8.) BASIS OF CLAIM CONTINUED

7.) <u>VIOLATION OF (PS) 5324.12§115.82(a).</u> (Please see attached EXHIBIT Q)
The perpetrator penetrated my anus with his fingers and mouth (oral sodomy). I was also cut (7) times during
the sexual assault. After making several attempts to be screened for infectious, transmissible disease(s),
Fort Dix Staff made no attempt to preform such before I was transferred. Other than receiving a Tetanus shot
on 10/16/2015, at my request, I did not receive any other prophylactic medication while housed at Fort Dix FCI.

8.) <u>PLEASE REVIEW THE ATTACHED EXHIBIT R</u>
It is my belief that it is in the best interest of the United States of America to settle this claim however
if a reasonable settlement is not reached please reveiw just a sampling of the questions that will be asked
at depositions. I have no desire to allow these actions of the government employees to go unanswered for.

9.) <u>VIOLATION OF (PS) 6031.04(42).</u> (Please see attached EXHIBIT S)
In the Patient Care Program Statement, "Sexually Assault Prevention and Intervention clearly states, (b)"In
order not to compromise medical evidence on an inmate who reports a recent sexual assault, it is recommended
that the inmate be transported to a community facility/rape crisis center that is equipped (in accordance with
local laws) to evaluate and treat sexual assault victims. Only in institutions where extreme security concerns
exist may in-house physicians be used to provide treatment, examination, and forensic evidence gathering to
inmates who report sexual abuse/assault".

Had this policy been followed Inmate Michael Garcia #40236-424 would have been prosecuted for the crime he
committed of sexually assaulting me. Fort Dix Staff did not afford me the opportunity to get justice and is
currently further victimizing me for their failure to do their job.

     It is well settled that prison officials have a duty .... to protect prisoners from violence at the hands
of other prisoners..... Having incarcerated persons [with] demonstrated proclivit[ies] for antisocial criminal,
and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed
their access to outside aid, the government and it's officials are not free to let the state of nature take
its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the rape of one
prisoner by another serves no legitimate penological objective any more than it squares with evolving standards
of decency. <u>FARMER v. BRENNAN</u>, 511 U.S. 825, 833-34, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1994) (internal
quotation marks and citations omitted); <u>HUDSON v. PALMER</u>, 468 U.S. 517, 526-27, 104 S.Ct.

     Based on the particulars of this claim and the evidence provided as support of my claim, I simply request
($100,000,000.00) One Hundred Millions Dollars and to Never be housed in any open bay type housing unit while
I am within the Bureau of Prisons without such approval from me concerning such placement.

_____
DATE OF CLAIM

_____
SIGNATURE

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 38 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

### Complete all items - insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF

PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in Item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in Item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows: *(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden,

to  Director, Torts Branch
    Civil Division
    U.S. Department of Justice
    Washington, DC  20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC  20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| 15. Do you carry accident insurance? | Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number. | [X] No |
|---|---|---|
| N/A | | |

| 16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount |
|---|---|
| N/A | N/A |

| 18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(It is necessary that you ascertain these facts)* |
|---|
| N/A |

| 19. Do you carry public liability and property damage insurance? | Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* | [X] No |
|---|---|---|
| N/A | | |

SF 95 (Rev. 7-85) BACK



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

*U.S. Custom House*
*2nd & Chestnut Streets - 7th Floor*
*Philadelphia, PA. 19106*

November 22, 2016

Christopher Shorter, Reg. No. 21344-017
FCI Miami
P.O. Box 779800
Miami, FL  33177

Re:  Administrative Claim **Received November 14, 2016**
     Claim No. Claim No. TRT-NER-2017-00941

Dear Mr. Shorter:

This will acknowledge receipt of your administrative claim
for an alleged loss of personal property or personal injury at
FCI Fort Dix.

Under the provisions of the applicable federal statutes, we
have **six months from the date of receipt** to review, consider, and
adjudicate your claim.

All correspondence regarding this claim should be addressed
to Federal Bureau of Prisons, Northeast Regional Office, Room
701, U.S. Custom House, 2nd & Chestnut Street, Philadelphia,
Pennsylvania 19106.  If the circumstances surrounding this claim
change in any fashion, you should contact this office
immediately.   Also, should your address change, you should
contact this office in writing accordingly.

                              Sincerely,

                              Michael D. Tafelski
                              Regional Counsel



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

*Via Certified and Return Receipt Mail*

*U.S. Custom House-7th Floor*
*2nd & Chestnut Streets*
*Philadelphia, PA 19106*

April 28, 2017

Christopher Shorter, Reg. No. 21344-017
FCI Miami
P.O. Box 779800
Miami, FL 33177

    RE: Administrative Claim No. TRT-NER-2017-00941

Dear Ms. Shorter:

    Your Administrative Claim No. TRT-NER-2017-00941, properly received on November 14, 2016, has been considered for settlement as provided by the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2672, under authority delegated to me by 28 C.F.R. § 543.30. Damages are sought in the amount of $100,000,000.00 based on a personal injury claim. Specifically, you allege you were assaulted at FCI Fort Dix on October 14, 2015. You allege this assault occurred due to staff's failure to protect you.

    An investigation shows there is insufficient evidence to support the allegations of your claim. There is no evidence that you experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons employee. Accordingly, your claim is denied.

    If you are dissatisfied with this decision, you may bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this letter.

                      Sincerely,

                      Michael D. Takelski
                      Regional Counsel

cc: David E. Ortiz, Warden, FCI Fort Dix