CRAIG CARPENITO
United States Attorney
JOHN STINSON
Assistant United States Attorney
402 East State Street
Trenton, NJ 08608
Tel. (609) 858-0305
email: John.Stinson@usdoj.gov

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER SHORTER (A.K.A. – CHRISSY),  *Plaintiff,*  v.  UNITED STATES OF AMERICA, ET AL.,  *Defendants.* | CIV. NO. 19-16627(RMB)(KMW) |

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

On the Brief:

JOHN T. STINSON
Assistant United States Attorney

**MOTION RETURNABLE JANUARY 6, 2020**

# TABLE OF CONTENTS

I.  Preliminary Statement ................................................................ 1

II. Factual and Procedural Background .......................................... 2

    A.  Criminal Prosecution, Conviction & Judgment ............................. 2

    B.  The Events at Issue in Shorter's Lawsuit ................................. 3

    C.  Summary of Procedural History ............................................ 7

III. Standard of Review ................................................................ 8

    A.  Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) ........................ 8

    B.  Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) ........................ 9

    C.  Documents To Be Considered ............................................. 10

IV. Argument ............................................................................ 11

    A.  Shorter's *Bivens* Claims Should Be Dismissed Because Special Factors Counsel Hesitation Against Extending the *Bivens* Remedy to this New Context 11

    B.  In the Alternative, Shorter Fails to State a *Bivens* Claim, Entitling Defendants to Qualified Immunity and Dismissal of her Claim ......................... 21

    C.  Shorter's FTCA Claim Must Be Dismissed For Lack of Subject Matter Jurisdiction ................................................................................. 25

V.  Conclusion .......................................................................... 33

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Amaker v. Fischer,*
   No. 10-cv-0977A, 2014 WL 4772202 (W.D.N.Y. Sept. 24, 2014) ........................... 17

*Anderson v. Creighton,*
   483 U.S. 635 (1987) ........................................................................................ 22, 23

*Anderson v. United States,*
   Civ. No. 14-1411, 2015 WL 93786 (D.N.J. Jan. 7, 2015) ....................................... 30

*Arar v. Ashcroft,*
   585 F.3d 559 (2d Cir. 2009)................................................................................... 21

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................... 8, 9, 21

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................... 9

*Bell v. Wolfish,*
   441 U.S. 520 (1979) ............................................................................................. 29

*Bistrian v. Levi,*
   912 F.3d 79 (3d Cir. 2018)................................................................... 12, 16, 17

*Booth v. Churner,*
   206 F.3d 289 (3d Cir. 2000)................................................................................... 19

*Brill v. Velez,*
   No. 13-5643, 2014 WL 2926086 (D.N.J. June 27, 2014) .......................................... 9

*Calderon v. United States,*
   123 F.3d 947 (7th Cir. 1997) ................................................................................ 28

*Carter v. United States,*
   Civ. No. 14-4741, 2017 WL 3498938 (D.N.J. Aug. 15, 2017).................................. 30

*City of Pittsburgh v. West Penn Power Co.,*
   147 F.3d 256 (3d Cir.1998)................................................................................... 10

*Correctional Servs. Corp. v. Malesko,*
   534 U.S. 61 (2001) ........................................................................................ 20, 21

*D.C. v. Wesby,*
   138 S. Ct. 577 (2018) .................................................................................... 22, 23

*Davis v. Scherer,*
   468 U.S. 183 (1984) ............................................................................................. 22

*DeShaney v. Winnebago County Dep't of Soc. Servs.,*
   489 U.S. 189 (1989) ............................................................................................. 24

*Donaldson v. United States,*
   281 F. App'x 75 (3d Cir. 2008) ........................................................... 29, 30, 31, 33

*Graw v. Fantasky*,
   68 F. App'x 378 (3d Cir. 2003) ................................................................................ 24

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ....................................................................................... 21, 22

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*,
   836 F.3d 261 (3d Cir. 2016) ...................................................................................... 10

*In re Rockefeller Ctr. Props., Inc., Sec. Litig.*,
   184 F.3d 280 (3d Cir.1999) ....................................................................................... 10

*Lightfoot v. United States*,
   564 F.3d 625 (3d Cir. 2009) ...................................................................................... 10

*Long v. SEPTA*,
   903 F.3d 312 (3d Cir. 2018) ........................................................................................ 9

*Merando v. United States*,
   517 F.3d 160 (3d Cir. 2008) ................................................................................ 26, 27

*Middleton v. United States*,
   658 F. App'x 167 (3d Cir. 2016) ............................................................................... 30

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ................................................................................................... 22

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997) ........................................................................................ 9

*Mullenix v. Luna*,
   136 S. Ct. 305 (2015) ................................................................................................. 22

*Nyhuis v. Reno*,
   204 F.3d 65 (3d Cir. 2000) ........................................................................................ 16

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ................................................................................................... 22

*Sanders v. Downs*,
   420 F. App'x 175 (3d Cir. 2011) ............................................................................... 25

*Sargent v. Hollingsworth*,
   Civ. No. 13-4918, 2014 WL 7177283 (D.N.J. Dec. 15, 2014) .................................. 30

*Saucier v. Katz*,
   533 U.S. 194 (2001) ............................................................................................ 22, 23

*Siegert v. Gilley*,
   500 U.S. 226 (1991) ................................................................................................... 22

*Spady v. Bethlehem Area Sch. Dist.*,
   800 F.3d 633 (3d Cir. 2015) ................................................................................ 23, 24

*Symczyk v. Genesis Healthcare Corp.*,
   656 F.3d 189 (3d Cir. 2011) ........................................................................................ 9

*Thrower v. United States,*
  528 F. App'x 108 (3d Cir. 2013) ................................................................ 29, 30, 33

*Transamerica Mortg. Advis., Inc. v. Lewis,*
  444 U.S. 11 (1979) ................................................................................. 17

*United States v. Gaubert,*
  499 U.S. 315 (1991) ............................................................................. 27, 28

*United States v. Muniz,*
  374 U.S. 150 (1963) ................................................................................. 26

*United States v. S.A. Empresa de Viaco Aerea Rio Grandense (Varig Airlines),*
  467 U.S. 797 (1985) ............................................................................. 26, 31

*Wilkie v. Robbins,*
  551 U.S. 537 (2007) ................................................................................. 12

*Woodford v. Ngo,*
  548 U.S. 81 (2006) ................................................................................. 19

*Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017) ......................................................................... *passim*

## Statutes

18 U.S.C. § 3621(b) ....................................................................................... 28
18 U.S.C. § 4042(a) ................................................................................. 28, 29
28 U.S.C. § 2255 ............................................................................................ 3
28 U.S.C. § 2680(a) ............................................................................. 26, 27, 33
28 U.S.C. § 1915 ............................................................................................ 8
34 U.S.C. § 30302 ................................................................................. 13, 17
34 U.S.C. § 30307 ........................................................................................ 13
34 U.S.C. §§ 30301-30309 .............................................................................. 13

## Rules

Fed. R. Civ. P. 12(b)(1) .................................................................................. 9
Fed. R. Civ. P. 12(b)(6) ........................................................................ 8, 9, 10
Fed. R. Civ. P. 12(h)(3) ................................................................................ 10

