<u>NOT FOR PUBLICATION</u>                                    Dkt. No. 35

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

Christopher Shorter,                :
                                    :   CIV. NO. 19-16627 (RMB-KMW)
                Plaintiff,          :
                                    :
        v.                          :        **OPINION**
                                    :
United States of America,           :
*et al.*,                           :
                                    :
                Defendants          :


APPEARANCE:

John T. Stinson, Jr.
Assistant United States Attorney
Office of the U.S. Attorney
District of New Jersey
402 East State Street, Room 430
Trenton, NJ 08608


BUMB, DISTRICT JUDGE

        This matter comes before the Court upon Defendants' Motion to

Dismiss Plaintiff's Amended Complaint. (Mot. to Dismiss, Dkt. No.

35; Am. Compl., Dkt. No. 7-1.) The motion is unopposed[1] and will

be decided on the brief, pursuant to Federal Rule of Civil

Procedure 78(b).

---

[1] Ms. Shorter completed her sentence and was released from BOP
custody on February 14, 2019. (Brief in Supp. of Defs' Mot. to
Dismiss ("Defs' Brief", Dkt. No. 35-2 at 8.)

I. BACKGROUND

A. <u>Amended Complaint</u>

Prior to arriving at the Federal Correctional Institution in Fort Dix, New Jersey ("Fort Dix") on June 6, 2015, Plaintiff was diagnosed with gender dysphoria. (Am. Compl., Dkt. No. 7-1 at 11.) Defendants knew Plaintiff was a transgender person who identified as female when she was transferred to Fort Dix.[2] Plaintiff was assigned to Building 5841, in an all-male twelve-man room. Plaintiff underwent an intake screening on June 22, 2015, and she was determined to be "at risk" for sexual victimization. All defendants were notified.

Plaintiff met with Unit Manager Byrd and Counselor Hamel on July 7, 2015 to discuss her fear for safety from sleeping in a room with eleven men. Plaintiff asked to be housed in a two-man cell with a screened inmate, referring to Bureau of Prisons ("BOP") Program Statement ("P.S.") 5324.12, Sexually Abusive Behavior Prevention and Intervention. Counselor Hamel objected to Plaintiff's housing request because Plaintiff had not been at the institution long enough to warrant placement in a two-man cell.

Three days later, on July 10, 2015, Plaintiff was moved into a two-man cell, Cell 207, which Plaintiff alleges is located on the second floor of Building 5841, the farthest cell from the

_____

[2] The Court will use the pronoun "she" to refer to Plaintiff.

Officer's Station on the first floor. (Am. Compl., Dkt. No. 7-1 at 12.) None of the cells have locks on the doors. On July 13, 2015, Plaintiff expressed concerns to staff in Psychology Services about showering around other inmates and comments inmates had been making about her body. She expressed that Fort Dix could not provide secure housing for her.

On August 11, 2015, Plaintiff alleges Counselor Hamel moved a sex offender into Plaintiff's cell. Three days later, Plaintiff wrote an informal grievance to the warden about Hamel's housing decision. On August 18, 2015, Plaintiff submitted an expedited transfer request for a higher security facility with secured housing.

On August 21, 2015, staff in the Psychology Department told Plaintiff they agreed with her transfer request and it was in the process of approval. They also told Plaintiff she would not get a new cellmate in the meantime. Plaintiff remained in Cell 207. On September 4, 2015, the Gender Dysphoria Committee met to discuss Plaintiff's transfer request.

On September 10, 2015, Plaintiff submitted a "Notice of Filing for Preliminary Declaratory, Injunctive Relief and a Temporary Restraining Order," expressing her concern over the lack of urgency in transferring her out of Fort Dix. (Id. at 13.) On September 21, 2015, Plaintiff's request for transfer was submitted to the BOP Designation and Sentence Computation Center ("DSCC"), based on the

3

Gender Dysphoria's September 4, 2015 determination that Fort Dix could not provide the same level of security as other institutions. (Am. Compl., Dkt. No. 7-1 at 13.)

On October 5, 2015, Associate Warden Robert Hazelwood placed a memo on the inmate computer system, stating: "This message serves to inform all inmates on the East and West compounds that your visiting privileges are suspended until further notice due to security concerns, including repeated assaults on staff. Do not assault staff or interfere with their ability to carry out their duties." Three days later, Hazelwood placed another memo on the inmate computer system: "Notification over the past several weeks, there has been significant increase in security issues involving staff and inmate assaults as well as hard contraband such as cell phones and weapons. Staff have responsibility to provide a safe and secure environment to all staff, visitors, and inmates."