## Regulations

28 C.F.R. § 115.51 ....................................................................................... 15
28 C.F.R. § 115.71-115.73 ....................................................................... 13, 14
28 C.F.R. § 115.76 ....................................................................................... 14
28 C.F.R. § 115.76-115.78 ........................................................................... 14
28 C.F.R. § 542.15(a) ................................................................................... 16
28 C.F.R. § 541.20 ....................................................................................... 32
28 C.F.R. §§ 542.10-542.19 ........................................................................... 15

## I.   <u>Preliminary Statement</u>

Plaintiff Chrissy Shorter was previously incarcerated at the Federal Correctional Institution at Fort Dix ("FCI Fort Dix").  In October 2017, she filed a civil rights complaint against ten prison officials at FCI Fort Dix, and an FTCA claim against the United States.  After being granted permission to proceed *in forma pauperis*, Plaintiff filed an amended complaint.  In it, she alleged that the defendants violated her Fifth and Eighth Amendment constitutional rights by failing to properly investigate her sexual assault, which precluded her from holding her assailant accountable, and failing to protect her from that assault.  She also alleged that employees of the United States were negligent in their decision-making regarding her housing and security classification, and that their negligence resulted in her sexual assault.

The Court screened Plaintiff's amended complaint and, on January 22, 2019, permitted Plaintiff's Fifth Amendment claim of failure to investigate to proceed against three named defendants at FCI Fort Dix, Dr. Carl Sceusa, Lt. Michael Bittner, and Doe PREA Compliance Manager (with the United States, the "Defendants"), reserving the determination of whether such a *Bivens* cause of action should be implied in light of the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).  The Court also permitted Plaintiff's negligence claim to proceed. The other claims and parties were dismissed.  Having finally been served, Defendants now move to dismiss the remaining claims.  The Fifth Amendment claim at issue here is a new context, and special factors counsel hesitation against implying a *Bivens* remedy into this new context.  As for the FTCA claim, the United

States has not waived its sovereign immunity for claims that implicate

discretionary functions; the negligence claim that Plaintiff seeks to pursue falls

squarely in that exception to the FTCA's general waiver of sovereign immunity.

## II.   **Factual and Procedural Background**

### A.   **Criminal Prosecution, Conviction & Judgment**

On February 7, 2012, a Grand Jury indicted Ms. Shorter and a co-conspirator

on 55 criminal counts arising from a conspiracy to defraud the United States of

America.  *See* Indictment, *United States v. Shorter*, 4:12-cr-00011 (N.D. Fla. Feb. 8,

2012) (Docket No. 1).  Shorter had established a "tax services" firm through which

she submitted fraudulent tax returns to the Internal Revenue Service in the names

of scores of individuals incarcerated by the Florida Department of Corrections.  *See*

Statement of Facts, *United States v. Shorter*, 4:12-cr-00011 (N.D. Fla. Mar. 29,

2012) (Docket No. 35).  Through this scheme, Shorter and her co-conspirators

claimed almost $1.4 million in tax refunds from the IRS.  *Id*.

On March 29, 2012, Shorter signed a detailed plea agreement wherein she

agreed to plead guilty to counts 1, 2-14, 27-33, 34-44, and 52-55 of the Indictment

and to pay restitution to the IRS.  *See* Plea Agreement, *United States v. Shorter*,

4:12-cr-00011 (N.D. Fla. Mar. 29, 2012) (Docket No. 36).  In exchange for this plea,

the United States dropped the remaining charges against Shorter.  *Id*.  The

sentencing court accepted Shorter's plea and sentenced her to a term of 96 months

of imprisonment, ordered her to pay $153,062 in restitution, and placed other

conditions upon her.  *See* Judgment in a Criminal Case, *United States v. Shorter*,

4:12-cr-00011 (N.D. Fla. July 31, 2012) (Docket No. 62).  Shorter was delivered to

FCI Jessup in Georgia, a Federal Bureau of Prisons ("BOP") facility for male inmates. *See* "Judgment Returned Executed," *United States v. Shorter*, 4:12-cr-00011 (N.D. Fla. Sep. 14, 2012) (Docket No. 67); FCI Jessup webpage, https://www.bop.gov/locations/institutions/jes/ (last visited 11/1/2019) (stating "Inmate Gender:  Male Offenders").

Among other post-conviction filings, on March 5, 2013, Shorter filed a motion pursuant to 28 U.S.C. § 2255 complaining of "prosecutorial fraud" and ineffective assistance of counsel.  *See* Motion under 28 U.S.C. § 2255 with Memorandum of Law and Declaration, *United States v. Shorter*, 4:12-cr-00011 (N.D. Fla. Mar. 5, 2013) (Docket Nos. 69-71).  The sentencing court denied this motion.  *See* Order Denying the § 2255 Motion, *United States v. Shorter*, 4:12-cr-00011 (N.D. Fla. Aug. 6, 2015) (Docket No. 85).

Ms. Shorter completed her sentence and was released from BOP custody on February 14, 2019.

**B.    The Events at Issue in Shorter's Lawsuit**

Shorter is transgender.  ECF No. 7-1 (hereafter, "Amended Complaint" or "Am. Compl.") at 13, PageID 85.[1]  During her incarceration, BOP medical staff diagnosed her with gender dysphoria and provided a treatment plan.  *Id.*

_____

[1] The Amended Complaint attached to Ms. Shorter's Motion to Amend consists of 21 pages, plus exhibits.  *See* Mot. to Amend, ECF No. 7.  The filed version of this Amended Complaint, ECF No. 12, does not include the exhibits. Because the exhibits are referenced in the Amended Complaint, all pleading citations in this document reference ECF No. 7.  Some pages of the pleading are numbered and others are not.  Unless otherwise indicated, page numbers in this brief refer to the page of the filed PDF of the Amended Complaint and its exhibits, available on the docket.  Defendants accept the allegations in the Amended

On June 16, 2015, BOP transferred Shorter to FCI Fort Dix in New Jersey. *Id*. BOP placed her in a 12-bed room with 11 men. *Id*. On June 22, 2015, BOP personnel conducted an intake screening and concluded that Shorter was at risk for sexual victimization. *Id*. On July 7, 2015, BOP staff met with Shorter to discuss her safety concerns. *Id*. She asked to be placed in a two-person cell with a "screened" cellmate. *Id*.

On July 10, 2015, BOP moved Shorter into a 2-person cell, as requested. *Id*. at 14, PageID 86. However, Shorter alleges that the cell lacked any locking devices and was distant from the Officer's Station. *Id*. On July 13, 2015, Shorter reported further safety concerns to BOP Psychology Services, noting, *inter alia*, that she felt "very uncomfortable being housed at Fort Dix FCI." *Id*. On August 14, 2015, Shorter submitted a written grievance complaining that BOP was housing her in a two-person cell with male inmates, one of whom she alleges was a sex offender. *Id*.