On October 14, 2015, at approximately 1:45 am, Plaintiff awoke to a sharp object cutting her neck. She alleges Inmate Michael Garcia sexually assaulted her and cut her seven times. Although Garcia was wearing a gray hood made into a ski mask, Plaintiff alleges she knew who it was. (Am. Compl., Dkt. No. 7-1 at 13.) After the assault, Plaintiff ran to the Officer's Station and reported the alleged assault. Dr. Carl Sceusa examined Plaintiff and cleaned her wounds but did not do a rape kit, a forensic medical exam, collect DNA or refer Plaintiff for outside medical

examination. Plaintiff was placed in the Special Housing Unit ("SHU"}. (Am. Compl., Dkt. No. 7-1 at 13.)

On October 21, 2015, Lieutenant Bittner interviewed Plaintiff about the alleged sexual assault. Eight days later, Plaintiff received a memo from Bittner, informing that her sexual assault allegation was found to be unsubstantiated. Plaintiff was transferred out of Fort Dix on November 3, 2015. (Id. at 14.) Plaintiff completed her sentence and was released from BOP custody on February 14, 2019. (Defs' Brief, Dkt. No. 35-2 at 8.)

B. Procedural History

In March 2016, Plaintiff submitted a written grievance to the BOP, complaining that the BOP failed to properly conduct an investigation into her sexual assault allegations. (Def's Brief, Dkt. No. 35-2 at 12.) Plaintiff appealed her grievance to the BOP's Regional and Central Offices, thus exhausting her administrative remedies. (Id.) On November 7, 2016, Plaintiff submitted a Standard Form 95 (SF-95) "Claim for Damage, Injury, or Death" to the BOP. (Id.) The BOP denied this claim on April 28, 2017. (Id.)

On October 23, 2017, Plaintiff filed her original complaint, commencing the present lawsuit. (Compl., Dkt. No. 1.) On May 15, 2018, the Court granted Plaintiff's application to proceed in forma pauperis. (Order, Dkt. No. 6.) On June 15, 2018, Plaintiff filed a motion to amend her complaint, which, following sua sponte review, was granted by the Court, limited to: (1) her Fifth Amendment Due

process claim against Defendants Lieutenant Bittner, Dr. Sceusa, and John Doe PREA[3] Compliance Manager for failure to investigate her sexual assault; and  (2) her claim under the Federal Tort Claims Act ("FTCA") for negligence by the United States resulting in her assault by another inmate. (Am. Compl., Dkt. No. 7-1; Order, Dkt. No. 10.)

On March 25, 2019, this Court granted Plaintiff's request to transfer venue to the Northern District of Florida, where Plaintiff resided after release from BOP custody. (Opinion and Order, Dkt. Nos. 20, 21.) However, on August 13, 2019, the District Court in the Northern District of Florida granted Defendants' request to transfer venue back to this Court. (Transfer Order, Dkt. No. 30.) Defendants' motion to dismiss followed on December 9, 2019. (Mot. to Dismiss, Dkt. No. 35.) After receiving several extensions of time to file a response to the motion to dismiss, Plaintiff never did so.

II. Standard of Review

A. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

When considering a Rule 12(b)(6) motion to dismiss, courts must accept a plaintiff's allegations as true "with the important caveat that the presumption of truth attaches only to those allegations for which there is sufficient "factual matter" to render

---

[3] "PREA" refers to the Prison Rape Elimination Act of 2003, 34 U.S.C. §§ 30301-30309 (formerly 42 U.S.C. §§ 15601-15609).

them "plausible on [their] face." Schuchardt v. President of the United States, 839 F.3d 336, 347 (3d Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). The plausibility determination is context-specific and requires a reviewing court to draw on its judicial experience and common sense. Id. (citations omitted).

A plaintiff has the burden of pleading sufficient "factual matter." Id. (quoting Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 (2007) and Erickson v. Pardus, 551 U.S. 89, 93 (2007)). In reviewing the sufficiency of a complaint, a court must first identify the legal elements required to state a cognizable claim. Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011) (citing Iqbal, 129 S. Ct. at 1950, Santiago v. Warminster Tp., 629 F.3d 121, 129-30 (3d Cir. 2010)). Second, the court should identify allegations that are no more than conclusions that are not entitled to an assumption of truth. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016). Third, a court must determine whether the "well-pleaded factual allegations plausibly give rise to an entitlement to relief." Argueta, 643 F.3d at 74 (citing Iqbal, 129 S. Ct. at 1950, Santiago, 629 F.3d at 129-30.)

B. Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

Defendants present a facial attack on this Court's subject matter jurisdiction under Rule 12(b)(1), on grounds that the

7

discretionary function exception excludes Plaintiff's claims from the FTCA's waiver of sovereign immunity. Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge subject matter jurisdiction in a responsive pleading. A factual challenge to subject matter jurisdiction is more than a pleading deficiency; it is the failure to comport with jurisdictional prerequisites. U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 512 (3d Cir. 2007) (citations omitted)). When deciding a factual challenge to jurisdiction, a court can look at materials beyond the pleadings. Gould Elecs. Inc. v. United States, 220 F.3d 169, 176-77 (3d Cir. 2000)).

III. DISCUSSION

Defendants seek dismissal of the amended complaint for two reasons: (1) that special factors counsel hesitation against extending the Bivens[4] implied damages remedy for Fourth Amendment violations into this new context; and (2) that the FTCA claims are barred by the discretionary function exception. (Defs' Brief, Dkt. No. 35-2 at 16.) In support of their motion, Defendants rely on the allegations in the Amended Complaint, documents attached to the Amended Complaint and BOP Program Statements referenced in the

---

[4] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 395 (1971).

Amended Complaint, which are publicly available.[5] (Defs' Brief, Dkt. No. 35-2 at 16.)

A. <u>Bivens Claims</u>

Plaintiff seeks to recover money damages for an alleged violation of her Fifth Amendment due process right (created by PREA regulations) to investigate a sexual assault allegation in prison. Defendants are federal employees. Absent a statutory avenue for relief, Plaintiff brings a <u>Bivens</u> action.

1. <u>Standard of Law</u>

"[T]he [Supreme] Court has made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity." <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1857 (2017) (citing <u>Iqbal</u>, 556 U.S. at 675.) "When a party seeks to assert an implied cause of action under the Constitution . . . separation-of-powers principles . . . should be central to the analysis." <u>Id.</u> Congress rather than the courts should usually decide whether to impose a damages remedy. <u>Id.</u>

"[A] *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" <u>Id.</u> (citing <u>Carlson v. Green</u>, 446 U.S. 14, 18 (1980) (quoting <u>Bivens</u>, 403 U.S. at 396)). "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent

---

[5] Available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query.

congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Abbasi, 137 S. Ct. at 1857–58. Considerations that weigh against implying a Bivens damages remedy include: (1) costs and other consequences to government employees and the Government; (2) where Congress placed regulatory authority; and (3) whether "there is an alternative remedial structure . . . for protecting the [injured party's] interest." Id. (internal quotations and citations omitted).

## 2.   Defendants' Arguments

Defendants contend that, consistent with the Supreme Court's decision in Abbasi, a personal-capacity damages remedy under Bivens should not be implied for the harms alleged in Plaintiff's Amended Complaint. (Defs' Brief, Dkt. No. 35-2 at 16.) Defendants correctly note that this Court previously found that Plaintiff's constitutional claim presents "a new Bivens context, subject to the analytical framework described by the Supreme Court in Ziglar v. Abbasi…." (Id. at 17, quoting Opinion, Dkt. No. 9 at 11.) Defendants submit that there are alternative processes capable of protecting the interests at stake, and special factors counsel against implying a damages remedy in this context. (Id.)

Defendants describe alternatives capable of protecting Plaintiff's interest in having a proper PREA investigation. Congress passed PREA, for multiple purposes, including to

"establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States"; "increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape"; and to "protect the Eighth Amendment rights of Federal, State, and local prisoners[.]" (Def's Brief, Dkt. No. 35-2 at 18, quoting 34 U.S.C. § 30302(1), (6), (7)). PREA required the Attorney General of the United States to develop "national standards for the detection, prevention, reduction, and punishment of prison rape[.]" (Id., quoting 34 U.S.C. § 30307(a) (referencing section 30306(d)(3)). Congress required that these standards "shall apply to the Federal Bureau of Prisons immediately upon adoption[.]" (Id., quoting 34 U.S.C. § 30307(b)).

In 2012, the Department of Justice issued comprehensive national standards to satisfy PREA. (Id., citing 28 C.F.R., Ch. I, Part 115 (the "PREA Regulations"). The PREA regulations include standards for reporting and investigations of sexual assault in adult prisons. (Id., citing 28 C.F.R. § 115.71-115.73.) The BOP developed further guidance on reporting channels. (Id. at 19, citing BOP P.S. 5324.12 at 35.)