On August 17, 2015, Shorter submitted a request for transfer to a facility with more secure housing, specifically, FCI Talladega. *Id*.; *see also* Ex. B, Aug. 17, 2015 Transfer Request Email, at 27-35, PageID 99-107. On August 18, 2015, she also informed BOP Psychological Services of her ongoing concerns of sexual victimization. Am Compl. at 14, PageID 86. On August 21, 2015, staff at BOP Psychological Services informed Shorter that (1) they were pursuing approval for her transfer request; and (2) she would be housed at FCI Ft. Dix without another

---

Complaint as true for purposes of this motion only, and reserve the right to contest each and every allegation as necessary to defend their interests.

inmate until the transfer was complete.  *Id*.  BOP staff informed her that she would

not be permitted to place a "makeshift locking device" on the cell door.  *Id*.

In early September, Shorter and BOP staff took various steps to complete the

transfer process.  *Id*. at 14-15, PageID 86-87.  On September 10, 2015, Shorter

submitted a written notice that she intended to seek injunctive relief in court if

BOP did not transfer her to USP Yazoo City.  *Id*. at 15, PageID 87; *see also* Ex. E,

Sept. 10, 2015 Email Notice, at 48-49, PageID 120-21.  On September 21, 2015, staff

at BOP submitted a Form 409 Request to Transfer, urging that Shorter be placed in

any "low security facility in the Southwest Region," and explaining that the

receiving facility must be "commensurate with his security needs and closer to his

release residence" in Florida.  *Id*. at 15; *see also* Ex. F, Sept. 21, 2015 Request for

Transfer, at 50, PageID 122.  In response, Shorter wrote BOP staff to rescind her

prior request for placement at USP Yazoo City and to request placement at FCI

Yazoo City instead because it is a "medium Security facility with secure housing."

*Id*. at 15; *see also* Ex. G, Sept. 23, 2015 Email Request, at 51, PageID 123.  In this

same writing, Shorter stated in part that "I understand that my transfer has been

put in and I understand that things is out of your hands[.]"  *Id*.

On October 5 and 8, 2015, BOP staff at FCI Ft. Dix posted two different

notices regarding heightened security concerns at the facility.  *Id*. at 15; *see also*

Exs. H, I, at 52-52, PageID 124-25.  These notices did not indicate any increased

risk of sexual assault, but instead generally referred to an increase in attacks on

staff and inmates.

On October 14, 2015, at approximately 1:45 a.m., Shorter alleges she "woke up with a sharp object cutting me on my neck" by an individual "wearing a gray hood made into a ski mask."[2]  *Id*. at 15.  She further alleges that the person cut her seven times and sexually assaulted her with his mouth and finger.  *Id*. at 15, 20, PageID 87, 92.  Shorter immediately reported the assault and was examined by defendant Dr. Sceusa, "however, he did not do a Rape Kit, Collect DNA or do a Forensic Medical Exam, neither did he refer me off-site for such evidence presentation examination."  *Id*. at 15, PageID 87.  Dr. Sceusa made a written record of his findings.  Ex. 6, Oct. 14, 2015 Clinical Encounter, at 88-90, PageID 160-62.  At 8:30 a.m. that morning, BOP Psychological Services staff conducted a sexual abuse intervention assessment with Shorter.  Ex. 7, Oct. 14, 2015 Psych. Note, at 91-92, PageID 163-64.  Shorter was also offered, and accepted, the opportunity to call Sexual Assault Services in Burlington County; an advocate from that group called back and spoke to Shorter that morning around 9:30 a.m.  *Id*.

BOP immediately placed Shorter in protective custody in the Special Housing Unit at FCI Ft. Dix.  Am. Compl. at 15, PageID 87.  That same day, Defendant Lieutenant Bittner initiated an investigation into the assault.  Ex. J, Oct. 29, 2015 Conclusion, at 93, PageID 165.  As part of this investigation, Lieutenant Bittner interviewed Shorter on October 21, 2015.  Am. Compl. at 15, PageID 87.  During that interview, Shorter identified the individual she believed had assaulted her.  *Id*.

_____

[2] Shorter identifies her alleged assailant by name and states that he was another inmate at FCI Fort Dix.

6

at Page 20, PageID 92.  On October 29, 2015, Lieutenant Bittner issued Shorter written notice that the investigation was concluded and Shorter's allegations were "unsubstantiated."  Ex. J, Oct. 29, 2015 Conclusion, at 93, PageID 165.

On November 3, 2015, the BOP transferred Shorter from FCI Ft. Dix.  Am. Compl. at 16, PageID 88.

### C.    Summary of Procedural History

In March 2016, Shorter submitted a written grievance to BOP complaining that staff conducted an inadequate investigation regarding her sexual assault allegations.  *See* Admin. Rem., at 55-58, PageID 127-130.  She requested "a full, fair and impartial investigation by" the Office of the Inspector General, the Office of Internal Affairs, the Office of Professional Responsibility and the Office of Government Ethics/Bureau Ethics Officer regarding violations of BOP policy and her constitutional rights.  *Id*.  Dissatisfied with the response to her grievance, Shorter appealed her complaints to the Regional Office and Central Office, thereby exhausting her administrative remedies.[3]

On November 7, 2016, Shorter submitted an SF-95 "Claim for Damage, Injury, or Death" to the BOP.  *See* Standard Form 95, at 118-22, PageID 190-94 (hereafter, the "SF-95").  In this tort claim, she demanded $100 million on various grounds including failure to protect and alleged violations of BOP policies.  BOP denied this claim on April 28, 2017.

---

[3] Shorter also submitted and exhausted related grievances arising from the incidents at FCI Ft. Dix.  She attaches various of these records to her Amended Complaint.

Shorter filed her original Complaint initiating this lawsuit on October 23, 2017.  ECF No. 1.  On May 15, 2018, the Court granted her application to proceed *in forma pauperis*.  ECF No. 6.  On June 5, 2018, Shorter filed a motion to amend her complaint with a proposed Amended Complaint and exhibits attached.  ECF No. 7.  On January 22, 2019, following *sua sponte* review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court permitted Shorter to proceed on her Amended Complaint, limited to:  (1) her Fifth Amendment Due process claim against defendants Lieutenant Bittner, Dr. Sceusa, and John Doe PREA Compliance Manager for failure to investigate her sexual assault; and (2) her FTCA claim for negligence by the United States resulting in her assault by another inmate.  ECF No. 10.[4]

## III.   <u>Standard of Review</u>

Defendants move to dismiss this action both for failure to state a claim of constitutional harm, and for lack of subject matter jurisdiction because there has been no waiver of sovereign immunity.  The applicable standards of review follow.

### A.   <u>Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)</u>

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff's claims are "plausible" if the plaintiff "pleads factual content that allows

---

[4] While there were other activities with respect to this civil action, they are not pertinent to this motion and are excluded from this summary.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must present factual allegations that are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a court must accept the allegations in the complaint and all reasonable inferences that can be drawn from them as true and view them in the light most favorable to the plaintiff for purposes of a Rule 12(b)(6) motion, it "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

### B.  Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

Defendants also request dismissal of Shorter's FTCA claims pursuant to Fed. R. Civ. Proc. 12(b)(1). "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction." *Brill v. Velez*, No. 13-5643, 2014 WL 2926086, at *2 (D.N.J. June 27, 2014). "'When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.'" *Id.* (quoting *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011)).