The PREA regulations also include guidance on discipline for all aspects of addressing sexual assault in adult prisons. (Defs' Brief, Dkt. No. 35-2 at 18-19, citing, 28 C.F.R. § 115.76-115.78.) Relevant here, discipline includes sanctions for misfeasance by BOP staff in investigating and punishing sexual assault. (Id. at

19.) Under PREA, BOP staff "shall be subject to disciplinary sanctions up to and including termination for violating agency sexual abuse or sexual harassment policies." (Defs' Brief, Dkt. NO. 35-2 at 19, quoting 28 C.F.R. § 115.76(a)). Violations of "agency sexual abuse or sexual harassment policies" include violations of investigation standards found at 28 C.F.R. § 115.71-115.73, as well as violations of PREA-derived policies on investigations. (Id., citing BOP Program Statement 5324.12 at 43-46.) The PREA regulations create an express remedy, through the Office of Inspector General and outside agencies, for prisoners to seek sanctions against individual BOP staff members for mishandling a report of sexual assault. (Id. at 20.)

In addition to the PREA regulations, prisoners may use the existing BOP Administrative Remedy Program to complain about an incomplete investigation and any associated negligence by BOP staff. (Id. at 21.) Through the BOP Administrative Remedy Program, inmates may appeal to a regional office and then to the BOP Office of General Counsel. (Id., citing 28 C.F.R. § 542.15(a)). Defendants maintain that the BOP administrative grievance program and the PREA regulations provide Plaintiff with an alternative remedy; and, therefore, the court should not imply a Bivens remedy for damages. (Id. at 22.)

Defendants set forth another factor counseling hesitation in implying a Bivens damages remedy; Congress opted not to provide a

remedy of money damages in PREA. (Defs' Brief, Dkt. No. 35-2 at 22.) PREA did not create a private right of action for inmates based on violation of PREA regulations. (Id., citing Amaker v. Fischer, No. 10-cv-0977A, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014) (collecting cases), superseded by, Amaker v. Fischer, 2015 WL 1822541 (W.D.N.Y. Apr. 22, 2015)). Thus, Defendants argue it would contradict the legislative action of Congress to imply a damages remedy for failing to comply with PREA regulations in violation of the Fifth Amendment Due Process Clause. (Id. at 23, citing e.g. Silva v. Ward, No. 16-0185, 2019 WL 4721052, at *8 (W.D. Wisc. Sept. 26, 2019) (holding that implying a Fifth Amendment remedy for PREA violations would violate separation of powers principles)).

Defendants propose two additional and related special factors counseling hesitation in implying a Bivens damages remedy here. First, Defendants warn of the "potentially enormous financial burden that agency liability would entail" in litigating Bivens claims for alleged failures in investigating sexual assaults in prison. (Id. at 25, citing Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001) (citation omitted)). Second, Defendants claim that such suits improperly place federal courts in the role of regulator, in an area where BOP has expertise and Congressional authority to regulate. (Id. at 26.)

3.   <u>Analysis</u>

The Supreme Court in <u>Abbasi</u> stated that "when alternative methods of relief are available, a *Bivens* remedy usually is not." 137 S. Ct. at 1863. Here, Plaintiff had the option, while housed at Fort Dix, of seeking injunctive relief for compliance with the PREA regulations. <u>Abbasi</u>, 137 S. Ct. at 1862 (injunctive relief, in appropriate cases, is an alternative remedy to a <u>Bivens</u> action for damages). Plaintiff also had the ability to seek sanctions from the Office of Inspector General and outside agencies against BOP employees who failed to comply with PREA regulations.

It is significant that Congress, in passing comprehensive legislation aimed at a zero tolerance policy for prison rape, opted not to include a private right of action for damages under PREA. <u>See</u> <u>Clark v. Doe-Walker</u>, No. 19-CV-2235, 2019 WL 2491275, at *2 (E.D. Pa. June 14, 2019) (collecting cases; <u>Krieg v. Steele</u>, 599 F. App'x 231, 232-33 (5th Cir. 2015). "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation[.]" <u>Abbasi</u>, 137 S. Ct. at 1865. Relatedly, by enacting PREA, Congress gave the power to regulate prison rape allegations to the Bureau of Prisons and other executive agencies. The Supreme Court has said, "[s]ometimes there will be doubt [about whether Congress would want the Judiciary to entertain a damages suit] because the case arises in a context in which Congress has designed its regulatory authority in a guarded

way, making it less likely that Congress would want the Judiciary to interfere." <u>Abbasi</u>, 137 S. Ct. at 1858. Based on these separation of powers concerns, the Court concludes that it should not imply a <u>Bivens</u> damages remedy under the Fifth Amendment Due Process clause for failure to properly investigate a prisoner's sexual assault allegations.