The United States presents a "facial attack" on this Court's subject matter jurisdiction under Rule 12(b)(1), on grounds that the discretionary function exception to the FTCA excludes Plaintiff's claims from any waiver of sovereign immunity. *See Long v. SEPTA*, 903 F.3d 312, 320 (3d Cir. 2018). In considering a facial challenge to a court's jurisdiction, the court looks to plaintiff's complaint in

the same manner as in a Rule 12(b)(6) motion. *See Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

The plaintiff, as the party who has invoked federal jurisdiction, has the burden of establishing that subject matter jurisdiction exists. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *See* Fed. R. Civ. Proc. 12(h)(3).

### C.   Documents To Be Considered

The record available to this Court to consider this motion is limited as follows:

> In determining whether to grant a Federal Rule 12(b)(6) motion, district courts primarily consider the allegations in the complaint. The court is not limited to the four corners of the complaint, however. Numerous cases, as the note below reflects, have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.

5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1357 (3d ed.). *See In re Rockefeller Ctr. Props., Inc., Sec. Litig.,* 184 F.3d 280, 287 (3d Cir.1999) (concluding that a court may consider matters of public record, documents "integral to or explicitly relied upon in the complaint," or an "undisputedly authentic document"); *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 259 (3d Cir.1998) (approving the use of "numerous documents pertaining to the regulatory proceedings" in deciding a motion to dismiss).

10

Defendants rely on the allegations in Shorter's Amended Complaint, taken as true for purposes of this motion only. Defendants supplement this by reference to documents attached to Shorter's Amended Complaint and BOP policy statements referenced by Shorter, which are publicly available.

## IV.   <u>Argument</u>

Shorter's remaining claims under the Fifth Amendment and FTCA must be dismissed as a matter of law. As the Court has already found, her *Bivens* claim presents a new context; special factors counsel hesitation against extending *Bivens* into this new context. Absent such an extension, Shorter's *Bivens* claim should be dismissed. Her FTCA claim that the United States failed to protect her through the decisions of BOP staff regarding her housing and security must be dismissed. Such decisions constitute "discretionary functions," which Congress expressly exempted from the limited waiver of sovereign immunity contained in the FTCA.

### A.   <u>Shorter's *Bivens* Claims Should Be Dismissed Because Special Factors Counsel Hesitation Against Extending the *Bivens* Remedy to this New Context</u>

As summarized above, Plaintiff seeks to recover for an alleged violation of her Fifth Amendment constitutional right, here a due process claim for failure to properly investigate a sexual assault allegation in prison, a failure that impeded her ability to hold the assailant accountable. Defendants are federal employees, against whom there is no statutory cause of action for alleged constitutional violations. Instead, Plaintiff's only recourse is a *Bivens* action. Consistent with the Supreme Court's decision in *Abbasi*, however, a personal-capacity damages remedy under *Bivens* should not be implied for the harms alleged in Plaintiff's Amended

11

Complaint, and, absent a remedy, judgment should be entered for Defendants. Because the existence of a *Bivens* remedy is "antecedent to the other questions presented," the Court addresses that issue before the substantive claim. *Bistrian v. Levi*, 912 F.3d 79, 88-89 (3d Cir. 2018).

As the Court has already recognized, Plaintiff's claim presents "a new *Bivens* context subject to the analytical framework described by the Supreme Court in *Ziglar v. Abbasi* before a *Bivens* remedy may be implied." Opinion, ECF No. 9, at 11. Applying that framework, the *Bivens* damages remedy should not be extended into the new context presented by Plaintiff's claim. There are alternative processes capable of protecting the interests at stake, and additional special factors counsel against implying a cause of action in this context.

As the Third Circuit explained in its first post-*Abbasi* decision, *Vanderklok v. United States*, upon determining that a *Bivens* claim arises in a new context (as the Court has done here), "the next question the Court must ask is 'whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Vanderklok v. United States of America et al.,* 868 F.3d 189, 200 (3d Cir. 2017) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). And as the Supreme Court explained in *Abbasi*, "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863; *see also Alexander v. Ortiz*, 2018 WL 1399302 (D.N.J. Mar. 20, 2018), *appeal docketed*, No. 18-1778 (3d Cir. Apr. 13, 2018). Both Congress and BOP have established robust

alternative methods for relief that apply here.

In response to sexual victimization in the nation's prison systems, Congress passed the Prison Rape Elimination Act of 2003. *See* 34 U.S.C. §§ 30301-30309 (formerly 42 U.S.C. §§ 15601-15609) ("PREA"). Congress enacted PREA for multiple purposes, including to "establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States"; "increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape"; and "protect the Eighth Amendment rights of Federal, State, and local prisoners[.]" 34 U.S.C. § 30302(1), (6), (7).

Central to PREA's enactment was the requirement that the Attorney General of the United States develop "national standards for the detection, prevention, reduction, and punishment of prison rape," based in large measure on a comprehensive report prepared by a bipartisan special commission authorized to study the subject. 34 U.S.C. § 30307(a) (referencing section 30306(d)(3)). Congress required that these standards "shall apply to the Federal Bureau of Prisons immediately upon adoption[.]" 34 U.S.C. § 30307(b).

In 2012, the Department of Justice issued comprehensive national standards as required under PREA. *See* 28 C.F.R., Ch. I, Part 115 (the "PREA Regulations"). The PREA Regulations include standards regarding investigations of sexual assault in adult prisons. 28 C.F.R. § 115.71-115.73. The PREA Regulations also include guidance on discipline for all aspects of addressing sexual assault in adult prisons.

28 C.F.R. § 115.76-115.78.  Such discipline includes sanctions for misfeasance by BOP staff in investigating and punishing sexual assault.

Under PREA, BOP staff "shall be subject to disciplinary sanctions up to and including termination for violating agency sexual abuse or sexual harassment policies." 28 C.F.R. § 115.76(a).  In appropriate cases, violations by BOP staff "shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to any relevant licensing bodies." 28 C.F.R. § 115.76(d).  Violations of "agency sexual abuse or sexual harassment policies" would include violations of investigation standards found at 28 C.F.R. § 115.71-115.73, as well as violations of PREA-derived policies on investigations.  *See* BOP Program Statement 5324.12, Sexually Abusive Behavior Prevention and Intervention Program (hereafter, "P.S. 4324.12"), at 43-46.

With respect to reporting channels, the PREA Regulations demand of BOP, its facilities, and its staff that:

> (a) The agency shall provide multiple internal ways for inmates to privately report sexual abuse and sexual harassment, retaliation by other inmates or staff for reporting sexual abuse and sexual harassment, and staff neglect or violation of responsibilities that may have contributed to such incidents.

> (b) The agency shall also provide at least one way for inmates to report abuse or harassment to a public or private entity or office that is not part of the agency, and that is able to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials, allowing the inmate to remain anonymous upon request. Inmates detained solely for civil immigration purposes shall be provided information on how to contact relevant consular officials and relevant officials at the Department of Homeland Security.

14

28 C.F.R. § 115.51 (emphasis added).  BOP itself developed further guidance on

such reporting channels.  *See* P.S. 4324.12 at 35.  BOP provides inmates with

multiple internal reporting channels:

> Bureau inmates are encouraged to report allegations to staff at
> all levels, including local, regional and Central Office. They are
> also currently provided with avenues of internal reporting, such
> as telephonically to a specific department (such as the Special
> Investigative lieutenant), or by mail to an outside entity. Inmates
> are provided information on reporting mechanisms as noted in
> section 115.33.