C.   <u>FTCA Claims</u>

For her negligence claim against the United States, Plaintiff alleges that "[e]ach of the Defendants' own negligence and/or Dereliction of Duty contributed to me being sexually assaulted on 10/14/2015." (Am. Compl., Dkt. No. 7-1 at 14.) She points to the manner in which she was housed and guarded at FCI Ft. Dix, as well as the speed and process with which BOP addressed her request for transfer to another facility.

1.   <u>Standard of Law</u>

The FTCA provides a cause of action for

> claims against the United States, for money
> damages … for … personal injury … caused by
> the negligent or wrongful act or omission of
> any employee of the Government while acting
> within the scope of his office or employment,
> under circumstances where the United States,
> if a private person, would be liable to the
> claimant in accordance with the law of the
> place where the act or omission occurred.

28 U.S.C.A. § 1346(b)(1). In New Jersey, where the alleged negligence occurred, "[t]he fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff,

a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." G.A.-H. v. K.G.G., 210 A.3d 907, 914, reconsideration denied, 215 A.3d 913 (N.J. 2019) (citing Robinson v. Vivirito, 217 N.J. 199, 208, 86 A.3d 119 (2014)).

In establishing the discretionary function exception to waiver of sovereign immunity for personal injury claims, Congress mandated that the FTCA's limited waiver "shall not apply to" any claim

> based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The Supreme Court observed that:

> Congress wished to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. By fashioning an exception for discretionary governmental functions, including regulatory activities, Congress took "steps to protect the Government from liability that would seriously handicap efficient government operations."

United States v. S.A. Empresa de Viaco Aerea Rio Grandense (Varig Airlines, 467 U.S. 797, 814 (1985) (quoting United States v. Muniz, 374 U.S. 150, 163 (1963)). Consequently, there is a two-part test to determine "whether the discretionary function exception

immunizes the Government from a suit based on its conduct[.]" Merando v. United States, 517 F.3d 160, 164-65 (3d Cir. 2008).

First, "a court must determine whether the act giving rise to the alleged injury . . . involves an 'element of judgment or choice.'" Id. at 164 (quoting United States v. Gaubert, 499 U.S. 315, 322 (1991)). Second, "even if the challenged conduct involves an element of judgment, the court must determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" Id. at 165 (quoting Gaubert, 499 U.S. at 322-23).

> Where Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs.

Id. at 323. In conducting the discretionary function inquiry, it is immaterial whether the actions of federal employees were negligent or an abuse of discretion. See Gaubert, 499 U.S. at 323 ("Actions taken in furtherance of the program were likewise protected, even if those particular actions were negligent.") What's more, the "focus is . . . on the nature of the actions taken and on whether they are susceptible to policy analysis." Gaubert, 499 U.S. at 325. Third, "if a regulation allows the employee

discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." Gaubert, 499 U.S. at 324.

2.   Defendants' Arguments

Defendants maintain that the allegedly improper decisions and actions by BOP staff were each subject to discretion; therefore, Plaintiff's FTCA claims fall under the "discretionary function" exception to the FTCA. (Defs' Brief, Dkt. No. 35-2 at 30-31.) In support of this assertion, Defendants note that Congress delegated broad, discretionary authority to the BOP under the direction of the Attorney General, to "designate the place of [a federal] prisoner's imprisonment." (Id. at 33, quoting 18 U.S.C. § 3621(b)). The BOP may "designate any available penal or correctional facility … that the Bureau determines to be appropriate and suitable" after considering several factors. (Id.) The BOP also "may at any time, having regard for such matters, direct the transfer of a prisoner from one penal or correctional facility to another." (Id. at 33.) The BOP also has wide discretion over the management of all federal correctional facilities and safekeeping and care of inmates in those facilities pursuant to 18 U.S.C. § 4042(a). (Id.)