P.S. 4324.12 at 35.  As part of such reporting, inmates also have recourse to the

BOP's Administrative Remedy Program, which has multiple levels of appeal.  *Id*. at

35; *see also* 28 C.F.R. §§ 542.10-542.19.  Finally, inmates can make independent,

anonymous reports to the Office of Inspector General for the U.S. Department of

Justice as required under 28 C.F.R. § 115.51(b).  P.S. 4324.12 at 35.

Accordingly, through PREA, Congress has expressly addressed the issues at

play in this litigation:  the alleged failure of BOP staff to properly investigate and

punish a reported sexual assault.  The PREA Regulations provide multiple avenues

for inmates to report staff misfeasance of the kind that Shorter alleges here.  The

PREA Regulations also create an express remedy, available to inmates like Shorter,

to seek sanctions against individual BOP staff members.  Sanctions can include a

variety of discipline, up to and including termination and a referral for criminal

prosecution.  In addition to these channels within BOP, where an inmate like

Shorter alleges that BOP staff mishandled a report of sexual assault, such inmate

can independently report the sexual assault to the Office of Inspector General,

including any allegations of staff misfeasance.  Finally, the PREA mandates a

process by which inmates, like Shorter, can report sexual assault to outside agencies.

The reporting and remedy procedures in the PREA Regulations overlap with the existing BOP Administrative Remedy Program.[5]  This is an established administrative review structure for inmates that includes appeal rights to a regional office and then to the BOP Office of General Counsel.  28 C.F.R. § 542.15(a).  A BOP inmate like Shorter can use the administrative process to complain about an incomplete investigation and any associated negligence or indifference by BOP staff in the process.  As discussed above, the inmate also could pursue disciplinary sanctions against the BOP staff in question as part of the grievance process, or seek referral of a complaint to an outside agency.

The grievance process provides the BOP with an opportunity to grant relief at the administrative level, which conserves judicial resources, and it gives BOP a chance to correct any errors in its decision-making, which fosters administrative autonomy.  *See, e.g.*, *Nyhuis v. Reno*, 204 F.3d 65, 68-69 (3d Cir. 2000).  In *Bistrian v. Levi*, the Third Circuit addressed whether the grievance process could suffice as an alternative remedial route for that plaintiff.  *Bistrian*, 912 F.3d at 92.  The Circuit rejected the viability of the process in the specific context of Bistrian's alleged injury – a constitutional claim arising out of the plaintiff having been beaten by other inmates who should not have had physical access to the plaintiff –

---

[5] Shorter pursued remedies through this avenue.  *See, e.g.,* Admin. Rem., at 55-58, PageID 127-130.

because the facts of that case made it one in which "it is damages or nothing." *Id.*

Unlike the *Bistrian* plaintiff, who complained of an isolated physical injury,

Shorter's constitutional claims here arise out of a series of investigative steps with

which Shorter takes issue – and which she asserts denied her justice because the

assailant eluded punishment.  Accordingly, the BOP grievance process (particularly

as bolstered by PREA and the PREA Regulations) offered a remedy to Plaintiff's

complaints.  Shorter complained about the course and quality of the investigation,

and BOP could have conducted a supplemental or expanded investigation as relief

to her grievance.  The fact that Shorter did not obtain the relief she wanted from

BOP (punishment of the assailant) does not entitle her to a *Bivens* remedy as a

backstop.

Crucially, Congress could have, but opted not to, provide a money damages

remedy in PREA.  Despite the grave issues it addresses, PREA did not create a

private right of action for inmate victims against inattentive prison officials.  *See*

*Amaker v. Fischer*, No. 10-cv-0977A, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24,

2014) (collecting cases), *superseded by*, *Amaker v. Fischer*, 2015 WL 1822541

(W.D.N.Y. Apr. 22, 2015).  In light of the comprehensive nature of the statute,

including (1) the express invocation by Congress of the constitutional rights of

inmates; and (2) the express goal of increasing "accountability of prison officials,"

the absence of such a remedy should be deemed deliberate.  *See* 34 U.S.C.

§ 30302(6), (7); *cf. Transamerica Mortg. Advis., Inc. v. Lewis*, 444 U.S. 11, 19-20

(1979) (refusing to read a damages remedy into a statute where no express

language supported one).  It would contradict the careful and considered legislative action of Congress for this Court to imply a new, judge-made damages remedy for a perceived violation of Fifth Amendment due process in the novel context of a failure to investigate a prison sexual assault allegation such that the assailant was punished.  *See, e.g., Silva v. Ward*, No. 16-0185, 2019 WL 4721052, at *12-16 (W.D. Wisc. Sept. 26, 2019) (citing Congress's decision not to include a private damages remedy in the PREA as an example that implying a Fifth Amendment remedy in a novel prison context would violate separation of powers principles).

Post-*Abbasi*, where one or more alternative processes were available to inmates, courts have declined to extend *Bivens*.  *See, e.g.*, *Abbasi*, 137 S. Ct. at 1862-63, 1865 (injunctive relief was an alternative process in new-context and special-factors analyses); *Vega v. United States*, 881 F.3d 1146, 1154 & n.4 (9th Cir. 2018) (no *Bivens* remedy for inmate, in part, because BOP Administrative Remedy Program "provide[d] an adequate, and more appropriate, remedy to vindicate [his] rights"); *Morgan v. Shivers*, No. 14-7921, 2018 WL 618451, at *5-6 (S.D.N.Y. Jan. 29, 2018).  The potential efficacy of the alternate process of the PREA, and the BOP administrative remedy process in the specific context of this case, similarly counsel hesitation against the *Bivens* extensions Plaintiff seeks.  *Silva v. Ward*, 2019 WL 4721052 at *12-16 (W.D. Wisc. Sept. 26, 2019); *Vanaman v. Molinar*, No. 17-222, 2018 WL 4698655, at *4 (D. Ariz. Sept. 28, 2018); *Early v. Shepherd*, No. 16-85, 2018 WL 4539230, at *15-16 (S.D. Ind. Sept. 21, 2018).

Beyond the available processes through PREA and the administrative

remedy program, additional special factors also counsel hesitation against

extending the *Bivens* remedy to the prison post-assault investigation context. Post-

*Abbasi*, the critical inquiry for the Court to undertake is to determine congressional

intent, as expressed in legislation concerning prisoner litigation. *Abbasi*, 137 S. Ct.

at 1855-56. As the Court noted in *Abbasi*, the Prison Litigation Reform Act

("PLRA"), passed in 1996, made "comprehensive changes" to the procedures that

prisoners must follow to bring claims in federal court, which were "intended to

reduce the quantity and improve the quality of prisoner suits," *Woodford v. Ngo*,

548 U.S. 81, 94 (2006), and to "eliminate unwarranted federal-court interference

with the administration of prisons." *Id.*; *see also Booth v. Churner*, 206 F.3d 289,

295 (3d Cir. 2000) ("The PLRA was plainly intended, at least in part, to reduce the

intervention of federal courts into the management of the nation's prison systems."),

*aff'd, Booth v. Churner,* 532 U.S. 731 (2001). "[L]egislative action suggesting that

Congress does not want a damages remedy is itself a factor counseling hesitation[.]"