Defendants point to the Third Circuit's application of the discretionary function exception in the "failure to protect" context in federal prison:

> No federal statute, regulation, or policy required the BOP to take a particular course of action to ensure [the prisoner's] safety from attacks by other inmates…. Therefore, the first step of the [discretionary function] analysis is satisfied….
>
> Turning to the second prong of the [discretionary function] test, we conclude that the judgment involved in this case—*i.e.,* how best to protect one inmate from the threat of attack by another—is of the kind that the discretionary function exception was designed to shield…. Prison administrators should be afforded wide-ranging deference in implementing and executing their policies because their discretion is needed to preserve internal discipline and maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979)…. Supreme Court authority underscores the principle that prison officials have discretionary power over the safety of the institutions they operate. *See Rhodes v. Chapman*, 452 U.S. 337, 349 N. 14 (1981)[.]

(Id. at 34, quoting Donaldson v. United States, 281 F. App'x 75, 77 (3d Cir. 2008) (some internal citations and quotation marks omitted). Thus, Defendants contend that the BOP's response to Plaintiff's request for a prison transfer based on fears of sexual assault and the subsequent investigation of her allegation of sexual assault implicate matters of policy left to the BOP's discretion, including, but not limited to, the allocation of limited housing and security resources at FCI Fort Dix; the need

to address scores of inmate requests, grievances, and special needs while maintaining general facilities management standards at FCI Ft. Dix; and the interaction of local conditions at FCI Fort Dix with the demands for transfer of inmates nationwide. (Defs' Brief, Dkt. No. 35-2 at 36.) Defendants argue that even if the BOP acted negligently or abused its discretion with respect to housing and guarding Plaintiff, there can be no FTCA claim because security decisions are quintessential discretionary functions. (Id.)

Defendants also respond to Plaintiff's allegations that BOP employees violated provisions of BOP Program Statement 5324.12, BOP's "Sexually Abusive Prevention and Intervention Program," enacted in support of PREA. (Id.) Defendants assert that the Program Statement provides only a "guidelines to address … prohibited and/or illegal sexually abusive behavior[.]" (Id., quoting BOP PS 5324.12 ¶1 (emphasis added)).

Defendants also addressed Plaintiff's allegations that they violated the following BOP Program Statements and regulations: (1) PS 1040.04 (addressing 28 C.F.R. § 551.90) barring discrimination by BOP staff in administrative decisions; (2) PS 3420.11(6), requiring effective emergency response by BOP staff; (3) PS 5270.10 (addressing 28 C.F.R. §§ 541.20, 541.27) addressing placement in administrative detention as a security measure; (4) PS 5290.15 (addressing 28 C.F.R. §§ 522.20, 522.21) requiring collection of certain information about the inmate for consideration in

conjunction with such discretionary decisions for housing and security. (Defs' Brief, Dkt. No. 35-2 at 36-38.) In sum, Defendants maintain that there was no required course of action cited by Plaintiff that the BOP failed to follow; the BOP was permitted by regulation and Program Statements to make discretionary decisions in providing for her housing, security and investigation of her sexual abuse allegation.

3.   Analysis

Under the discretionary function exception to the waiver of sovereign immunity, the Third Circuit has repeatedly affirmed dismissal of FTCA claims alleging negligence by BOP employees in protecting inmates from assaults by other inmates. See e.g. Thrower v. United States, 528 F. App'x 108, 111 (3d Cir. 2013) ("a judgment as to the best way to protect prisoners from attack by others 'is of the kind that the discretionary function exception was designed to shield'"); Rinaldi v. United States, 460 F. App'x 80, 82 (3d Cir. 2012) (the statute imposing on the BOP the duty to provide protection and safekeeping of inmates "leaves the implementation of these duties to the discretion of BOP officials"); Sargent v. United States, 620 F. App'x 69, 71 (3d Cir. 2015) ("there is no federal statute, regulation, or policy that requires the BOP to take a particular course of action to ensure an inmate's safety from attacks by other inmates.") Insofar as Plaintiff's FTCA claim is based on the general duty to protect inmates from assault by

21

other inmates, the Court lacks jurisdiction over Plaintiff's FTCA

claims based on the discretionary function exception.