*Abbasi*, 137 S. Ct. at 1865. The fact that Congress legislated in this area through

PREA and PLRA, and put limitations on the circumstances under which prisoners

may seek damages, suggests that Congress intended to reduce the availability of

damage remedies in the prison context. The Supreme Court, in *Abbasi*, noted that

the PLRA does not provide a cause of action against federal jailers, suggesting that

"Congress chose not to extend the *Carlson* damages remedy to cases involving other

types of prisoner mistreatment." *Id.* The fact that Congress has spoken in this field

and did not authorize a "standalone damages remedy against federal jailers" is a

special factor weighing against judicial establishment of such a remedy. *Abbasi*, 137 S. Ct. at 1865; *see, e.g.*, *Muhammad v. Gehrke*, No. 15-00334, 2018 WL 1334936, at *12 (S.D. Ind. Mar. 15, 2018) ("Congress has been active in the area of prisoners' rights, and its actions in not creating new rights do not support the creation of a new *Bivens* claim."); *Morgan*, 2018 WL 618451, at *6. ("Congress has legislated in the arena of prisoner rights, suggesting that the courts should not extend a damages remedy in this sphere."); *Buenrostro v. Fajardo*, No. 14-75, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017) (no *Bivens* remedy where inmate had "alternative remedies available to him, including the [BOP's] administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief," nor did the "actions" of Congress, which "has been active in the area of prisoner's rights" as shown by the PLRA, "support the creation of a new *Bivens* claim"), *aff'd*, 770 F. App'x 807 (9th Cir. 2019).

A related special factor the Court should consider is the "potentially enormous financial burden that agency liability would entail" in litigating *Bivens* claims. *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (citation omitted). Allowing inmates to raise *Bivens* causes of action premised on the methods by which BOP employees investigate claims of sexual assault, methods that may or may not result in the punishment of another inmate, would impose significant costs on the Government; these costs should be imposed, if at all, by Congress rather than the courts. *Abbasi*, 137 S. Ct. at 1856 ("Claims against federal officials often create substantial costs, in the form of defense and

20

indemnification.").  Such suits also place federal courts in the role of case-by-case regulator between inmates and BOP in an area where BOP has expertise in investigating reports of sexual assault, assessing facts and witness credibility, and determining the use of limited resources to prevent future harms.

Finally, *Abbasi* reaffirms that special factors are to be considered in the aggregate, not piecemeal.  137 S. Ct. at 1861-62.  The factors set out here, considered in the aggregate, counsel hesitation.  "Hesitation is a pause, not a full stop, or an abstention; and to counsel is not to require.  'Hesitation' is 'counseled' whenever thoughtful discretion would pause even to consider."  *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) (*en banc*); *see also Abbasi*, 137 S. Ct. at 1858 ("[T]o be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative.").  The special factors here, in the aggregate, are more than enough to give pause.  The Court, therefore, should not imply a *Bivens* remedy here and should dismiss Plaintiff's claim.

### B.   In the Alternative, Shorter Fails to State a *Bivens* Claim, Entitling Defendants to Qualified Immunity and Dismissal of her Claim

"In the limited settings where *Bivens* does apply," *Iqbal*, 556 U.S. at 675, any *Bivens* claim is still "subject to the defense of qualified immunity."  *Malesko*, 534 U.S. at 72.  Qualified immunity shields federal employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  There is "a two-step sequence for resolving government officials' qualified immunity claims," and the Court may address the

steps in either order. *Pearson v. Callahan*, 555 U.S. 223, 232, 237-42 (2009). It may

decide, first, "whether the facts that [Plaintiff] has alleged . . . make out a violation

of a constitutional right" by the Defendants, and, if they do, the Court "must decide

whether the right at issue was 'clearly established' at the time of defendant's

alleged misconduct." *Id.* at 232 (citations omitted). A government official "violates

clearly established law" if,

> at the time of the challenged conduct, "[t]he contours of [a] right [are]
> sufficiently clear" that *every* "reasonable official would have understood
> that *what he is doing* violates that right." We do not require a case
> directly on point, but existing precedent must have placed the statutory
> or constitutional question *beyond debate*.

*Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added). "This requires a

high 'degree of specificity.'" *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (citation

omitted). "The dispositive question is 'whether the violative nature of *particular*

conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per

curiam) (citation omitted). If "a reasonable officer *might* not have known for

certain" that the particular conduct ascribed to him "was unlawful," then he "is

immune from liability." *Abbasi*, 137 S. Ct. at 1867 (emphasis added).

Here, Defendants are entitled to qualified immunity because Plaintiff fails to

state a violation of a clearly established constitutional right. *Siegert v. Gilley*, 500

U.S. 226, 231-33 (1991); *Harlow*, 457 U.S. at 818; *see also Saucier v. Katz*, 533 U.S.

194 (2001); *Anderson v. Creighton*, 483 U.S. 635 (1987); *Mitchell v. Forsyth*, 472

U.S. 511 (1985); *Davis v. Scherer*, 468 U.S. 183, 197 (1984). In deciding whether the

constitutional right at issue was "clearly established," the Court "must first frame

the precise contours of that right," being mindful that "courts are not to define clearly established law at a high level of generality." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015). Framing an issue too broadly "convert[s] the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* at 639. Although the Third Circuit does not require plaintiffs to produce a case directly on point to demonstrate the existence of a clearly established right, "existing precedent must have placed the statutory or constitutional question beyond debate. Stated another way, a court need not find that the very action in question has previously been held unlawful, but rather may conclude that the firmly settled state of the law, established by a forceful body of precedent, would place a reasonable officer on notice that his actions obviously violated a clearly established constitutional right." *Id.* at 638; *see also Wesby*, 138 S. Ct. at 589-592 (2018) (a clearly established legal principle is dictated by controlling authority or a robust consensus of cases of persuasive authority).

The qualified immunity analysis is "fact specific," *Anderson*, 483 U.S. at 641, and "must be undertaken in light of the specific contexts of that case, not as a broad general proposition," *Saucier*, 533 U.S. at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. *Spady* is particularly instructive on how to define the contours of the right. In that case, the family of a public school student who died from a rare condition called "dry drowning" sought to hold the school district liable under the state-created-danger theory, arguing that the school

23

violated "the student's constitutional right to be free from school officials' deliberate indifference to" risks of serious bodily injury. *Spady*, 800 F.3d at 637. The Third Circuit held that the family's framing of the constitutional right at issue was too broad, and the issue was more appropriately framed as whether "a student who experiences a brief submersion under water, exits the pool and complains of chest pain, is ordered to return to the pool after a several-minute respite, then stays in the shallow end of the pool for the remainder of the class" has been denied the constitutional right to "affirmative intervention . . . to minimize the risk of secondary or dry drowning." *Spady* 800 F.3d at 638-39. The Third Circuit, choosing to define the issue in a narrow manner that considered the specific facts of the case, held that the right was not clearly established and  accepted the defendants' assertion of qualified immunity.