For her FTCA claims, Plaintiff further alleged that violations

of specific provisions of BOP Program Statements resulted in her

sexual assault at Fort Dix. (Am. Compl., Dkt. No. 7-1 at 14-19.)[6]

The Court has reviewed each of these provisions, including:

- PS 1040.04(§551.90)
- PS 3420.11(6)
- PS 5270.11(§541.20)
- PS 5270.11(§541.27)
- PS 5290.15(§522.20)
- PS 5290.15(§522.21(a)(1))
- PS 5290.15(9)
- PS 5324.12(§115.41(a),(d),(g),(i))
- PS 5324.12(§115.42(a),(b),(e))
- PS 5324.12(§115.43(a),(c),(d)(1),(2))
- PS 5324.12(§115.62)

Program Statement 1040.04(§551.90) governs non-discrimination

by BOP staff:

> Bureau staff shall not discriminate against
> inmates on the basis of race, religion,
> national origin, sex, disability, or political
> belief. This includes the making of
> administrative decisions and providing access
> to work, housing and programs.

Plaintiff alleges that Counselor Hamel assigned her to Cell 207,

which did not have locks on the doors and was farthest from the

---

[6] In screening the Amended Complaint, the Court dismissed
Plaintiff's FTCA claims based on negligent investigation of her
sexual assault. (Opinion, Dkt. No. 9 at 12.)  Thus, only her
allegations of negligence resulting in her sexual assault are
discussed here.

Officer's Station, because Plaintiff had not been at the prison long enough to warrant a two-man cell. (Am. Compl., Dkt. No. 7-1 at 14.) There are no allegations in the Amended Complaint that suggest Counselor Hamel assigned Plaintiff to Cell 207 for discriminatory reasons because Plaintiff is transgender. Plaintiff has not alleged a breach of a duty of care imposed by BOP P.S. 1040.04(§551.90) and, therefore, fails to state a claim on this basis.

BOP P.S. 3420.11 governs standards of employee conduct, and paragraph 6 specifically provides that "Employees are required to remain fully alert and attentive during duty hours[,] . . . it is mandatory that employees respond immediately, effectively, and appropriately during all emergency situations." In the Amended Complaint, Plaintiff alleged

> The negligent actions of the defendant(s) in assigning me to Cell 207 the last cell on the Second Floor without a locking device and the cell which is the farthest cell from the officer's station located on the first floor contributed to me being sexually assaulted. The defendant(s) also refused to allow me to put a makeshift locking device on the cell door.
>
> Had each of the defendants responded immediately, effectively and appropriately, I would not have been sexually assaulted on 10/14/2015 in Cell 207.

(Am. Compl., Dkt. No. 7-1 at 15.) Plaintiff did not allege that any defendant was aware that the sexual assault was occurring on

October 14, 2015, and that but for a particular defendant's inattentiveness or failure to respond immediately to a known emergency, the sexual assault would have been prevented. Therefore, Plaintiff fails to state the requisite elements of a negligence claim for violation of BOP Program Statement 3420.11(6).

BOP P.S. 5270.11 (§541.20) governs the operation of Special Housing Units in federal correctional institutions. Section 541.27 provides:

> You may be placed in administrative detention status as a protection case in the following circumstances.
>
> (a) Victim of inmate assault or threats. You were the victim of an inmate assault, or are being threatened by other inmates, including threats of harm if you do not act in a certain way, for example, threats of harm unless you engage in sexual activity.
>
> . . .
>
> (d) Staff concern. Based on evidence, staff believe your safety may be seriously jeopardized by placement in the general population.

Plaintiff alleges that none of the Defendants considered placing her in the SHU for her protection. (Am. Compl., Dkt. No. 7-1 at 16.) The above-policy does not require staff to place a prisoner in administrative detention but permits staff the discretion to do so. "[A] judgment as to the best way to protect prisoners from attack by others 'is of the kind that the discretionary function exception was designed to shield.'" Thrower,

528 F. App'x at 111 (3d Cir. 2013). Therefore, the Court lacks jurisdiction over this FTCA claim under the discretionary function exception.

BOP PS 5290.15 (§522.20) describes the purpose and scope of "Inmate Intake Screening." Section 522.21(a)(1) provides that

> [i]mmediately upon an inmate's arrival, staff shall interview the inmate to determine if there are non-medical reasons for housing the inmate away from the general population. Staff shall evaluate both the general physical appearance and emotional condition of the inmate.

Plaintiff alleges "[o]n 6/22/2015, a[n] Intake Screening that was taken upon my arriv[al] at Fort Dix FCI placed me "at risk" for sexual victimization, whereas all department heads (each of the defendants) was notified." (Am. Compl., Dkt. No. 7-1 at 11.) Plaintiff does not allege that she was not interviewed on her day of arrival at Fort Dix concerning non-medical reasons for housing her outside the general population. Therefore, she fails to state there was a breach of a duty created by BOP PS 5270.11 (522.21(a)(1)), and, thus, fails to state an FTCA claim.