Consistent with the principles articulated in *Spady*, the issue here is whether Shorter had a right to an investigation that resulted in the punishment of her alleged assailant. Am. Compl. at 14-15, PageID 84-85 (alleging that, due to the faulty investigation, Shorter "was not able to hold the perpetrator . . . accountable[.]"). "[A]n allegation of failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a [constitutional] claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989)). Here, the Court already found that Shorter had not established a failure-to-protect violation of the Eighth Amendment; consequently she cannot establish her due process claim.

*Williams v. Bonds*, No. 18-13263, 2019 WL 1529961, at *5-6 (D.N.J. Apr. 9, 2019);
*see also Clark v. Doe-Walker*, No. 19-2235, 2019 WL 2491275, at *2 (E.D. Pa. June
14, 2019) (a plaintiff "has no free-standing right to an investigation, so he cannot
state a claim by challenging the quality of [the PREA officer's] investigation.").  As
to the specifics of her concern, Shorter does not have a constitutional right to "the
investigation or prosecution of another."  *Sanders v. Downs*, 420 F. App'x 175, 180
(3d Cir. 2011).

In sum, Shorter cannot establish a failure-to-investigate claim against the
named defendants, and they are thus entitled to qualified immunity.  Her *Bivens*
claim should be dismissed for this alternate reason.

## C.   Shorter's FTCA Claim Must Be Dismissed For Lack of Subject Matter Jurisdiction

Moving to her negligence claim against the United States, Shorter alleges
that she was "incarcerated under conditions that posed a substantial risk of serious
harm which lead to me being sexually assaulted."  Amend. Compl. at 11-12, PageID
83-84.[6]  She points to the manner in which she was housed and guarded at FCI Ft.
Dix as well as the speed and process with which BOP addressed her request for
transfer to another facility as grounds for this failure to protect claim.  The
decisions and actions by BOP staff outlined in Shorter's SF-95 administrative claim
and her Amended Complaint, however, were all subject to discretion as opposed to a

---

[6] As noted in the background, *supra*, Shorter's FTCA claim regarding the
investigation of her assault was already dismissed by this Court.  *See* ECF Nos. 9,
10.

firm statutory or regulatory mandate.  For that reason, Shorter's FTCA claim falls under the "discretionary function" exception to the FTCA.

In establishing the discretionary function exception, Congress mandated that the FTCA's limited waiver of sovereign immunity "shall not apply to" any claim:

> [B]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The Supreme Court observed that this exception to liability and jurisdiction "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  *United States v. S.A. Empresa de Viaco Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1985).  The Court went on to conclude that:

> Congress wished to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. By fashioning an exception for discretionary governmental functions, including regulatory activities, Congress took "steps to protect the Government from liability that would seriously handicap efficient government operations."

*Id*. at 814 (quoting *United States v. Muniz*, 374 U.S. 150, 163 (1963)).

Based on Supreme Court precedent, the Third Circuit set forth the following two-part test to determine "whether the discretionary function exception immunizes the Government from a suit based on its conduct[.]"  *See Merando v. United States*, 517 F.3d 160, 165 (3d Cir. 2008).  First, "a court must determine whether the act

26

giving rise to the alleged injury and thus the suit involves an 'element of judgment or choice.'" *Id*. at 164 (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). Second, "even if the challenged conduct involves an element of judgment, the court must determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id*. at 165 (quoting *Gaubert*, 499 U.S. at 322-23).

There are important guardrails for the two-part inquiry into whether (1) the conduct at issue involves an element of judgment or choice; and (2) such judgment is of a type Congress intended to shield from FTCA liability.  As noted on the face of 28 U.S.C. § 2680(a), it is immaterial whether there was an alleged abuse of discretion by federal employees.  Similarly, it is immaterial to the inquiry whether the actions of federal employees were negligent.  *See Gaubert*, 499 U.S. at 323 ("Actions taken in furtherance of the program were likewise protected, even if those particular actions were negligent.").  What's more, the "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."  *Id*. at 325.  Finally, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations."  *Id*. at 324.

Here, the actions at issue are BOP decisions regarding Shorter's housing and security at FCI Ft. Dix, and her transfer to another facility. Shorter alleges that these actions negligently exposed her to sexual violence. These actions, however, all involve long-acknowledged discretion based on the weighing of different policy considerations. Through the discretionary function exception, Congress mandated that federal courts are not permitted to regulate these decisions on a case-by-case basis through the medium of tort claims.

Congress delegated broad, discretionary authority to the BOP, under the direction of the Attorney General, to "designate the place of [a federal] prisoner's imprisonment." 18 U.S.C. § 3621(b). BOP may "designate any available penal or correctional facility . . . that the Bureau determines to be appropriate and suitable" after considering several factors. *Id*. BOP also "may at any time, having regard for such matters, direct the transfer of a prisoner from one penal or correctional facility to another." *Id*. Congress set forth the duties of the BOP, which include the following general requirements:

> The Bureau of Prisons, under the direction of the Attorney General, shall (1) have charge of the management and regulation of all Federal penal and correctional institutions; (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise; (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States . . .

18 U.S.C. § 4042(a). As reflected in subsection one of Section 4042(a), the specifics of how to manage and regulate federal correctional institutions are left to the discretion (and expertise) of the BOP. *See, e.g., Calderon v. United States*, 123 F.3d

28

947, 950 (7th Cir. 1997) ("While it is true that this statute sets forth a mandatory

duty of care, it does not, however, direct the manner by which the BOP must fulfill

this duty."); *Thrower v. United States*, 528 F. App'x 108, 111 (3d Cir. 2013) ("While

the BOP's conduct at issue is governed by a federal statute requiring the BOP to

provide for the 'protection' and 'safekeeping' of inmates, *see* 18 U.S.C. § 4042(a)(2),

the statute leaves the implementation of these duties to BOP officials' discretion.").

The Third Circuit has explained the application of the discretionary function

exception in the "failure to protect" context in federal prison as follows:

> No federal statute, regulation, or policy required the BOP to take
> a particular course of action to ensure Donaldson's safety from
> attacks by other inmates, including Drayton. Therefore, the first
> step of the [discretionary function] analysis is satisfied. . . .
>
> Turning to the second prong of the [discretionary function] test,
> we conclude that the judgment involved in this case—*i.e.,* how
> best to protect one inmate from the threat of attack by another—
> is of the kind that the discretionary function exception was
> designed to shield. . . . Prison administrators should be afforded
> wide-ranging deference in implementing and executing their
> policies because their discretion is needed to preserve internal
> discipline and maintain institutional security. *Bell v. Wolfish*,
> 441 U.S. 520, 547-48 (1979). . . . Supreme Court authority
> underscores the principle that prison officials have discretionary
> power over the safety of the institutions they operate. *See Rhodes
> v. Chapman*, 452 U.S. 337, 349 N. 14 (1981)[.]

*Donaldson v. United States*, 281 F. App'x 75, 77 (3d Cir. 2008) (some internal

citations and quotation marks omitted).  The plaintiff in *Donaldson* warned BOP

staff that he felt threatened by a fellow inmate, Drayton.  *Id.* at 76.  BOP placed

Donaldson in segregated housing at his request while they investigated, and later

returned him to the general population – after which Drayton attacked him.  *Id*.