BOP PS 5290.15(9) provides that "[s]taff making quarters assignments for a newly arrived inmate shall review the result of intake screening to ensure restrictions are noted prior to assignment." Plaintiff does not allege that the staff who made her first housing assignment did not review the intake screening notes. Moreover, Plaintiff alleges all defendants were notified of the

"at risk" designation determined upon intake. Therefore, Plaintiff fails to allege the elements of a negligence claim under the FTCA for violation of BOP PS 5290.15(9).

BOP PS 5324.12(§115.41) similarly governs the requirement for intake screenings but is specific to screening for the risk of sexual assault. Plaintiff acknowledges an intake screening was performed and resulted in an "at risk" designation. Plaintiff alleges

> Each defendant was well aware of my "at risk" for victimization however made no reasonable accommodations to ensure my safety. The defendants w[ere] negligent for housing me in Cell 207 which contributed to me being sexually assaulted on 10/14/2015.

(Am. Compl., Dkt. No. 7-1 at 17.) Section (g) of this Program Statement requires staff to reassess an inmate's risk level "when warranted."

Shortly after her admission to Fort Dix, Plaintiff was moved from a 12-man room to a two-man cell based on her safety concerns. She then requested a different cell and cellmate and a transfer to a higher security prison. BOP P.S. 5324.12(§115.41)(g) gives staff discretion over reassessing an inmate's risk level. Plaintiff in fact alleges staff was considering her transfer request, which involved a reassessment of her risk level. This policy does not require staff to immediately acquiesce in an inmate's specific housing requests, although certainly the safety concern behind the

26

request must be considered. Plaintiff's FTCA claim based on this policy is precluded by the discretionary function exception because "housing and cellmate assignments are 'of the kind that the discretionary function exception was designed to shield.'" Rinaldi v. United States, 904 F.3d 257, 274 (3d Cir. 2018) (quoting Mitchell v. United States, 225 F.3d 361, 363 (3d Cir. 2000) (citation omitted)).

BOP PS 5324.12(§115.42) provides, in relevant part:

> (a) The agency shall use information from the risk screening required by § 115.41 to inform housing, bed, work, education, and program assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive.
>
> (b) The agency shall make individualized determinations about how to ensure the safety of each inmate.
> . . .
>
> (e) A transgender or intersex inmate's own views with respect to his or her own safety shall be given serious consideration.

In the Amended Complaint, Plaintiff alleges:

> Each defendant was well aware of my "at risk" for victimization as well as my many request[s] for a transfer however made no reasonable accommodations to ensure my safety. The defendants admitted to not being able to protect me and acknowledged the rampant violence and sexual assaults at FCI Fort Dix.

(Am. Compl., Dkt. No. 7-1 at 17.)

27

First, there are no allegations in the Amended Complaint suggesting the Defendants had knowledge that sexual assaults at Fort Dix were rampant overall or during the relevant time period. Second, although this policy requires BOP staff to consider the information from the risk screening to inform its decisions, it does not dictate the level of security that must be provided to a particular inmate under given circumstances. In other words, it affords discretion. Again, the FTCA discretionary function exception was designed to protect discretion of the type employed by the BOP in making housing and cell assignments. Rinaldi, 904 F.3d at 274. Therefore, Plaintiff's claim that Defendants were negligent in her housing determination based on this policy is precluded by the discretionary function exception to the FTCA. The same is true of BOP PS 115.543, which likewise governs use of segregated housing for "at risk" inmates, and permits staff discretion in making determinations to assign inmates to the SHU.

BOP P.S. 5324(§115.62) provides "[w]hen an agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate." Plaintiff does not allege any facts suggesting Defendants were aware of a "substantial risk of imminent sexual abuse" but rather that Plaintiff was generally at risk of victimization and was fearful of other inmates who made comments about her body. Therefore, Plaintiff fails to allege breach of the duty imposed by

this policy, and the Amended Complaint fails to state an FTCA claim for violation of BOP P.S. 5324(§115.62). In sum, Plaintiff has not alleged a cognizable FTCA claim because she fails to allege the elements of negligence based on certain BOP policies and her other FTCA claims are precluded by the discretionary function exception to the waiver of sovereign immunity.

IV.  CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to dismiss the Amended Complaint.


An appropriate Order follows.


**DATE:**  <u>**July 21, 2020**</u>                    s/Renée Marie Bumb
                                                  **RENÉE MARIE BUMB**
                                                  **United States District Judge**

29