Donaldson insisted that BOP "repeatedly ignored his reports of sexual harassment

29

and threats of violence" by Drayton, but the Third Circuit nevertheless found that the discretionary function exception applied to his tort claims.  *Id*. at 77.

Federal courts regularly dismiss "failure to protect" FTCA lawsuits brought by federal inmates following their injuries from assaults by other inmates on these same grounds.  *See, e.g., Thrower*, 528 F. App'x at 111 ("a judgment as to the best way to protect prisoners from attack by others 'is of the kind that the discretionary function exception was designed to shield'"); *Carter v. United States*, Civ. No. 14-4741, 2017 WL 3498938, at *6-7 (D.N.J. Aug. 15, 2017) (finding that the decision to permit inmate-accessible microwaves was discretionary); *Anderson v. United States*, Civ. No. 14-1411, 2015 WL 93786, at *2 (D.N.J. Jan. 7, 2015) (dismissing lawsuit where inmate repeatedly warned BOP staff that he faced threats of sexual assault); *Sargent v. Hollingsworth*, Civ. No. 13-4918, 2014 WL 7177283, at *3 (D.N.J. Dec. 15, 2014) (dismissing case where inmate repeatedly requested to be placed in protective custody or transferred to another facility based on credible threats from other inmates).  The one recent Third Circuit opinion that did not merely uphold a dismissal of the inmate's FTCA claim is entirely consistent with the discretionary function doctrine.  In *Middleton v. United States*, 658 F. App'x 167, 171 (3d Cir. 2016), the Third Circuit found that BOP regulations and policy statements afforded discretion, but that the specific facility, FCI Allenwood, had local orders that might apply to the claim.  The Third Circuit remanded the matter back to the district court to "consider whether the Special Instructions and Specific Post Orders are advisory or mandatory."  *Id*.  No such local orders apply in Shorter's case.

Shorter's FTCA claims here must be dismissed under the discretionary function exception on the same grounds set forth in *Donaldson*, *Anderson*, *Sargent*, and a myriad of other cases.  BOP had discretion in its decisions regarding Shorter's housing and security.  Those decisions implicate matters of policy, including, but not limited to, the allocation of limited housing and security resources at FCI Ft. Dix; the need to address scores of inmate requests, grievances, and special needs while maintaining general facilities management standards at FCI Ft. Dix; and the interaction of local conditions at FCI Ft. Dix with the demands on the BOP's nationwide correctional system of 122 institutions, including the administrative requirements to transfer inmates among such institutions.  These are the kinds of policy considerations that the discretionary function exception was designed to safeguard.  *Varig Airlines*, 467 U.S. at 814; *Donaldson*, 281 F. App'x at 77.  Even if BOP acted negligently, or abused its discretion, with respect to housing and guarding Shorter, there can be no FTCA claim because these security decisions are quintessential discretionary functions.

Shorter's various citations to BOP Policy Statements do not change this conclusion.  Central to this analysis, BOP's "Sexually Abusive Prevention and Intervention Program," enacted in support of PREA, and addressing the PREA Regulations, does not set forth binding prescriptions that BOP violated here. Instead, BOP's program statement provides "**guidelines** to address . . . prohibited and/or illegal sexually abusive behavior[.]"  PS 5324.12 ¶ 1 (emphasis added).  The

United States addresses each specific citation in Shorter's Amended Complaint as follows:

- PS 1040.04 (addressing 28 C.F.R. § 551.90).  The regulation, and BOP's further statement on it, bar discrimination by BOP staff including in administrative decisions.  Neither sets forth a specific prohibition that BOP staff violated here regarding Shorter's housing or other administrative matters.

- PS 3420.11(6).  This policy does require attentiveness and effective emergency response by BOP staff, though there are no firm benchmarks defining these values.  What's more, Shorter then states that the "negligent actions of the defendant(s) in assigning me to Cell 207 the last cell on the Second Floor without a locking device and the cell that is the farthest cell from the officer's station located on the first floor contributed to me being sexually assaulted."  These are discretionary housing and security decisions, not matters of attentiveness by individual staff.

- PS 5270.10[7] (addressing 28 C.F.R. §§ 541.20, 541.27).  BOP's statements on these regulations concerning "special housing units" do not contain firm requirements that apply here.  As Shorter herself notes, Section 541.27 states than an inmate "may be placed in administrative detention status as a protection case" in certain circumstances, including when "staff believe your safety may be serious jeopardized by placement in the general population."

- PS 5290.15 (addressing 28 C.F.R. §§ 522.20, 522.21).  The regulations, and BOP's statement on them, concern required intake screening procedures.  Shorter concedes that BOP conducted such required screenings upon her arrival at FCI Ft. Dix.  The screening requirements, however, do not contain specific prescriptions about housing and security – just that certain information about the inmate must be collected and considered in conjunction with such discretionary decisions.

- PS 5324.12 (addressing 28 C.F.R. §§ 115.41, 115.42, 115.43, 115.62).  These regulations provide (1) requirements for screening inmates to collect information regarding sexual victimization; and (2) guidance and best practices for BOP staff in housing and providing security and psychology services to such inmates.  Section 115.43 addresses protective custody and contains many "shall" statements, but these clearly concern establishing "least restrictive alternatives" for at-risk inmates.  Put another way, this

---

[7] Shorter actually references PS 5270.11, but that policy statement did not go into effect until 2016.  PS 5270.10 was the effective policy statement at the time in question here.

regulation does not direct BOP staff to protect at-risk inmates at all costs, but rather, directs BOP staff to make a concerted effort to protect at-risk inmates in a manner that does not overly restrict their movements and opportunities in a federal facility.  Likewise, Section 115.62 states that "when an inmate is subject to a substantial risk of imminent sexual abuse, [BOP] shall take immediate action to protect the inmate."  But the BOP program statement illustrates this provision by showing how much consideration and discretion BOP staff have in taking action.  *See* PS 5324.12 § 115.62 (safeguards "will vary depending on the severity of the alleged sexually abusive behavior and could include monitoring of the situation, changing housing assignments," etc.).  Again, there is no required course of action that BOP failed to follow.  The regulation and BOP's statement allow BOP staff to make choices based on experience and the particular circumstances.

- PS 5324.12 (addressing 28 C.F.R. §§ 115.21, 115.34, 115.35, 115.71, 115.72, 115.82).  Shorter points to these regulations to complain about the post-assault investigation, but this FTCA claim was dismissed by the Court.

Accordingly, the doctrines set forth by the Third Circuit in *Donaldson,* 281 F. App'x at 77 and *Thrower*, 528 F. App'x at 111 apply here.  Shorter's FTCA claim must be dismissed for lack of subject matter jurisdiction pursuant to the discretionary function exception set forth in 28 U.S.C. § 2680(a).

## V.   **Conclusion**

In conclusion, for the reasons detailed above, Defendants request that the Amended Complaint be dismissed.

CRAIG CARPENITO
United States Attorney

By:   */ s / John Stinson*
JOHN STINSON
Assistant U.S. Attorney

Dated:  December 9, 2019